JEFFERY M. HUBINS (SBN 220657)
*jhubins@schauman-hubins.com*
WILLIAM F. SCHAUMAN
*wschauman@schauman-hubins.com*
SCHAUMAN & HUBINS
A Professional Law Corporation
5700 Stoneridge Mall Road, Suite 130
Pleasanton, CA 94588
Tel: (925) 846-5400
Fax: (925) 846-5402

Attorneys for all Defendants:
Serenity Transportation, Inc, David Friedel,
Service Corporation International,
SCI California Funeral Services, Inc.,
The Neptune Society of Central California, Inc.,
Lifemark Group, Inc., County of Santa Clara,

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS JOHNSON and ANTHONY ARANDA, on behalf of themselves and all others similarly situated,<br><br>         Plaintiffs,<br><br>         v.<br><br>SERENITY TRANSPORTATION, INC., a California Corporation, DAVID FRIEDEL, SERVICE CORPORATION INTERNATIONAL, SCI CALIFORNIA FUNERAL SERVICES, INC., THE NEPTUNE SOCIETY OF CENTRAL CALIFORNIA, INC., LIFEMARK GROUP, INC., and COUNTY OF SANTA CLARA,<br><br>         Defendants. | **CASE NO. 15-CV-02004-JSC**<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT**<br><br>Judge: Honorable Jacqueline Scott Corley<br><br>Hearing Date: Oct. 15, 2015, 9:00 a.m.<br><br>Hearing Location: Courtroom F, 15th Floor |

**TO PLAINTIFF CURTIS JOHNSON ANTHONY ARANDA, AND THEIR ATTORNEYS OF RECORD**:

      **PLEASE TAKE NOTICE** that on Thursday **October 15, 2015** at **9:00 a.m.** or as soon thereafter as counsel may be heard in Courtroom F, 15th floor, of the United States District Court for the Northern District of California located at 450 Golden Gate Avenue, San Francisco,

California, defendants Serenity Transportation, Inc., David Friedel, Service Corporation International, SCI California Funeral Services, Inc., The Neptune Society of Central California, Inc., Lifemark Group, Inc., and County of Santa Clara will move the court for an order dismissing plaintiffs' Curtis Johnson's and Anthony Aranda's second amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the following grounds:

1.      Plaintiffs general allegations alleging David Friedel as the alter ego for Serenity Transportation, Inc. fail to satisfy the pleading requirements of Rules 8 and 12;

2.      Plaintiffs' allegations that defendants Service Corporation International, SCI California Funeral Services, Inc., County of Santa Clara, and The Neptune Society of Central California, Inc. are joint employer are factually deficient.

3.      Plaintiffs' allegations that defendants failed to properly pay plaintiffs' minimum and overtime wages for all hours worked, including on-call time, fails to state facts sufficient to support the second and third causes of action.

4.      Plaintiffs' allegations in the seventh cause of action for violations of California Labor Code sections 226, 226.3, 1174, 1174.5, and 2753 are factually deficient and fail to state a cause of action.

5.      Defendant David Friedel should be dismissed as a defendant under Cal. Labor Code §2753 as he is an employee and excluded from liability under the terms of the statute.

This Motion is based upon this Notice of Motion, the Memorandum of Points and Authorities, in the pleadings and documents on file in this lawsuit, the currently filed a Request for Judicial Notice, and other such oral and documentary evidence as may be presented to the Court at or prior to the hearing on the motion.

Dated:  September 8, 2015               Respectfully submitted,


By:    _____/s/_____

        Jeffery M. Hubins

        Attorneys for all Defendants

**TABLE OF CONTENTS**

I.  INTRODUCTION…………………………………………….…………………1

II.  STATEMENT OF FACTS……………………………………….……………......2

III.  LEGAL ARGUMENT

    A.  Standard for Motion to Dismiss Under Rule 12………………………………7

        1.  This Court Should Dismiss Defendant David Friedel
           as an Individual Defendant Because the TAC Fails to
           Plead Sufficient Facts of Alter Ego Liability……………………….......8

           a.  Unity of Interest………………………………………………....9

           b.  Inequitable Result to Follow…………………………………...10

        2.  Plaintiffs' Claims of Joint Employer Against
           Defendants Service Corporation International, SCI
           California Funeral Services, Inc., The County of
           Santa Clara, and The Neptune Society of Central
           California, Inc., are Factually Deficient…….…………………….....11

           a.  Joint Employer Under the FLSA…………….………………....11

           b.  Joint Employer Under California Law……………………………15

        3.  Plaintiffs' Causes of Action Based on "on-Call
           or "Standby" Time Fails to State Facts Sufficient
           to Support the Causes of Action…………………………………......17

           a.  Plaintiffs' Second Cause of Action for Minimum Wages……..….17

           b.  Plaintiffs' Third Cause of Action for Overtime Wages ..….………19

        4.  Plaintiffs' Seventh Cause of Action for Violation
           of California Labor Code Sections 226, 226.3,
           1174, 1174.5 Are Factually Deficient…………………….………..19

        5.  Defendant David Friedel Should be Dismissed as a Defendant……....20

IV.  CONCLUSION……………………………………………..………….…21

# TABLE OF AUTHORITIES

**<u>Federal Cases</u>**

*Adams v. Johnson*,
355 F.3d 1179 (9th Cir. 2004)…………………………………………………..….4, 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)………………………………………………………………….4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)………………………………………………………...………4

*Bonnette v. Cal. Health & Welf. Agency*,
704 F.2d 1465 (9th Cir.1983)………………………………..…………..7, 8, 9

*Carrillo v. Schneider Logistics Trans-Loading and Distribution, Inc.*,
2014 WL 183956 (C.D. Cal 2014)……… …………………..……..…………..……...9

*Harding v. Time Warner, Inc.*,
2009 WL 2575898 *5 (S.D. Cal. 2009)…………………………………….…….…16

*Irwin v. Clark*,
400 F.2d 882 (9th Cir. 1998)…………………………………………..…………...14

*Lambert v. Ackerley*,
180 F.3d 997 (9th Cir. 1999)…………………………………………..……...…….7

*McKesson HBOC, Inc. v. New York State Common Retirement Fund, Inc.*
339 F.3d 1087 (9th Cir. 2003)…………………………………..…………………...4

*Milligan v. American Airlines, Inc.*,
557 Fed.Appx. 718 (9th Cir. 2014) …………………………………..……………..16

*Moreau v. Air France*,
356 F.3d 942 (9th Cir. 2004)……………………………..…………….…………8, 9, 11

*Moreland v. Ad Optimizers, LLC.*,
No. CV 13-00216 PSG, 2013 WL 3786311 (N.D. Cal. July 18, 2013)…………………...…5

*Neilsen v. Union Bank of Cal.*, 290 F.Supp.2d 1101, 1116 (C.D. Cal. 2003)…..………4, 5, 6, 7

*Nissenbaum v. NHH Cal Neva Services Co.*,
983 F.Supp.2d 1245 (D. Nev. 2013)………………………………………..…………8

*Pickins v. Pier 1 Imports (US), Inc.*,
457 F.3d 963 (2006)…………………………………………………..……..16

*Sandoval v. Ali,*
34 F.Supp.3d 1031 (N.D. Cal. 2014)……………………………….……….…..……4, 7

*Stewart v Screen Gems-EMI Music, Inc., et al.*
No. 14-cv-04805 JSC, 2015 WL 890994 (N.D. Cal. Mar. 2, 2015)………..………….....3, 4, 5, 6

*Torres-Lopez v. May,*
111 F.3d 633 (9th Cir.1997)……………………………………………….……….....7, 9

*Villalpando v. Exel Direct Inc.,*
No. 12-cv-04137 JCS, 2014 WL 1338297 (N.D.Cal. Mar. 28, 2014)……………….…...…..13

**State Cases**

*Lu v. Hawaiian Gardens Casino, Inc.,*
50 Cal.4th 592 (2010) ………………………………………………..……………….…..13

*Martinez v. Combs,*
49 Cal.4th 35 (2010) …………………………………….....……………………..…11, 12

*Mendiola v. CPS Sec. Solutions, Inc.,*
60 Cal.4th 833 (2015)………………………………………………..…………...…14, 15

*Minifie v. Rowley,*
187 Cal. 481 (1921)…………………………………………………………………...4

*Moradi-Shalal v. Fireman's Fund Ins. Companies,*
46 Cal.3d 287 (1988)…………………………………………………………....…..…13

*Price v. Starbucks Corp.,*
192 Cal.App.4th 1136 (2011)……………………………………………….…..…….16

*S.G. Borello & Sons, Inc. v. Department of Industrial Relations,*
48 Cal.3d 341 (1989) ……………………………………………………………….…..10

*Sonora Diamond Corp. v. Sup.Ct.,*
83 Cal.App.4th 523 (2002)…………………….…………………………...……..7

*Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.,*
217 Cal.App.4th 1096 (2013)…………………………………………………………...4

*Tomaselli v. Transamerica Ins. Co.,*
25 Cal.App.4th 1269 (1994)…………………………………………………..…….5

*Yellow Cab Cooperative v. Workers Compensation Appeals Board,*
226 Cal.App.3d 1288 (1991)……………………………………………….……..…11

## **Federal Statutes**

29 U.S.C. § 203…………………………………………………………………………..7

## **Rules**

Fed. R. Civ. Pro. 8……………………………………………………………………..4, 6

Fed. R. Civ. Pro. 12…………………………………………………………………………3

## **Other Authorities**

Morgenson, G. (June 29, 2013) An Unstoppable Climb in C.E.O. Pay. NY Times,
http:/www.nytimes.com/2013/06/30/business/an-unstoppable-climb-in-ceo-pay.html…..……..6

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants, Serenity Transportation, Inc. (STI), David Friedel (Friedel), Service Corporation International, Inc. (SCI), SCI Funeral Services California, Inc. (SCI CAL), The Neptune Society of Central California, Inc. (Neptune), Lifemark Group, Inc. (Lifemark), and the County of Santa Clara (County) respectfully submit this memorandum of law in support of their motion to dismiss Plaintiffs' Third Amended Complaint (TAC).

## I.    INTRODUCTION

Plaintiffs filed this putative class action wage and hour case against defendants. Defendant Serenity Transportation, Inc. (STI) is a transportation company responsible for transporting human remains between hospitals, funeral homes, mortuaries, and coroner facilities. Defendant David Friedel is an employee, shareholder and executive officer of STI. The remaining defendants (SCI, SCI CAL, Neptune, Lifemark, and County) are some of STI's clients.[1] Plaintiffs Curtis Johnson and Anthony Aranda are former STI drivers that were responsible for performing transportation services for defendant STI. STI classifies its drivers as independent contractors (not employees), and maintains executed written independent contractor agreements between each driver (including plaintiffs) and STI.

By and large, each of plaintiffs' causes of action are predicated on being misclassified as independent contractors rather than W-2 employees.

Defendants file this motion to dismiss plaintiffs' TAC for failure to allege sufficient facts supporting various causes of action. Additionally, defendants file this motion to dismiss defendant Friedel for failing to plead sufficient facts supporting an alter ego theory of liability, and dismiss defendants SCI, SCI CAL, Neptune, Lifemark and County for failing to plead sufficient facts supporting the allegations that they are joint employers.

---

1. STI has roughly 50 clients, most of which plaintiffs provided transportation services for. However, plaintiffs amended the complaint naming only five of STI's clients as defendants under a "joint employer" theory of liability, despite plaintiffs providing transportation to many other, unnamed STI clients.

## II.     STATEMENT OF FACTS

**Procedural History.**

On June 12, 2014 plaintiff Curtis Johnson filed his initial putative class action complaint in the Superior Court of California, Alameda County, alleging a host of wage and hour violations. The initial complaint alleged eleven causes of action against two defendants for various violations of the FLSA and California's Labor Code, including the failure to pay overtime, the failure to pay minimum wages, the failure to reimburse plaintiffs for business expenses, the failure to provide meal and rest periods, and violations of Cal. Labor Code § 2698 *et seq.* (PAGA).

After a year of discovery and depositions and just before their deadline to file a motion for certification, on April 9, 2015, plaintiff Curtis Johnson filed a First Amended Complaint in state court, adding additional causes of action and defendants. The additionally added defendants were Service Corporation International (SCI) and The Neptune Society of Central California, Inc. (Neptune). The additional defendants are also STI's two largest accounts and its clients. The theory of their liability, as alleged, is that STI's clients are joint employers.

On May 4, 2015, the case was removed to the United States District Court based on subject matter jurisdiction through the FLSA.

On May 29, 2015, plaintiff Curtis Johnson filed a Second Amended Complaint (SAC), again adding additional parties, including plaintiff Anthony Aranda and defendants SCI California Funeral Services, Inc. (SCI CAL), Lifemark Group, Inc. (Lifemark) and the County of Santa Clara (County). Again, the additionally added defendants are STI's clients and are alleged to be joint employers. On August 17, 2015, the Court granted plaintiffs leave to file a third amended complaint (TAC), which they filed on the same day.[2]

**Factual Background.**

Plaintiffs Curtis Johnson and Anthony Aranda worked for STI as "mortuary transportation drivers." Plaintiff Johnson worked for "Defendants from January 1, 2012 to August 23, 2013." TAC, 1:26-28. Plaintiff Anthony Aranda worked for "Defendants from approximately August

---

2.  Defendants were provided until September 7, 2015 to file a responsive pleading. However, September 7 is/was Labor Day, a Legal Holiday as defined by FRCP 6(a)(6). Based on FRCP 6 enlargement of time, defendants timely file this Motion to Dismiss on September 8, the day following Labor Day.

2012 until March 2015." TAC, 2:1-3. STI is an active California corporation registered with the State of California. TAC, 2:5-6.

Plaintiffs allege that STI employed plaintiffs within the meaning of the federal Fair Labor Standards Act, California Labor Code, and the applicable Industrial Welfare Commission wage order. TAC, 2:6-8.

**<u>David Friedel as the Alter Ego of STI.</u>**

Plaintiffs named David Friedel as a defendant based on an alter ego theory of liability. TAC, 2:18-19. Plaintiffs allege in the Complaint that defendant David Friedel is the "owner and CEO of STI" and permitted the plaintiffs and class members to work, and exercised control over the wages, hours or working conditions of plaintiffs and class. TAC, 2:12-18. In support of their claim plaintiffs allege "Friedel operated STI for the purpose of concealing violations of the California Labor Code with respect to Plaintiffs and Class Members, dominated and controlled the actions of STI, and knowingly advised STI to treat plaintiff and similarly situated drivers as independent contractors to avoid employee status." TAC, 2:18-21. In support of their attempt to pierce the corporate veil, Plaintiffs merely allege that Friedel "failed to adequately capitalize STI," "failed to properly maintain the minutes and corporate records of STI," "maintains sole ownership of all stock in STI," "used his personal home as the location for board of director meetings," and "failed to conduct board meetings as required by the corporate by-laws and state law." TAC, 2:22-26.

Plaintiffs further allege that, "Friedel promulgated 'STI Client Policy Standards'" requiring drivers to "wear a two-piece dress suit; report to dispatch their status throughout the day, including: 'call start time,' 'on scene,' 'transporting,' 'dropping at mortuary,' and 'available for another call.'" TAC, 5:14-17. Plaintiffs also allege that defendant Friedel required drivers to "notify dispatch if the driver was checking out of service before their shift ended at 9 A.M." "complete STI invoice information; keep vehicles clean and stocked; and notify STI for personal time off." TAC, 5:17-19. Plaintiffs state in the complaint that defendant Friedel has been

-3-

"personally involved in the enforcement of these policies, including supervising Driver compliance with these policies and displaying Drivers for noncompliance." TAC 5:21-23.

**Defendants Allege that SCI, SCI CAL, Lifemark, Neptune, and County are Plaintiffs' Joint Employers.**

Defendants, SCI, SCI CAL, Lifemark, Neptune, and County have all been named as defendants based on the definition of "joint employer" under the FLSA. Defendants SCI, SCI CAL, Neptune, Lifemark, and the County each independently contract with STI to conduct removal services from their facilities. TAC, 3:1-4:16. SCI, SCI CAL, Lifemark, Neptune, and the County are some of, not all of, STI's clients.

In support of plaintiffs' contention that SCI, SCI CAL, Neptune, Lifemark and the County are plaintiffs' "joint employers," plaintiffs make conclusory allegations that they "control the means and methods by which Drivers carry out their jobs, including by directing Drivers how to handle and remove decedents." TAC 5:24-26.

**SCI and SCI CAL Alleged Facts Supporting A Finding of Joint Employment.**

The following facts are alleged by plaintiffs to support naming SCI and SCI CAL as defendants as joint employers. Plaintiffs state, "SCI California: suffered or permitted Plaintiffs and Class and Collective Action Members to work; exercised control over the wages, hours or working conditions of Plaintiffs and Class in Collective Action Members; and engaged Plaintiffs and Class and Collective Action Members." TAC, 3: 14-17.

Plaintiffs further allege in conclusory fashion that SCI and SCI CAL "promulgated detailed policies governing the work of STI Drivers," including detailing "identification and removal protocol" of deceased people and the right to supervise and control the Drivers work when on SCI property. TAC 5:27-6:8. "SCI/SCI California retained the right to require that STI/STI Drivers receive ongoing training from SCI in order to provide the service guarantee as required by SCI's guidelines." TAC, 6:3-5. SCI/SCI California detailed the time period in which STI Drivers were to respond to calls and required that Drivers were to be dressed 'in a professional manner at all times.'" TAC, 6:5-7. "When drivers were on SCI/SCI California's

-4-

locations, or performing work for SCI/SCI California, they were under SCI/SCI California has supervision and control." TAC, 6:7-8.

These are the only, conclusory, allegations plaintiffs assert in effort of pleading joint employment. Plaintiffs fail altogether to attach as an exhibit the policies or state that the policies might be mandated by statue or regulation, which frequently govern the removal of dead persons.

**Neptune Alleged Facts Supporting A Finding of Joint Employment.**

Plaintiffs allege the following facts to establish that Neptune is a joint employer. Plaintiffs' alleged that Plaintiffs state, "Neptune: suffered or permitted Plaintiffs and Class and Collective Action Members to work; exercised control over the wages, hours or working conditions of Plaintiffs and Class in Collective Action Members; and engaged Plaintiffs and Class and Collective Action Members." TAC, 3: 21-26.

Plaintiffs allege that, "Neptune, worked with STI to create detailed policies governing the work of STI's drivers, that Neptune could change at any time." TAC 6:9-10. Plaintiffs continue stating, "these policies and procedures including instructions on how and where to record information about the deceased(including paperwork), how to handle the deceased, and the order in which drivers were to complete tasks." TAC, 6:10-13. "When drivers were on Neptune locations or performing work for Neptune, they were under Neptune supervision and control," Plaintiffs allege. TAC 6:13-14.

Again, these conclusory allegations fail to detail the specificity required to meet the minimum pleading standards.

**Lifemark Alleged Facts Supporting A Finding of Joint Employment.**

Exactly as alleged against the other defendants, plaintiffs state in a conclusory fashion that, "Lifemark: suffered or permitted Plaintiffs and Class and Collective Action Members to work; exercised control over the wages, hours or working conditions of Plaintiffs and Class in Collective Action Members; and engaged Plaintiffs and Class and Collective Action Members." TAC, 4:5-8. It is claimed that Lifemark had "policies and procedures included instructions on how and where to record information about the deceased how to handle the deceased and how

-5-

drivers should conduct themselves when arriving at and leaving life Mark properties." TAC, 6:17-19. No other facts are pled supporting a finding that Lifemark is a joint employer.

**County of Santa Clara Alleged Facts Supporting A Finding of Joint Employment.**

Using the exact same language as other defendants, plaintiff's alleged that the County of Santa Clara is a joint employer of plaintiffs. Plaintiffs allege that the County controlled STI drivers by implementing policies pertaining to the timeframe within which STI had to respond to County calls (TAC 6:23-24) and by requiring STI drivers to be fingerprinted. TAC 6:28-7:1. Plaintiffs state the County "promulgated detailed policies governing the work of STI Drivers that it retained the right to change at any time." TAC 6:21-22. "They [policies] included, among other specifications: the timeframe in which STI Drivers were expected to respond to different types of calls, including Death Scene Transport Response Time and Facility Transport Response Time; the amount of time that Drivers were required to wait at the scene if the deceased was not ready to be transported; and 'stand-by' and 'dry-run' time.' " TAC, 6:22-27.

The plaintiffs further allege that the drivers workplace is controlled by the County because the County requires drivers to keep records of delivery and pick-up times. TAC 6:26-28.

Plaintiffs claim that the county required Drivers to "complete a 'Live Scan' fingerprinting process," "be attired in safe, professional and modest manner, and shall display no insignia other than that provided by the ME/C [Medical Examiner/Coroner]." TAC, 7:1-3. Plaintiffs' allege that County required, "'uniform apparel shall be subject to approval by the ME/C,'" and "promulgated specifications for the appearance and equipment of Driver vehicles and retain the right to inspect these vehicles at any time," and "retained the right to supply some of the equipment, including by bags, plastic sheeting, and body shrouds." TAC, 7:4-8. Plaintiffs, apparently quoting from text, state the County requires Drivers, "'shall, while making removals, act at all times in accordance with instructions given by the in East/C investigator at the scene.'" TAC, 7:9-10.

While the plaintiffs apparently quote extensively from presumably policies and procedures, they fail altogether to attach as an exhibit the policies and procedures. What they also

failed to plead is that many of the requirements are statutorily required activities when transporting deceased and human remains.

The plaintiffs have also carefully drafted the pleading to state that certain "requirements" controlling the Drivers actions are required by policy, but nowhere do plaintiffs state or demonstrate that the policies are implemented. TAC, 5:28-6:8, 6:9-14, 6:15-20, 6:21-7:10.

### III.    LEGAL ARGUMENT

#### A.    Standard for Motion to Dismiss Under Rule 12

Defendants bring this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss under Rule 12 challenges the legal sufficiency of the complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Stewart v. Screen Gems—EMI Music, Inc., et al.* No. 14-cv-04805 JSC, 2015 WL 890994, at  *5 (N.D.Cal. Mar. 2, 2015) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A facial plausibility standard is not a 'probability requirement' but mandates 'more than a sheer possibility that a defendant has acted unlawfully.'" *Stewart*, WL 890994, at *5 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Dismissal may be based on either lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Stewart*, WL 890994, at *5.

Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), a pleading must offer more than labels and conclusions or a formulaic recitation of the elements of a cause of action. *Id.* at *6.

"Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Id.* (citing *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004)).

A court may exclude and ignore any "conclusory statements" or "threadbare recitals of the elements." *Ashcroft,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555 ("Although for the purposes of a motion to dismiss we must take all the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'")).

If a motion to dismiss is granted, a court is not obligated to grant leave to amend if the pleadings cannot be cured by the allegation of additional facts. *Stewart*, WL 890994 at *6.

**1.**     **This Court Should Dismiss Defendant David Friedel as an Individual Defendant Because the TAC Fails to Plead Sufficient Facts of Alter Ego Liability.**

The burden of pleading and establishing alter ego liability is on the plaintiff. *Minifie v. Rowley*, 187 Cal. 481, 488 (1921). There is a strong presumption against alter ego liability and courts regard the alter ego doctrine as a drastic remedy and disregard the corporate form only reluctantly and cautiously. *McKesson HBOC, Inc. v. New York State Common Retirement Fund, Inc.* 339 F.3d 1087, 1094-1095 (9th Cir. 2003); *Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.*, 217 Cal.App.4th 1096, 1107 (2013). Conclusory allegations of alter ego status are insufficient to state a claim. "[A] plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each." *Sandoval v. Ali*  34 F.Supp.3d 1031, 1040-41 (N.D. Cal. 2014) (citing *Neilson v. Union Bank of Cal., N.A.,* 290 F.Supp.2d 1101, 1116 (C.D. Cal. 2003)).

Defendant David Friedel is named as an individual defendant based on an alter ego theory of liability. Paragraph 9 of the TAC states:

> Defendant David Friedel is the owner, shareholder, CEO, and Board Member of STI. Find out is and/or was an employer of Plaintiffs and Class and Collective Action Members within the meaning of the federal Fair Labor Standards Act, California Labor Code, and applicable IWC wage order. Friedel: suffered or permitted Plaintiffs and Class and Collective Action Members to work; exercised control over the wages, hours or working conditions of Plaintiffs and Class in Collective Action Members. Further, Friedel is the alter ego of defendant STI. Friedel operated STI for the purpose of concealing violations of the California Labor Code with respect to Plaintiffs and Class Members, dominated and controlled the actions of STI, and knowingly advised STI to treat Plaintiffs and similarly situated Drivers as independent contractors to avoid employee status. Friedel has also failed to respect the corporate form of STI. Among other things, Friedel (a) failed to adequately capitalize STI; (b) failed to properly maintain the minutes and corporate records of STI; (c) maintain sole ownership of all stock in STI; (d) use his personal home as the location for board of director meetings; and (e) failed to conduct board meetings as required by the corporate by-laws and state law. TAC, 2:12-26.

"Alter ego is a limited doctrine, invoked only where recognition of the corporate form will work an injustice to a third person." *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App.4th 1269, 1285 (1994). To prevail on a claim of "alter ego," plaintiff must show (1) there is such a unity of interest that the separate personalities of the corporations no longer exist; ***and*** (2)

inequitable results will follow if the corporate separateness is respected. *Moreland v. Ad Optimizers, LLC.* No. CV 13-00216 PSG, 2013 WL 3786311 at *3 (N.D. Cal. July 18, 2013); *Tomaselli,* 25 Cal.App.4th at 1285 (emphasis added).

Sole ownership and control is insufficient to support a finding of alter ego liability. The separateness of the corporation and the alter ego instead must be so illusory that failure to separate the two would result in an injustice to a third party. *Moreland*, WL 3786311 at *3.

**a. Unity of Interest**

This Court has utilized a broad host of factors to determine the unity of interest for purposes of alter ego liability. *Stewart*, WL 890994 at *9. Among the nine factors this court has considered are: co-mingling of assets; one entity as holding itself out is responsible for the debts of the other entity; identical equitable ownership; entities using the same offices and employees; whether one entity is merely the shell or conduit for the other; inadequate capitalization; this regard for corporate formalities; failing to segregate corporate records; and identical officers and directors.

Plaintiffs have failed to properly allege that STI is the alter ego for defendant David Friedel. The TAC merely makes conclusory allegations that defendant Friedel "failed to respect the corporate form of STI," "failed to adequately capitalize STI," and "failed to maintain the minutes and records of STI." TAC, 2:23-26. These three conclusory allegations fail to detail the specificity required by FRCP 8(a)(2), and even assuming they do meet the basic pleading requirements, they are insufficient alone to impose liability onto David Friedel under the alter ego doctrine. This court has held "[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Id.* (citing *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004)). Plaintiffs must provide factual detail supporting their allegations of alter ego liability, not merely recite the elements of the cause of action.

Plaintiffs do not state facts demonstrating *how* the business was undercapitalized, how the minutes and corporate records were maintained improperly, or how Friedel failed to respect the corporate form.

This court has also held in *Stewart* that the three factors that **might** meet the unity of interest here pled were insufficient to establish a finding of unity of interest in *Stewart*. In *Stewart* this court held that a finding of equitable ownership, same officers and employees, and identical officers and directors were insufficient to support a finding of unity of interest. *Stewart*, WL 890994 at \*9-11. In *Stewart* the three factors plaintiffs rely on here did not meet the burden required by this court in *Stewart*.

The other factors detailed in the complaint, such as defendant David Friedel being a shareholder, dominating and controlling the actions of STI, and serving as the CEO are simply legally irrelevant. Virtually every executive owns stock in the corporation they manage, in fact, it would be highly unusual if they did not have stock options as a form of compensation. Morgenson, G. (June 29, 2013). *An Unstoppable Climb in C.E.O. Pay*. NY Times, http://www.nytimes.com/2013/06/30/business/an-unstoppable-climb-in-ceo-pay.html

### b. Inequitable Result to Follow

Even if a plaintiff is able to plead *facts* demonstrating a unity of interest, the complaint must plead *facts* demonstrating inequitable, fraudulent, or unjust result to support a finding of alter ego liability. *Stewart*, WL 890994 at \*11. Pleading a corporate entity's inability to satisfy a judgment fails to state facts sufficient to carry plaintiffs' pleading burden for this factor. *Neilson v. Union Bank of Cal., N.A.,* 290 F.Supp.2d 1101, 1116 (C.D. Cal. 2003); *Sonora Diamond Corp. v. Sup.Ct.,* 83 Cal.App.4th 523, 539 (2002) (stating, "The alter ego doctrine does not guard every unsatisfied creditor of a corporation but instead affords protection where some conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form. Difficulty in enforcing a judgment or collecting a debt does not satisfy this standard.").

Here, plaintiffs fail altogether to plead even a single fact sufficient to meet the test of demonstrating inequitable, fraudulent, or unjust result to support a finding of alter ego liability.

As such, defendant David Friedel should be dismissed as a defendant for the failure to state facts sufficient to support the causes of action him individually.

**2.** **Plaintiffs' Claims of Joint Employer Against Defendants Service Corporation International, SCI California Funeral Services, Inc., The County of Santa Clara, and The Neptune Society of Central California, Inc. are Factually Deficient.**

Plaintiffs allege Defendants SCI, SCI CAL, Neptune, Lifemark, and the County of Santa Clara are liable to plaintiffs as "joint employers" under the FLSA and California Law.

**a.** **Joint Employer Under the FLSA**

The FLSA defines "employ" as "to suffer or permit to work." 29 U.S.C. § 203(g). It defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). These definitions are "given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes." *Lambert v. Ackerley*, 180 F.3d 997, 1011–1012 (9th Cir.1999). The determination of whether an employer-employee relationship exists depends on the "economic reality" of the situation. *Torres–Lopez v. May*, 111 F.3d 633, 639 (9th Cir.1997). In other words, an individual that "exercises control over the nature and structure of the employment relationship," or "economic control over the relationship and individual" is considered an employer within the meaning of the FLSA. *Sandoval*, 34 F.Supp.3d at 1039 (N.D. Cal. 2014).

The court in *Bonnette* set forth several factors to be considered in determining whether an entity is to be treated as a joint employer: **(1)** the power to hire and fire the employees, **(2)** supervised and controlled employee work schedules or conditions of employment, **(3)** determined the rate and method of payment, and **(4)** maintained employment records. 704 F.2d 1465, 1470 (9th Cir. 1983); reaffirmed by *Moreau v. Air France*, 356 F.3d 942 (9th Cir. 2003). Such factors are used in applying the "economic reality" test; however, no single factor is dispositive. *Nissenbaum v. NHH Cal Neva Services Co*., 983 F.Supp.2d 1245, 1249 (D. Nev. 2013).

**The power to hire and fire:** Turning to the first *Bonnette* factor, the TAC does not allege the above named "joint employer" defendants had the power to hire or fire Serenity's drivers. Unlike other cases which found a triable issue of fact on the issue where the entity could control the number of employees and could conduct pre-hire screening of employees, the TAC fails to

mention that any of these functions are retained by the "joint employers." There is not a single alleged fact demonstrating the joint employers could hire or fire STI's drivers.

To the contrary, however, the TAC pleads that defendants Friedel and STI "recruit," "supervise," and "advertise" drivers' positions on craigslist. TAC, 5:1-2. The complaint provides no facts supporting that the "joint employers" have the authority to or participate in the hiring of drivers. The TAC fails to allege sufficient facts meeting the first *Bonnette* factor.

**<u>Supervised and controlled employee work schedules or condition of payment</u>:** The second *Bonnette* factor assesses whether the asserted joint employer exercised control over the employees' work schedules and employment conditions. There is nothing in the TAC alleging any of the "joint employers" possessed the right to determine any driver's work schedule, work productivity goals, number of hours worked or to conduct audits or employment reviews. There are no facts pled granting these defendants the right to supervise the work of any of STI's drivers. The TAC does mention the defendant "joint employers" supervised the Drivers, however, the pleading's conclusory statements about supervision are without any factual support.

There are no facts pled in the TAC about any "joint employer" setting the rate at which the drivers are paid for the work, or that they set the schedule for which drivers are required to report to work or get off from work.

To the contrary, the TAC does state that defendants STI and Friedel "recruit and supervise" drivers. TAC, 5:1. The TAC also states that STI "schedule drivers for their shifts, which STI and Friedel retain the right to change." TAC, 5:4-6. Lastly, the TAC states that Friedel and STI are involved in the drafting of hiring criteria and interviewing of drivers—not the joint employer defendants. TAC, 5:6-7. Paragraph 29 of the TAC states that STI and Friedel were involved in reclassifying drivers from employees to independent contractors, and that the reclassification resulted in STI cost savings. TAC 7:17-26. The complaint does not contain a single fact that joint employer defendants had any of these powers or authority over drivers.

As to employment conditions, it is not alleged that STI's drivers worked at any of the "joint employer" locations, other than the brief time of delivery or pick-up of human remains.

In the case of *Moreau v. Air France*, 356 F.3d 942, 951 (9th Cir. 2004), the court noted that:

> [m]uch of the indirect supervision or control exercised by Air France over the ground handling employees was purportedly to ensure compliance with various safety and security regulations, such as ensuring that food equipment was properly stowed or that the plane's load was adequately balanced. Any airline that is concerned about its passengers' safety would be remiss to simply delegate a task to another party and not double-check to verify that the task was done properly. We therefore believe that the purported control or supervision alleged by Moreau in this case is qualitatively different from the farmworker situation in *Torres–Lopez*.

Here, it is pled in the TAC that drivers had to record pick-up time and delivery time of human remains, but not for the purpose of ensuring time card accuracy or that wages are properly paid, but for the sake of tracking dead bodies. Like the defendants in *Air France*, the defendants named here as joint employers would be "remiss to simply delegate a task to another party and not double-check to verify that the task was done properly." *Moreau*, 356 F.3d at 951.

**Determined rate and method of payment:** The third *Bonnette* factor assesses whether the asserted joint employer determined the rate and method of the "employees" payment. Nothing in plaintiffs' complaint shows that these "joint employer" defendants had any role in determining the rate and method of compensation paid by Serenity to its drivers. In fact, the complaint clearly pleads that the drivers signed a contract with defendant STI that specified driver pay.3

**Maintained employment records:** The fourth *Bonnette* factor assesses whether the asserted joint employer maintained employment records for the plaintiff employees. Again, no facts are pled demonstrating that these "joint employer" defendants had any role in maintaining STI's drivers' employment records.

The TAC does not allege that any of the defendant "joint employers" recorded the STI's drivers' time. Simple periodic time reports made by STI to the alleged "joint employers" fails to satisfy this factor. *Carrillo v. Schneider Logistics Trans-Loading and Distribution, Inc.*, 2014 WL

---

3. Plaintiffs executed a contract with defendant STI detailing the terms and conditions of payment. Plaintiffs failed to attach a copy of the contract to their complaint, which would have added clarification to the fact that STI and the drivers negotiate between themselves the rate of pay at which the drivers will be reimbursed for their services. The defendants named as joint employers have absolutely no input into the drivers' compensation. Decl. of Jeffery Hubins, ¶ 2.

1    183956 *10 (C.D. Cal 2014).

2        In *Torres–Lopez v. May,* the court offered several additional factors:

3            (1) whether the work was a specialty job on the production line, (2)
             whether responsibility under the contracts between a labor contractor
4            and an employer pass from one labor contractor to another without
             material changes, (3) whether the premises and equipment of the
5            employer are used for the work, (4) whether the employees had a
             business organization that could or did shift as a unit from one
6            [worksite] to another, (5) whether the work was piecework and not
             work that required initiative, judgment or foresight, (6) whether the
7            employee had an opportunity for profit or loss depending upon [the
             alleged employee's] managerial skill, (7) whether there was
8            "permanence [in] the working relationship, and (8) whether the service
             rendered is an integral part of the alleged employer's business. (111
9            F.3d at 640.)

10

11       Nor do the alleged facts in this complaint support a finding of the additional *Torres–Lopez*

12   factors. There are no factual allegations that the removal services could not "simply be passed on

13   to another contractor" or that the work performed was primarily conducted on any "joint

14   employer" premise. *Moreau*, 356 F.3d at 951. The "joint employers" did not supply the vehicles

15   or other equipment used by STI's Drivers. Serenity Drivers worked for multiple companies, not

16   just the named "joint employers." In fact, there are roughly 50 other STI clients that the plaintiffs

17   performed services for.

18       The TAC is factually deficient in demonstrating these "joint employers" had the ability to

19   hire or fire plaintiffs or the putative class members. There are no facts alleging the joint

20   employers determined the rate or method of pay for plaintiffs or the putative class members.

21   Additionally, it is not alleged that the joint employers kept employment records for these Drivers,

22   or set or controlled the Drivers' work schedules, working conditions, or established conditions

23   upon which the Drivers would receive payment. In fact, after a year's worth of discovery to date,

24   plaintiffs are unable to allege these facts—because they don't exist!

25       After plaintiffs have filed four complaints, fourteen months of litigation, hundreds of

26   interrogatories propounded and answered, roughly 7,000 documents produced, third party

27   subpoenas issued and responded to, and the two full day deposition of David Friedel taken,

28

-14-

plaintiffs are unable to state even a single fact demonstrating that SCI, SCI CAL, Neptune, Lifemark and the County are joint employers. As such, the defendants named under the "joint employer" definition fails under the FLSA, and the court should dismiss each with prejudice.

### b. Joint Employer Under California Law

For the same reasons the TAC is deficient with regard to stating a claim against SCI, SCI CAL, Neptune, Lifemark and the County as a "joint employer" under the FLSA, it is deficient under California Law. The issue of joint employment necessarily requires discussion of the definition of "employee." Historically, courts have utilized the "economic realities" test which includes multiple factors listed by the California Supreme Court in determining whether someone is a common law employee. *S.G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341 (*Borello*). The most significant factor to be considered is whether the person to whom service is rendered (the employer or principal) has control or the right to control the worker both as to the work done and the manner and means in which it is performed. Additional factors that may be considered depending on the issue involved are:

> 1. Whether the person performing services is engaged in an occupation or business distinct from that of the principal;
>
> 2. Whether or not the work is a part of the regular business of the principal or alleged employer;
>
> 3. Whether the principal or the worker supplies the instrumentalities, tools, and the place for the person doing the work;
>
> 4. The alleged employee's investment in the equipment or materials required by his or her task or his or her employment of helpers;
>
> 5. Whether the service rendered requires a special skill;
>
> 6. The kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision;
>
> 7. The alleged employee's opportunity for profit or loss depending on his or her managerial skill;

8.   The length of time for which the services are to be performed;

9.   The degree of permanence of the working relationship;

10.  The method of payment, whether by time or by the job; and

11.  Whether or not the parties believe they are creating an employer-employee relationship may have some bearing on the question, but is not determinative since this is a question of law based on objective tests.

Even in the absence of control over work details, an employer-employee relationship can be established if: (1) the principal retains pervasive control over the operation as a whole, (2) the worker's duties are an integral part of the operation, and (3) the nature of the work makes detailed control unnecessary. *Yellow Cab Cooperative v. Workers Compensation Appeals Board* 226 Cal.App.3d 1288 (1991).

In *Martinez v. Combs* (2010) 49 Cal.4th 35, 64 the California Supreme Court held that "unmistakably…the Legislature intended to defer to the IWC's definition of the employment relationship in actions under [Labor Code §1194]." As explained by the *Martinez* Court:

To employ, then, under the IWC's definition, has three alternative definitions. It means: (a) to exercise control over the wages, hours or working conditions, or (b) to suffer or permit to work, or (c) to engage, thereby creating a common law employment relationship.

With respect to the terms "suffer or permit," the *Martinez* court explained that the employer "shall not employ by contract, nor shall he permit by acquiescence, nor suffer by a failure to hinder." *Martinez,* 49 Cal.4th at 69. However, the *Martinez* court refused to extend such employer status to third parties who simply benefitted from the labor of the supplier's employees, clarifying if "the basis of liability is the defendant's knowledge of and failure to prevent the work from occurring" reaffirming the that a *defendant must have requisite control*. *Id*. at 70.

The *Martinez* court explained that in a joint employer situation, the exercise of "control over how services are performed is an important, perhaps even the principal, test for the existence of an employment relationship." *Id*. at 76. Supervision, in the specific sense of exercising control over how services are performed, is properly viewed as one of the "working conditions" mentioned in the wage order. The *Martinez* court found that the undisputed facts showed that the

supplier "alone controlled plaintiffs' wages, hours and working conditions." *Id* at 72.

The court rejected argument that the merchants controlled what the supplier paid its employees by controlling what they paid the supplier. The court also rejected the argument that "control" was found because the merchants' field representatives communicated with the supplier's employees regarding quality control issues. The court held that such communications do "not indicate the field representatives ever supervised or exercised control over his employees," and noted that the contract between the merchants and supplier "gave the merchants no right to direct his employees' work." *Id* at 76-77.

For all of these reasons, the *Martinez* court held that the merchants were not liable, as a matter of law, as joint employers under the exercise of control test for the wages owed to the supplier's employees.

Like the third party vendors in *Martinez*, the court here should dismiss SCI, SCI CAL, Neptune, Lifemark, and the County as joint employers because they were each third party vendors that had absolutely no control over plaintiffs' wages, hours, methods of payment or any other condition relating to plaintiffs' work. Not a single fact is pled establishing "control."

The only "facts" plaintiffs pled in support of holding the defendants liable as a joint employer is the conclusory allegations that, "SCI, [SCI CAL, Lifemark, Neptune, and the County] suffered or permitted Plaintiffs and Class and Collective Action Members to work; exercised control over the wages, hours or working conditions of Plaintiffs and Class and Collective Action Members; and engaged Plaintiff's and Class in Collective Action Members." TAC, 2:5-4. Again, these mere conclusory allegations fail to state facts sufficient to find defendants were joint employers under California or Federal law.

**3.** **Plaintiffs' Causes of Action Based on "On-Call or "Standby" Time Fails to State Facts Sufficient to Support the Causes of Action.**

**a.** **Plaintiffs' Second Cause of Action for Minimum Wages.**

Plaintiffs allege in the second cause of action that defendants failed to pay plaintiffs and class members minimum wages for all hours worked as required by Cal. Labor Code sections

1194, 1197. TAC, 17:8-9.

The crux of plaintiffs' second cause of action for failure to pay minimum wages is that plaintiffs were "assigned to 24-hour shifts, five days a week, resulting in 120-hour workweeks." TAC, 4:25-26. Plaintiffs further allege that, "During the course of the Class Period, Defendants have paid Plaintiffs and Class Members only for those hours when Plaintiffs and Class Members were responding to calls." TAC, 18:15-16. "Defendants have not paid Plaintiffs and Class Members for hours where Plaintiffs and Class Members were engaged and required to wait for their next call at defendant's behest." TAC, 18:17-18. No other factual allegations are alleged supporting plaintiffs' claims for unpaid minimum wages.

"On-call" or "standby" time is not necessarily compensable time, and a host of factors is used to determine whether on-call time is compensable under California law. *Mendiola v. CPS Sec. Solutions, Inc.*, 60 Cal.4th 833, 840 (2015). "The level of the employer's control over its employees ... is determinative" in resolving whether on-call time is compensable. *Id.* at 840.

Among the factors a court will use to determine an employer's control during on-call time are: (1) whether there was an on-premises living requirement; (2) whether there were excessive geographical restrictions on employee's movements; (3) whether the frequency of calls was unduly restrictive; (4) whether a fixed time limit for response was unduly restrictive; (5) whether the on-call employee could easily trade on-call responsibilities; (6) whether use of a pager could ease restrictions; and (7) whether the employee had actually engaged in personal activities during call-in time. *Id.* at 841.

Courts have found that drivers who were on call twenty-four hours a day were properly paid only when their services were utilized since they were not required to report at any given time or remain for any stated period of time on their employer's premises. *Irwin v. Clark*, 400 F.2d 882 (9th Cir. 1998).

Here, there is insufficient detail supporting the allegations that plaintiffs are entitled to be paid for their on-call time. Plaintiffs have failed to state any facts substantiating plaintiffs' on-call time is compensable under California law. Accordingly, this court should dismiss the claim for

-18-

minimum wages based on on-call or standby time.

**b. Plaintiffs' Third Cause of Action for Overtime Wages.**

Plaintiffs allege in the third cause of action that defendants failed to pay plaintiffs and class members overtime wages as required by Cal. Labor Code section 510 and Wage Order 9. TAC,19:19-23.

The crux of plaintiffs' third cause of action for failure to pay overtime wages, presumably, is that plaintiffs were "assigned to 24-hour shifts, five days a week, resulting in 120-hour workweeks." TAC, 4:25-26. Plaintiffs only allege that they "regularly worked in excess of eight hours in a workday and/or 40 hours in a work week without overtime compensation in violation of California labor code §§ [sic] 510 and IWC Wage Order 9." No other factual allegations are alleged supporting plaintiffs' claims for unpaid overtime wages.

For the same reasons stated above, the factual allegations supporting a claim for unpaid overtime are deficient and fail to support the cause of action. "On-call" or "standby" time is not necessarily compensable time, and a host of factors is used to determine whether on-call time is compensable under California law. *Mendiola v. CPS Sec. Solutions, Inc.*, 60 Cal.4th 833, 840 (2015). Accordingly, this court should dismiss the claim for minimum wages based on on-call or standby time.

**4. Plaintiffs' Seventh Cause of Action for Violation of California Labor Code Sections 226, 226.3, 1174, 1174.5, 2753 Are Factually Deficient.**

Plaintiffs failed to plead any factual basis supporting their seventh cause of action for defendants' violation of Cal. Labor Code sections 226, 226.3, 1174, 1174.5, 753.

Plaintiffs merely allege, in conclusory fashion, that defendants "knowingly and intentionally failed to comply with § 226 by knowingly and intentionally failing to furnish Plaintiffs and Class Members with accurate, itemized written statements showing their actual and total hours worked." TAC, 24:14-16. Plaintiffs further allege, *upon information and belief*, that defendants violated California Labor Code section 1174 and Wage Order 9 by failing to keep the required payroll records showing the actual hours worked each day by plaintiffs. TAC, 24:26-27.

1   Plaintiffs fail altogether to allege exactly what the violations were, what was not provided in the

2   wage statements, and what Plaintiffs' actual injuries were.

3       Courts have dismissed similar complaints for failing to allege sufficient, non-conclusory

4   factual content to be plausibly suggestive of a claim entitling the plaintiffs to relief. *Harding. V.*

5   *Time Warner, Inc.,* 2009 WL 2575898 *5-6 (S.D. Cal. 2009). Likewise, courts have dismissed

6   claims for alleged minor or slight violations of § 226 stating, "the injury requirement ... cannot be

7   satisfied simply because one of the nine itemized requirements in [§ 226(a)] is missing from a

8   wage statement." *Milligan v. American Airlines, Inc.* (9th Cir. 2014) 577 Fed.Appx. 718, 719

9   (citing *Price v. Starbucks Corp.,* 192 Cal.App.4th 1136 (2011)).

10      Rule 8 requires allegations in the complaint give defendants fair notice of what facts

11  plaintiffs' claim rest upon. *Pickins v. Pier 1 Imports (US), Inc.*, 457 F.3d 963, 968. Because the

12  TAC fails to meet basic pleading requirements of stating sufficient factual detail, defendants are

13  unable to understand exactly what the alleged violations are. As such, the court should dismiss

14  plaintiffs' seventh cause of action.

15      **5.      Defendant David Friedel Should be Dismissed as a Defendant.**

16      Plaintiffs named defendant David Friedel as a defendant under causes of action one

17  through eight claiming vicarious liability pursuant to Cal. Labor Code §2753.[4]

18      Cal. Labor Code § 2753 States:

19          (a) A person who, for money or other valuable consideration,
            knowingly advises an employer to treat an individual as an
20          independent contractor to avoid employee status for that individual
            shall be jointly and severally liable with the employer if the
21          individual is found not to be an independent contractor.

22          (b) This section does not apply to the following persons:

23          (1) A person who provides advice to his or her employer.

24          (2) An attorney authorized to practice law in California or another
            United States jurisdiction who provides legal advice in the course
25          of the practice of law.

26  ─────────────────────
    4. Counsel notes that the court in its August 17, 2015 order granting plaintiffs request for leave to amend addressed
27  the issue of dismissing defendant Friedel as a defendant based upon Cal. Labor Code § 2753 and suggested further
    briefing on this issue. Further briefing is difficult as no other case has squarely addressed the issue of liability based
28  upon 2753 for individuals wearing "numerous corporate hats" those of employee, board member and shareholder.

As the TAC states, defendant David Friedel is the W-2'd employee and CEO of defendant Serenity Transportation. TAC, 2:12-15. By the vary terms of §2753(b)(1), defendant Friedel is outside the provisions of §2753 and cannot be held vicariously liable under the statute.

Plaintiffs did not alleged that defendant David Friedel advised STI, his employer, for "money or other valuable consideration" to treat individuals as independent contractors to avoid employee status. While defendant Friedel acted in other capacities i.e. board member and shareholder, he was always acting as an employee and employed by Serenity during the relevant time. Those points cannot be divorced from each other.

It further seems to defy logic that an employee, who owns corporate stock in the company he is employed by, can held liable for under 2753 merely because that employee is a shareholder, despite the statute clearly excluding "a person who provides advice to his or her employer," which is undeniably the situation here.

This result is consistent with common law and legislative intent as expressed throughout the Labor Code. *Reynolds v. Bement,* 36 Cal.4th 1075, 1087-1088 (2005); *Bradstreet v. Wong,* 161 Cal.App.4th 1440, 1453 (2008); *Jones v. Gregory,* 137 Cal.App.4th 798, 802-809 (2006).

## IV. CONCLUSION

Defendants ask the court to dismiss defendant David Friedel as the third amended complaint fails to state facts supporting that he is the alter ego of Serenity Transportation, Inc. Defendants further ask the court to dismiss defendants SCI, SCI CAL, Neptune, Lifemark, and the County of Santa Clara as plaintiffs failed to properly allege facts supporting they are "joint employers" under the FLSA and California law. Likewise, the court should dismiss plaintiffs' causes of action for unpaid overtime and minimum wage, and the seventh cause of action for violation of various Labor Code sections as they failed to plead sufficient facts.

Dated: September 8, 2015                 Respectfully submitted,

By: _____/s/_____

Jeffery M. Hubins

Attorneys for all Defendants

-21-