PETER RUKIN (SBN 178336)
prukin@rhdtlaw.com
VALERIE BRENDER (SBN 298224)
vbrender@rhdtlaw.com
RUKIN HYLAND DORIA & TINDALL LLP
100 Pine Street, Suite 2150
San Francisco, CA 94111
Telephone: (415) 421-1800
Facsimile: (415) 421-1700

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

CURTIS JOHNSON and ANTHONY
ARANDA, on behalf of themselves and all
others similarly situated,

        Plaintiffs,

      v.

SERENITY TRANSPORTATION, INC., a
California Corporation, DAVID FRIEDEL,
SERVICE CORPORATION
INTERNATIONAL,  SCI CALIFORNIA
FUNERAL SERVICES, INC., THE NEPTUNE
SOCIETY OF CENTRAL CALIFORNIA, INC.,
LIFEMARK GROUP, INC., and COUNTY OF
SANTA CLARA,

        Defendants.

Case No.  3:15-cv-02004-JSC

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED
CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

I.    INTRODUCTION AND BACKGROUND ..................................................................1

II.   ARGUMENT .................................................................................................................1

    A.   Plaintiffs' Allegations Against SCI/SCI California, Lifemark, And Neptune State Sufficient Facts to Support Plaintiffs' Joint Employer Theories Under California Law ......................................................................2

        1.   Plaintiffs have alleged sufficient facts to establish a plausible joint employer theory of liability against Defendants under California's common law employment analysis .............................................3

        2.   Plaintiffs allege sufficient facts that Defendants controlled the wages, hours, or working conditions of Plaintiffs and Class Members and that they suffered or permitted Plaintiffs and Class Members to work ..........5

    B.   Plaintiffs Have Sufficiently Pled FLSA Joint Employer Allegations Against All Defendants ...................................................................................5

        1.   Plaintiffs have alleged adequate facts to support joint employer liability under the *Bonnette* factors .................................................6

        2.   Plaintiffs have also alleged numerous facts that support joint employer liability under the *Torres-Lopez* factors .........................................8

    C.   Plaintiffs' California Labor Code Claims Are Sufficiently Pled............................10

        1.   Defendants fail to raise any challenge to Defendants' liability under Labor Code § 2810.3 ...................................................................10

        2.   Plaintiffs' Second Cause of Action adequately states a claim for relief for minimum wages ....................................................................11

        3.   Plaintiffs' Third Cause of Action for overtime wages is adequately pled ..................................................................................................12

        4.   Plaintiffs' Seventh Cause of Action for wage statement violations is adequately pled ...................................................................................13

    B.   Plaintiffs Have Sufficiently Pled Their Theories Of Liability Against Defendant David Friedel ...................................................................................13

        1.   Labor Code Section 2753 .........................................................................14

        2.   Alter Ego ..................................................................................................15

        a.   Unity of interest and ownership .....................................................15

        b.   Inequitable result ...........................................................................17

        3.   FLSA joint employer liability ..................................................................17

III.  CONCLUSION ............................................................................................................18

*Air Couriers Int'l v. Employment Dev. Dep't.,*
150 Cal. App. 4th 923 (2007) ......................................................................... 4

*Alexander v. FedEx Ground Package Sys., Inc.,*
765 F. 3d 981 (9th Cir. 2014) ......................................................................... 3

*Armenta v. Osmose, Inc.,*
135 Cal. App. 4th 314 (2005) ......................................................................... 11

*Arredondo v. Delano Farms Co.,*
No. 1:09-CV-01247-LJO, 2012 WL 1232294 (E.D. Cal. Apr. 12, 2012) ........................... 5

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ......................................................................... 4

*Automotriz del Golfo de California v. Resnick,*
47 Cal.2d 792 (1957) ......................................................................... 15

*Axon Solutions, Inc. v. San Diego Data Processing Corp.,*
No. 09 CV 2543, 2010 WL 1797028 (S.D. Cal. May 4, 2010) ........................... 16

*Ayala v. Antelope Valley Newspapers, Inc.,*
59 Cal. 4th 522 (2014) ......................................................................... 3, 4

*Bank of Montreal v. SK Foods, LLC,*
476 B.R. 588 (N.D. Cal. 2012) ......................................................................... 15, 16

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ......................................................................... 1, 2, 4, 10

*Bonnette v. Cal. Health & Welf. Agency,*
704 F. 2d 1465 (9th Cir.1983) ......................................................................... 6, 7

*Boucher v. Shaw,*
572 F.3d 1087 (9th Cir. 2009) ......................................................................... 17

*Brownlee v. Conine,*
957 F. 2d 353 (7th Cir. 1992) ......................................................................... 3

*Car Carriers, Inc. v. Ford Motor Co.,*
745 F.2d 1101 (7th Cir.1984) ......................................................................... 1

*Cardenas v. McLane Foodservices, Inc.,*
796 F. Supp. 2d 1246 (C.D. Cal. 2011) ......................................................................... 11

*Carrillo v. Schneider Logistics Trans-Loading & Distribution, Inc.,*
No. 2:11-CV-8557-CAS, 2014 WL 183956 (C.D. Cal. Jan. 14, 2014) ................... 6, 7, 9, 10

*Gaillard v. Natomas Co.,*
208 Cal. App. 3d 1250 (1989) ......................................................................... 14

*Ghazaryan v. Diva Limousine, Ltd.*,
    169 Cal. App. 4th 1524 (2008) ................................................. 11

*Guitierrez v. Carter Bros. Sec. Servs., LLC*,
    No. 2:14-CV-00351-MCE, 2014 WL 5487793 (E.D. Cal. Oct. 29, 2014) ................. 6, 9

*Irwin v. Clark*,
    400 F.2d 882 (9th Cir. 1968) ................................................. 12

*Lambert v. Ackerley*,
    180 F. 3d 997 (9th Cir.1999) ................................................. 6, 17

*Lee v. City of Los Angeles*,
    250 F. 3d 668 (9th Cir. 2001) ................................................. 2, 8

*Lemus v. Timberland Apartments, L.L.C.*,
    No. 3:10-CV-01071-PK, 2011 WL 7069078 (D. Or. Dec. 21, 2011) ................. 7

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
    519 F.3d 1025 (9th Cir.2008) ................................................. 2, 8

*Martinez v. Combs*,
    49 Cal. 4th 35 (2010) ................................................. 2, 11, 15

*Mendiola v. CPS Sec. Solutions, Inc.*,
    60 Cal. 4th 833 (2015) ................................................. 11

*Narayan v. EGL*,
    616 F. 3d 895 (9th Cir. 2010) ................................................. 4

*Pac. Mar. Freight, Inc. v. Foster*,
    No. 10-CV-0578-BTM-BLM, 2010 WL 3339432 (S.D. Cal. Aug. 24, 2010) ................. 16

*Renfro v. City of Emporia, Kan.*,
    948 F. 2d 1529 (10th Cir. 1991) ................................................. 12

*Reynolds v. Bement*,
    36 Cal. 4th 1075 (2005) ................................................. 15

*Rimes v. Noteware Dev. LLC*,
    No. C-09-0281 EMC, 2010 WL 3069250 (N.D. Cal. Aug. 4, 2010) ................. 16

*S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations*,
    48 Cal. 3d 341 (1989) ................................................. 3, 4

*Soto v. Diakon Logistics (Delaware), Inc.*,
    No. 08-CV-33-L WMC, 2013 WL 4500693 (S.D. Cal. Aug. 21, 2013) ................. 13

*Torres–Lopez v. May*,
    111 F. 3d 633 (9th Cir.1997) ................................................. 6, 8, 9, 10

*U.S. Dep't of Labor v. Cole Enterprises, Inc.*,
    62 F. 3d 775 (6th Cir. 1995) ................................................. 17

*Unichappell Music, Inc. v. Modrock Prod., LLC*, No. CV 14-02382 DDP PLA, 2015 WL 546059
    (C.D. Cal. Feb. 10, 2015) ............................................................................ 16

*Villalpando v. Exel Direct Inc.*,
    No. 12-CV-04137 JCS, 2014 WL 1338297 (N.D. Cal. Mar. 28, 2014) ............................ 1, 4

*Zoran Corp. v. Chen*,
    185 Cal. App. 4th 799 (Cal.Ct.App.2010) .......................................................... 16

## STATUTES

29 United States Code Section 203(d) ........................................................................ 6

29 United States Code Section 203(g) ........................................................................ 6

California Civil Code Section 1605 .......................................................................... 15

California Corporation Code Section 300 (a) .................................................................. 15

California Corporation Code Section 301 ..................................................................... 14

California Corporation Code Section 309 ..................................................................... 15

California Labor Code Section 1194 ......................................................................... 11

California Labor Code Section 226 .......................................................................... 13

California Labor Code Section 226(a) ........................................................................ 13

California Labor Code Section 2753 ..................................................................... 1, 14, 15

California Labor Code Section 2753(a) ....................................................................... 14

California Labor Code Section 2753(b) ....................................................................... 14

California Labor Code Section 2810.3 ........................................................................ 10

California Labor Code Section 510 .......................................................................... 12

## OTHER AUTHORITIES

DLSE Manual, Section 49.2.1.2 ............................................................................. 12

IWC Wage Orders ................................................................................... passim

## RULES

Federal Rule of Civil Procedure 8 ........................................................................... 2

Federal Rule of Civil Procedure 8(a) ......................................................................... 1

## I. INTRODUCTION AND BACKGROUND

Plaintiffs and proposed class members are mortuary drivers who transport decedents between various locations (including hospitals, nursing homes, and other facilities) and end of life facilities like mortuaries, funeral homes, and crematoria. Third Amended Complaint ("TAC"), ¶ 1. Although drivers do not control the manner and means by which they perform their work, but rather operate under the close control and direction of others, they have been misclassified as independent contractors and denied the benefits of California and federal wage and hour laws. TAC, ¶¶ 8, 9, 11-15, 39, 145.

Defendants now move to dismiss all Defendants except Serenity Transportation, Inc., on the grounds that: (1) Plaintiffs' joint employer allegations against SCI/SCI California, Neptune, Lifemark, and Santa Clara County (collectively "the Workplace Defendants") are insufficiently pled under Fed. R. Civ. Pro. 8(a); Plaintiffs' Labor Code Section 2753 and alter ego theories are insufficiently pled against Defendant David Friedel; and (3) Plaintiffs' California minimum wage and overtime claims, wage statement claims, and PAGA claims fail to state a claim. However, Defendants' motion mischaracterizes Plaintiffs' legal theories, ignores numerous facts alleged in the TAC, and relies on extrinsic evidence and inferences that cannot be considered on a Rule 12(b)(6) motion to dismiss. Because Plaintiffs have alleged sufficient facts to present viable claims for relief against all Defendants on all theories of liability, Defendants' motion should be denied.

## II. ARGUMENT

Under the Federal Rules of Civil Procedure, Rule 8(a), a pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," including "either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir.1984)). "Heightened fact pleading of specifics" is unnecessary; plaintiffs need only plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 547. Further, "a plaintiff's burden at the pleading stage is relatively light." *Villalpando v. Exel Direct Inc.*, No. 12-CV-04137 JCS, 2014 WL 1338297, at *4 (N.D. Cal. Mar. 28, 2014). For purposes of ruling on a Rule 12(b)(6) motion,

the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir.2008). "As a general rule, 'a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'" *Lee v. City of Los Angeles*, 250 F. 3d 668, 688 (9th Cir. 2001).

Defendants' motion to dismiss disregards all of these operative legal principles. Defendants ignore numerous facts and legal theories that Plaintiffs have alleged and ask this Court to apply a detailed fact pleading standard that has been expressly rejected by the courts. *Twombly*, 550 U.S. at 547. The facts alleged in the TAC sufficiently identify Defendants' unlawful wage and hour practices and put Defendants on notice of the claims against them and the grounds for relief. *Id.* Because the TAC satisfies the FRCP 8 pleading standard, Defendants' motion should be denied.

### A. Plaintiffs' Allegations Against SCI/SCI California, Lifemark, And Neptune State Sufficient Facts to Support Plaintiffs' Joint Employer Theories Under California Law

There are three alternative tests to employment under the IWC Wage Orders: "(a) to exercise control over the wages, hours or working conditions, *or* (b) to suffer or permit to work, *or* (c) to engage, thereby creating a common law employment relationship." *Martinez v. Combs*, 49 Cal. 4th 35, 64 (2010), *as modified* (June 9, 2010). These three alternative definitions have "the obvious utility of reaching situations in which multiple entities control different aspects of the employment relationship" and are "specifically intended to include both temporary employment agencies and employers who contract with such agencies to obtain employees within the definition of 'employer.'" *Id.* at 59.

Defendants move to dismiss all California claims against SCI, SCI California, Lifemark, and Neptune on the grounds that they are not joint employers under California law and thereby cannot be held liable for the underlying wage and hour claims that Plaintiffs allege. Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint ("Mot. to Dismiss"), at 15-17. However, Defendants' reliance on *Martinez* to support dismissal is misplaced. Plaintiffs have alleged the precise facts missing from *Martinez*, and courts have found that facts similar to those alleged in the TAC give rise to joint employer liability. As Plaintiffs have alleged sufficient facts to establish an

employment relationship with Defendants SCI/SCI California, Neptune, and Lifemark under each of the definitions set forth in the Wage Order, Defendants' motion to dismiss the California state law claims must be denied.

### 1. Plaintiffs have alleged sufficient facts to establish a plausible joint employer theory of liability against Defendants under California's common law employment analysis

In the independent contractor misclassification context, federal courts frequently apply the California common law test for employment, which analyzes whether "the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired." *Alexander v. FedEx Ground Package Sys., Inc.*, 765 F. 3d 981, 988 (9th Cir. 2014) (citing to *S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations,* 48 Cal. 3d 341, 350 (1989)). "Significantly, what matters under the common law is not how much control a hirer *exercises,* but how much control the hirer retains the *right* to exercise." *Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal. 4th 522, 533 (2014) (emphasis in original).

Here, Plaintiffs have pled that Defendants SCI/SCI California, Lifemark, and Neptune retained extensive rights to control Plaintiffs' and class members' work, and that these Defendants required Drivers to follow their detailed policies setting forth how Drivers were to complete their work. For example, Plaintiffs allege that Defendants SCI/SCI California retained the right to control how Plaintiffs and class members are to carry out their work through detailed labeling and witness removal protocol; requiring that Drivers receive training; detailing the time period in which STI Drivers were to respond to calls; and retained the right to control driver dress code. (TAC, ¶ 24). Similarly, Plaintiffs allege that Defendant Neptune "created detailed policies governing the work of STI Drivers that Neptune could change at any time." (TAC, ¶ 25). These policies and procedures included: (1) instructions on how and where to record information about the deceased (including paperwork); (2) how to handle the deceased; and (3) the order in which Drivers were to complete tasks. *Id.*[1] Defendant Lifemark promulgated similar policies. (*See* TAC, ¶ 26).

---

[1] Defendants' contention that these detailed allegations are "conclusory" and that Plaintiffs should have attached a copy of the policies to the complaint (Mot. to Dismiss, at 5) is frivolous. Labeling an allegation conclusory, "whatever exactly that overused lawyers' cliche means," is itself bereft of analysis and meaning. *Brownlee v. Conine*, 957 F. 2d 353, 354 (7th Cir. 1992). And Plaintiffs know of no case where a court has required that plaintiffs support their factual statements in a wage

Plaintiffs have alleged that these policies controlled the manner and means in which drivers were required to perform their work. These allegations are "sufficient to put all of the Defendants on notice of the conduct that is the basis of Plaintiffs' claims." *Villalpando,* 2014 WL 1338297, at *5 (denying the defendants' motion to dismiss joint employers in an independent contractor misclassification case where the plaintiffs "alleged specific facts about the policies that are the subject of their claims," the policies were common to the class, and the "common policies 'control the manner and means by which the Drivers perform their work'").

In addition, Plaintiffs have alleged facts relevant to secondary indicia of employment status under *Borello.* For example, Plaintiffs allege that: the Workplace Defendants retained the right to remove Drivers from their work rotation, which terminated Drivers' work for those Defendants;[2] Drivers' relationship with the Workplace Defendants was indefinite;[3] work transporting the deceased required no special skill or training;[4] and the services that Plaintiffs provided to each Workplace Defendant were integral to Defendants' work.[5] These and other detailed allegations regarding the ways in which Defendants SCI/SCI California, Lifemark, and Neptune controlled the manner and means by which Drivers accomplished mortuary transportation work are adequate to support liability against these Workplace Defendants. *Twombly*, 550 U.S. at 547; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

and hour complaint with extrinsic proof.

[2] TAC, ¶ 35; *Ayala*, 59 Cal. 4th at 531 ("Perhaps the strongest evidence of the right to control is whether the hirer can discharge the worker without cause, because '[t]he power of the principal to terminate the services of the agent gives him the means of controlling the agent's activities.'").

[3] TAC, ¶ 33 (alleging that Drivers were made available to SCI/SCI California, Neptune, Lifemark, and the Santa Clara County Coroner (SCCC) on an ongoing basis); *Narayan v. EGL*, 616 F. 3d 895, 903 (9th Cir. 2010) (length and indefinite nature of the plaintiff Drivers' tenure with Defendant pointed toward an employment relationship).

[4] TAC, ¶ 34; *Narayan*, 616 F.3d at 903 (factor favored employee status where "Drivers were not required to possess any special license beyond a normal driver's license, and no skills beyond the ability to drive.").

[5] TAC, ¶¶ 21, 28-32 (alleging that Drivers carry out Defendants' policies and procedures and serve Defendants' customers, and that Defendants provide removal services and retain employees who do the same work as STI Drivers); *Air Couriers Int'l v. Employment Dev. Dep't.*, 150 Cal. App. 4th 923, 936 (2007)("Drivers delivered packages to [Defendant]'s customers, not to their own customers. [Defendant] set the rates charged to customers, billed the customers, and collected payment. All of these facts, established at trial, reveal the drivers' deliveries were part of [Defendant]'s regular business.").

## 2. Plaintiffs allege sufficient facts that Defendants controlled the wages, hours, or working conditions of Plaintiffs and Class Members and that they suffered or permitted Plaintiffs and Class Members to work

Plaintiffs have also sufficiently pled a claim for relief under the remaining two IWC Wage Order definitions of employer. Plaintiffs allege that: (1) the Workplace Defendants set detailed policies governing Drivers' work; (2) the Workplace Defendants retained the right to remove Drivers from their work rotation; (3) Drivers were made available to the Workplace Defendants 24 hours a day; (4) Drivers were subject to training by some Workplace Defendants; (5) Drivers conducted removals for the Workplace Defendants' customers; (6) Drivers' compensation was set in part by the Workplace Defendants;[6] and (7) when Drivers were on SCI/SCI California, Lifemark, or Neptune's locations, or performing work for these Workplace Defendants, they were under their supervision and control.[7] These facts are sufficient to support a claim that the Workplace Defendants controlled Drivers' wages, hours and working conditions. *See Arredondo v. Delano Farms Co.*, No. 1:09-CV-01247-LJO, 2012 WL 1232294, at *20 (E.D. Cal. Apr. 12, 2012) (genuine dispute precluding summary judgment where alleged joint employer determined location and time of work; gave detailed instructions regarding the work; and provided training). They also are sufficient to plead a claim that the Workplace Defendants suffered or permitted Drivers to work. *Id*. at *21 (fact that alleged joint employer helped set workers' wages and determined in part the workers' work location and hours established that it may have had knowledge of and failed to prevent the allegedly unlawful work from occurring). Because Plaintiffs have adequately pled their joint employer theory of liability, the Court should deny Defendants' motion to dismiss Plaintiffs' state law claims against SCI, SCI California, Neptune, and Lifemark.

### B. Plaintiffs Have Sufficiently Pled FLSA Joint Employer Allegations Against All Defendants

Under the Fair Labor Standards Act (FLSA), an employer is "any person acting directly or

---

[6] TAC, ¶ 37 ("Defendants have paid Plaintiffs and Class Members under a common compensation plan and policy where Drivers are paid a flat rate set by Defendants for each dispatch they complete.").

[7] TAC, ¶¶ 24-26.

indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). To "employ" under the statute is to "to suffer or permit to work." 29 U.S.C. § 203(g). These definitions are "given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes." *Lambert v. Ackerley,* 180 F. 3d 997, 1012 (9th Cir.1999). In determining whether an employer-employee relationship exists, courts look to the "economic reality" of the employment relationship. *Torres–Lopez v. May,* 111 F. 3d 633, 639 (9th Cir.1997) (quoting *Bonnette v. Cal. Health & Welf. Agency,* 704 F. 2d 1465, 1470 (9th Cir.1983)). In the Ninth Circuit, courts look to the "factors set forth in *Bonnette,* 704 F.2d at 1470, and *Torres–Lopez,* 111 F.3d at 640, to guide their analysis." *Carrillo v. Schneider Logistics Trans-Loading & Distribution, Inc.*, No. 2:11-CV-8557-CAS, 2014 WL 183956, at *6 (C.D. Cal. Jan. 14, 2014). The *Bonnette* factors include: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Bonnette*, 704 F. 2d at 1470. In varying combinations, these factors have been considered by other courts for the same purpose. *Id*. "A court should consider all those factors which are 'relevant to [the] particular situation' in evaluating the 'economic reality' of an alleged joint employment relationship under the FLSA." *Torres-Lopez*, 111 F. 3d at 639 (citing *Bonnette*, 704 F. 2d at 1470).

Here, Plaintiffs have pled sufficient facts to support FLSA joint employer liability and defeat Defendants' motion to dismiss. *See Guitierrez v. Carter Bros. Sec. Servs., LLC*, No. 2:14-CV-00351-MCE, 2014 WL 5487793, at *6 (E.D. Cal. Oct. 29, 2014) (motion to dismiss denied on joint employer allegations under the FLSA where Plaintiffs alleged a number of facts that indicated employment status under the *Bonnette* and *Torres-Lopez* standard).

### 1. Plaintiffs have alleged adequate facts to support joint employer liability under the *Bonnette* factors

As set forth below, Plaintiffs have adequately pled the *Bonnette* factors.

**Power to hire and fire.** Plaintiffs have alleged that all Defendants retained the right to remove Drivers from their work rotation. *See supra*, at Section II.A.1; *see also Bonnette*, 704 F.2d at 1470 (power to hire and fire indicative of employment status). The removal of a Driver from

work rotation at a Defendant's site effectively terminates the Driver from that Defendant and is indicative of employment status. *See Lemus v. Timberland Apartments, L.L.C.,* No. 3:10-CV-01071-PK, 2011 WL 7069078, at *1 (D. Or. Dec. 21, 2011) (defendant's right to remove employees from the job site for safety concerns supported the *Bonnette* factor of the 'power to hire and fire').

**Control over work schedules or conditions.** Plaintiffs allege that Drivers were made available to Defendants 24 hours a day pursuant to their work demands. *See* Dkt. No. 18; *see supra*, Section II.A.2; *see also Bonnette*, 704 F.2d at 1470 (supervision and control of employee work schedules or conditions of employment indicative of employment status). Plaintiffs also allege that Defendants SCI/SCI California, Neptune, and Lifemark promulgated detailed policies that governed the work Drivers performed. *See supra* Section II.A.1; *Carrillo*, 2014 WL 183956, at *8 (denying summary judgment for defendant where defendant was "closely monitoring and enforcing productivity standards for [alleged employees and] imposed and enforced other operating procedures, including procedures that governed [alleged employees'] daily job functions.").

In the case of Defendant County of Santa Clara, Plaintiffs allege that SCCC prescribed the "timeframe in which STI Drivers were expected to respond to different types of calls, including Death Scene Transport Response Time and Facility Transport Response time; the amount of time that Drivers were required to wait at the scene if the deceased was not ready to be transported; and 'stand-by' and 'dry-run' time." (TAC, ¶ 27). Plaintiffs also allege that SCCC required that STI Drivers "display no insignia other than that provided by the ME/C [Medical Examiner/Coroner]" and that "uniform apparel shall be subject to approval by the ME/C." *Id.* And Plaintiffs allege that SCCC detailed how Drivers were to transport the deceased and required that STI's Drivers "shall, while making removals, act at all times in accordance with instructions given by the ME/C Investigator at the scene." *Id.* All of these facts support Plaintiffs' allegation that SCCC closely supervised Drivers' work and controlled how their work was completed. *Bonnette*, 704 F.2d at 1470; *Carrillo,* WL 183956, at *8.[8]

---

[8] Defendants make various unsupported and improper factual representations in their brief. For example, Defendants contend that SCI, SCI California, Neptune, Lifemark and SCCC imposed

**Rate and method of payment.**  Plaintiffs allege that Defendants have all participated in the compensation arrangement whereby Defendants paid Plaintiffs and Class Members under a flat, piece rate compensation scheme for each dispatch they complete.  (TAC, ¶ 37); *Carrillo*, 2014 WL 183956, at *9 (factor weighed against defendant employer for summary judgment where defendant influenced the rate and method of pay).  These facts are indicative of employment status.

**Employment records.**  Plaintiffs state that "SCCC required that STI/STI Drivers keep records of service completion, and retained the right to keep its own records of runs."  (TAC, ¶ 27).  Plaintiffs allege that SCCC also required that all Drivers complete a 'Live Scan' fingerprinting process.  *Id.*  Since all other Defendants have not substantially responded to any discovery requests, Plaintiffs have no knowledge regarding whether other Defendants retained employment records.

## 2. Plaintiffs have also alleged numerous facts that support joint employer liability under the *Torres-Lopez* factors

The *Torres–Lopez* factors for joint employer liability include: "(1) whether the work was a specialty job on the production line, (2) whether responsibility under the contracts between a labor contractor and an employer pass from one labor contractor to another without material changes, (3) whether the premises and equipment of the employer are used for the work, (4) whether the employees had a business organization that could or did shift as a unit from one [worksite] to another, (5) whether the work was piecework and not work that required initiative, judgment or foresight, (6) whether the employee had an opportunity for profit or loss depending upon [the alleged employee's] managerial skill, (7) whether there was "permanence [in] the working relationship, and (8) whether the service rendered is an integral part of the alleged employer's

work controls and reporting obligations on Plaintiffs merely to verify that the work was performed. (*See* Mot. to Dismiss, at 13).  Defendants also claim that the "joint employers have absolutely no input into the drivers' compensation" (*id.*), which is not only contrary to Plaintiffs' allegations but also contradicted by the extrinsic evidence that Defendants have improperly submitted with their motion. *See* Dkt. No. 51-1, at STI000045 (stating that Plaintiffs and class members receive "a percentage of the fees for the services" that SCI/SCI California, Neptune, and Lifemark pay for the removals, which suggests that joint employer Defendants *did* influence Plaintiffs' and class members' pay).  Defendants' attempt to bring in these extrinsic facts and evidence is entirely improper. *Manzarek*, 519 F.3d at 1031 (at the pleading stage, a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party"); *Lee*, 250 F.3d at 688 ("As a general rule, 'a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'").

business." *Carrillo*, 2014 WL 183956, at *6 (citing to *Torres-Lopez*, 111 F.3d at 640).

Here, Plaintiffs have alleged a number of facts that support employment status under the *Torres–Lopez* factors.

**Piecework that required no initiative and no opportunity for profit or loss (factors five and six).** Plaintiffs' TAC states that Drivers' work required no special license or training in order to transport the deceased for Defendants between hospitals, convalescent homes, home care, mortuaries, coroner facilities, and other places. *See Torres-Lopez*, 111 F.3d at 644 (where work is "piecework" that requires no great initiative or judgment, this factor favors employment status). Plaintiffs were paid a flat rate simply based on the number of runs that they did, such that it can be inferred that there was little opportunity for profit or loss based on managerial skill. (*See* TAC, ¶ 34). *See Guitierrez,* 2014 WL 5487793, at *6 (denying a motion to dismiss on FLSA joint employer claims where, among other facts alleged, the plaintiffs alleged that they were paid an hourly wage; therefore, there was no opportunity for profit or loss depending on the plaintiffs' managerial skill); *see also Torres-Lopez*, 111 F.3d at 644 (no opportunity for profit or loss based on managerial skill where workers "worked at a piece-rate and the amount of money they earned depended solely upon the number of cucumbers they themselves picked.").

**Whether the work was an integral part of the alleged employer's business and permanence of the working relationship (factors seven and eight).** Plaintiffs also allege facts that the work that they did was integral to the Workplace Defendants' businesses. Lifemark, SCI/SCI California, and Neptune are all funeral and/or crematorium companies that advertise removal services as part of the funeral services that they provide to their clients. (TAC, ¶¶ 30-31); *see Guitierrez,* WL 5487793, at *6 (the plaintiffs alleged that class members performed work that was integral to the defendant employer's business where the service that class members provided was integral to the services that defendant offered its customers); *see also Torres-Lopez*, 111 F.3d at 644 (work was integral to business where "[u]nless the cucumbers were picked and sent to the cannery, [Defendant] would not have been able to realize any of the economic benefits from its substantial investment in growing the cucumbers")

Additionally, the work that Plaintiffs performed was indefinite and ongoing. (TAC, ¶ 33);

*Torres-Lopez*, 111 F.3d at 644 (permanence of the working relationship is indicative of employment status). SCCC further required that Drivers be available to them 365 days per year, 7 days per week, 24 hours per day, and that at least two vehicles and sufficient personnel be available for response to the Medical Examiner for case transportation at all times. (TAC, ¶ 32). This degree of integration and permanence is indicative of employment status.

**Premises and equipment (factor 3).** Plaintiffs allege that they perform removal work to bring decedents to the Workplace Defendants' locations (TAC, ¶¶ 1, 24-27), and fill out the Workplace Defendants' paperwork. (TAC, ¶ 37). In this respect, the Workplace Defendants have provided the location at which Plaintiffs perform their jobs and provide some of the materials that Plaintiffs need to perform their work. *Carrillo*, 2014 WL 183956, at *13 (summary judgment denied where the defendant owned or leased the premises where class members worked); *see also Torres-Lopez*, 111 F.3d at 644 (where the defendant had an ownership interest in the premises and equipment, this factor favored employment status). The TAC further alleges that Santa Clara County "retained the right to supply some of the equipment, including body bags, plastic sheeting, and body shrouds." (TAC, ¶ 27).

Defendants entirely ignore the numerous facts Plaintiffs have alleged that support their theory that the Workplace Defendants SCI/SCI California, Neptune, Lifemark, and SCCC were joint employers under the FLSA. Plaintiffs have adequately put the Workplace Defendants on notice of their claims and meet the plausibility requirements of Rule 8. *Twombly*, 550 U.S. at 547.

**C. Plaintiffs' California Labor Code Claims Are Sufficiently Pled**

**1. Defendants fail to raise any challenge to Defendants' liability under Labor Code § 2810.3**

Plaintiffs have asserted a wage claim against Defendants SCI/SCI California under Labor Code Section 2810.3, which provides that a client employer shall share with a labor contractor all civil legal responsibility and civil liability for all workers supplied by that labor contractor for . . . the payment of wages. (*See* TAC ¶¶ 78-82). The relevant factual allegations include: (1) the allegation that Serenity and Friedel are labor contractors (TAC ¶¶ 10, 81, 93, 109, 120), and (2) the predicate facts supporting wage claims against Serenity and Friedel. (*See* TAC generally).

However, nowhere in their Motion to Dismiss do Defendants address this theory of liability. Accordingly, for purposes of this motion, Defendants have waived any argument that Plaintiffs have failed to state a wage claim against Defendants SCI/SCI California premised on liability under Labor Code Section 2810.3.

**2. Plaintiffs' Second Cause of Action adequately states a claim for relief for minimum wages**

California Labor Code § 1194, along with IWC Wage Order 9-2001, require that employees be paid at least the minimum wage for all hours worked. *See Martinez*, 49 Cal. 4th at 64. California law, unlike federal law, requires employees to be paid for "all hours" worked "at the statutory or agreed rate and no part of this rate may be used as a credit against a minimum wage obligation." *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 323 (2005). "[A] piece-rate formula that does not compensate directly for all time worked does not comply with California Labor Codes, even if, averaged out, it would pay at least minimum wage for all hours worked." *Cardenas v. McLane Foodservices, Inc.*, 796 F. Supp. 2d 1246, 1252 (C.D. Cal. 2011); *see also Gonzalez v. Downtown LA Motors, LP*, 215 Cal. App. 4th 36, 49 (2013) (employees compensated on a piece rate basis must be compensated at least minimum wage for all hours worked).

Here, Plaintiffs have alleged that they were assigned to shifts of at least 24 hours a day, five days a week. (TAC, ¶¶ 18-19). Plaintiffs allege that they are not compensated for the time that they are awaiting calls, nor were they compensated for other required activities, such as participating in meetings and completing paperwork. (*Id.* at ¶¶ 84-85). As a result, Defendants did not properly pay Plaintiffs and class members for all hours worked, as required by California law. *Cardenas*, 796 F. Supp. 2d at 1252; *see also Gonzalez*, 215 Cal. App. 4th at 49.

Plaintiffs have also alleged additional facts to demonstrate that their on-call time was compensable and constituted "hours worked." The DLSE uses a similar analysis to that used under the FLSA to determine whether on-call time is compensable. *See Ghazaryan v. Diva Limousine, Ltd.*, 169 Cal. App. 4th 1524, 1535, at n. 10 (2008) (DLSE modeled its analysis on FLSA case law); *see also Mendiola v. CPS Sec. Solutions, Inc.*, 60 Cal. 4th 833, 841 (2015) (setting forth the seven-factor analysis for determining whether on-call time is control time and hours worked).

Here, Plaintiffs allege (and Defendants entirely ignore) that Defendants STI and Friedel "required and expected that Drivers immediately respond to notices of calls on their STI-issued Nextel radios." (TAC, ¶ 84). Plaintiffs further allege that SCI/SCI California, Neptune, and Lifemark "expected that Drivers be available 24 hours a day, 7 days a week, and expected Drivers to respond to dispatches within a specified timeframe." *Id.* Plaintiffs also state that they could receive as many as seven or eight calls a day, with each call taking approximately two hours. *Id.* Finally, Plaintiffs allege that these requirements made it difficult for them to engage in personal activities when they were not responding to calls. *Id.* These facts are sufficient to state a plausible claim that Plaintiffs' on-call time was compensable. *See Renfro v. City of Emporia, Kan.*, 948 F. 2d 1529, 1535 (10th Cir. 1991) (affirming summary judgment for firefighters on the grounds that their 24 hour "on call" time was compensable hours worked where firefighters were required to report to the stationhouse within twenty minutes of being paged, and firefighters received as many as 13 calls during an on-call period, with an average of 3-5 calls).[9]

### 3. Plaintiffs' Third Cause of Action for overtime wages is adequately pled

California Labor Code §510 and IWC Wage Order 9-2001 §3, require employers to pay overtime to their employees. An employer that chooses to operate on a piece rate system is not exempt from paying proper overtime wages. *See Gonzalez,* 215 Cal. App. 4th at 52 ("Labor Code section 510 requires employees to be paid not less than one and one-half times their 'regular rate of pay' for all hours in excess of eight [hours] in a day or 40 [hours] in a week. The 'regular rate of pay' in a piece rate system is calculated by dividing the employee's 'total earnings' for the week, or in the alternative, to pay one and one-half times the employee's piece-rate for all overtime hours.") (citing DLSE Manual, § 49.2.1.2).

Plaintiffs have alleged sufficient facts to plead a plausible claim that their 24-hour shifts were hours worked and thereby resulted in substantial uncompensated overtime. *See supra*, at Section II.C.1. Plaintiffs have further alleged that Defendants have a policy of not paying overtime to Drivers and that Defendants have uniformly failed to pay overtime wages to Drivers. (TAC, ¶

---

[9] Defendants' citation to *Irwin v. Clark*, 400 F.2d 882, 883 (9th Cir. 1968) is inapposite. In *Irwin*, drivers were not required to report at any given time, which is not Plaintiffs' allegation here.

37).  And in their Third Amended Complaint, Plaintiffs allege that they responded to a substantial number of calls, with Drivers receiving as many as seven or eight calls a day with each call taking approximately two hours.  (*Id.* at ¶ 84).  This amounts to 14-16 hours a day in responding to calls, six to eight hours of which should have been compensated as overtime, even if a finder of fact does not ultimately find that that Plaintiffs' 24-hour on-call shifts were hours worked.  Plaintiffs have thus presented multiple grounds on which they may recover overtime wages such that Defendants' motion to dismiss this claim should be denied.

### 4.  Plaintiffs' Seventh Cause of Action for wage statement violations is adequately pled

California Labor Code § 226(a) and IWC Wage Order No. 9 require that Defendant semimonthly, or at the time of each payment of wages, must furnish Plaintiffs and putative class members with accurate, itemized written statements containing all the information described in § 226 and Wage Order No. 9, § 7, including, but not limited to, the total hours worked by the employees.

Defendants contend that Plaintiffs "fail altogether to allege exactly what the [wage statement] violations were, what was not provided in the wage statements, and what Plaintiffs' actual injuries were." (Mot. to Dismiss, at 26).  But that is simply untrue.  Plaintiffs clearly allege that Defendants' wage statements fail to show their actual and total hours worked.  (TAC, ¶ 126).  Plaintiffs further allege that they have been precluded from accurately monitoring the number of hours worked; determining whether they have been lawfully compensated for all hours worked; and thus seeking all accrued overtime pay.  (*Id.,* at ¶¶ 126, 129).  *See supra*, at Section II.C.1-2; *Soto v. Diakon Logistics (Delaware), Inc.*, No. 08-CV-33-L WMC, 2013 WL 4500693, at *10 (S.D. Cal. Aug. 21, 2013) ("[T]he Court finds that Plaintiffs' inability to determine their hourly wage meets the minimal-injury requirement of Section 226.").  Defendants' motion to dismiss this claim should be denied.

### B.  Plaintiffs Have Sufficiently Pled Their Theories Of Liability Against Defendant David Friedel

Plaintiffs' TAC alleges three theories of liability against Defendant David Friedel: Labor

Code Section 2753, Alter Ego, and FLSA Joint Employer. Defendants' only challenge two of these theories. (Mot. to Dismiss, at 8-10, 20-21). Defendants' motion to dismiss Defendant Friedel from this case should be denied because Plaintiffs have properly alleged their California Labor Code 2753 claim and alter ego theory claim. Plaintiffs further sufficiently allege that Defendant Friedel is a joint employer under the FLSA.

**1.  Labor Code Section 2753**

Labor Code Section 2753(a) provides that any person who "knowingly advises an employer to treat an individual as an independent contractor to avoid employee status for that individual shall be jointly and severally liable with the employer if the individual is found not to be an independent contractor." Labor Code Section 2753(b) excludes from the scope of Section 2753(a) "any person who provides advice to his or her employer."

Plaintiffs allege that Friedel is the owner, shareholder, and Board Member of STI. (TAC, ¶ 9). Plaintiffs further allege that Defendant David Friedel, in his capacity as a member of STI's Board of Directors, recommended that STI reclassify its Drivers as independent contractors. (*Id.,* ¶¶ 9, 29). Plaintiffs allege that this reclassification was done to avoid employee status and thus save STI and Friedel various costs including "overtime, payroll taxes, vehicle maintenance, fuel, and worker's compensation." (*Id.*) These facts are sufficient to state a claim against Friedel under Labor Code Section 2753.

Friedel argues that he cannot be held liable for unlawful acts he allegedly committed in his capacity as an STI Board Member and controlling/sole shareholder because he was also a W-2 employee of STI. (Mot. to Dismiss, at 21). However, California law recognizes a distinction between individuals acting in their capacity as officer-employees and individuals acting in their capacity as a member of a board of directors. *See Gaillard v. Natomas Co.*, 208 Cal. App. 3d 1250, 1265 (1989) (not applying the business judgment rule to officer-directors because in securing golden parachute payments, "they were not 'perform[ing] the duties of a director' as specified in section 309, but were acting as officer employees of the corporation.").[10] Since Friedel is the sole

---

[10] Indeed, it is unreasonable to suggest that members of a board of directors are employees under California law. *See* Cal. Corp. Code § 301 (describing election procedures for board members).

shareholder of Serenity Transportation, a reasonable finder of fact could find that the cost savings to his company is sufficient consideration under Labor Code 2753.  *See* Cal. Civ. Code § 1605 (defining consideration as "[a]ny benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled….").  Plaintiffs have pled a plausible claim for relief under Labor Code Section 2753.

### 2.  Alter Ego

Plaintiffs also sufficiently allege facts showing Defendant David Friedel is STI's alter ego. Under California law, a defendant is the alter ego of a corporation where "'(1) . . . there [is] such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow.'"  *Bank of Montreal v. SK Foods, LLC*, 476 B.R. 588, 597 (N.D. Cal. 2012) (quoting *Automotriz del Golfo de California v. Resnick*, 47 Cal.2d 792, 796 (1957)).

### a.  Unity of interest and ownership

Courts determine whether there is sufficient "unity of interest" by weighing a list of non-exhaustive factors, including, for example: "commingling of funds," "treatment by an individual of the assets of the corporation as his own," "failure to obtain authority to issue stock," "the holding out by an individual that he is personally liable for the debts of the corporation," "the failure to maintain minutes or adequate corporate records," "the identical equitable ownership in the two entities," "identification of the equitable owners thereof with the domination and control of the two entities," "identification of the directors and officers of the two entities in the responsible

---

Board members control a corporation.  *See* Cal. Corp. Code § 300 (a) ("[T]he business and affairs of the corporation shall be managed and all corporate powers shall be exercised by or under the direction of the board.").  The corporation does not exercise the requisite control over board members to make them employees of the corporation under California law.  *See supra*, at Section II(A)(1) (common law employment test focuses on the right to control).  Labor Code Section 2753 is entirely consistent with Cal. Corp. Code § 309, which only shields directors from liability where they act in good faith, after a reasonable inquiry, and without knowledge. Nor is liability under Labor Code Section 2753 at odds with *Reynolds* and *Martinez*.  *See Reynolds v. Bement*, 36 Cal. 4th 1075, 1089 (2005) (noting that the DLSE could impose liability on individual corporate agents through common law (alter ego) or statutory theories (citing to two provisions of the Labor Code)).

supervision and management," "sole ownership of all of the stock in a corporation by one individual," "use of the same office or business location," "the employment of the same employees and/or attorney," "failure to adequately capitalize a corporation," "the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation," and "disregard of legal formalities." *Bank of Montreal*, 476 B.R. at 598 (*citing Zoran Corp. v. Chen*, 185 Cal. App. 4th 799, 811–12 (Cal. Ct. App. 2010)). Since "the most damning evidence of the 'unity of interest and identity' is often in the hands of the corporation and its principals and can be found nowhere else . . . the pleading requirement is not strict." *Unichappell Music, Inc. v. Modrock Prod., LLC*, No. CV 14-02382 DDP PLA, 2015 WL 546059, at *4 (C.D. Cal. Feb. 10, 2015). Moreover, "a plaintiff need only plead 'two or three'" factors to adequately plead "unity of interest." *Id.* (quoting *Pac. Mar. Freight, Inc. v. Foster*, No. 10-CV-0578-BTM-BLM, 2010 WL 3339432, at *6 (S.D. Cal. Aug. 24, 2010)). *See also Axon Solutions, Inc. v. San Diego Data Processing Corp.*, No. 09 CV 2543, 2010 WL 1797028, at *3 (S.D. Cal. May 4, 2010) (sufficient facts alleged where complaint stated that the defendant was undercapitalized, had commingled funds, and one defendant represented that it was liable for the other defendant's debts).

Here, Plaintiffs sufficiently plead multiple factors supporting "unity of interest" by alleging that Defendant David Friedel "dominated and controlled the actions of STI," that he "maintains sole ownership of all stock in STI," that he "failed to conduct board meetings as required by the corporate by-laws and state law," that he "failed to adequately capitalize STI," that he "used his personal home as the location for board of directors meetings," and that he "failed to properly maintain the minutes and corporate records of STI." (TAC, at ¶ 9). Similar allegations have been found sufficient to survive a motion to dismiss. *See Rimes v. Noteware Dev. LLC*, No. C-09-0281 EMC, 2010 WL 3069250, at *3 (N.D. Cal. Aug. 4, 2010) (plaintiff's allegations that defendant "completely controlled, dominated, managed, and operated [the corporation] for his sole and exclusive benefit; that he commingled his assets with those of [the corporation]; that he failed to observe LLC formalities by failing to maintain proper records; and that he inadequately capitalized [the corporation]" were sufficient to survive motion to dismiss on alter ego theory of liability).

### b. Inequitable result

Plaintiffs allege that Defendant David Friedel "knowingly advised STI to treat Plaintiffs and similarly situated Drivers as independent contractors to avoid employee status" and "operated STI for the purpose of concealing [these] violations of the California Labor Code." (TAC, ¶ 9).  As a result of this unlawful cost-saving measure, he directly profited from the reduced business costs as STI's sole shareholder.  Thus, if the act of misclassifying Drivers as independent contractors is treated as STI's alone, Friedel will be unjustly enriched by the very legal violations he committed.

### 3. FLSA joint employer liability

Finally, Plaintiffs have adequately pled FLSA liability against Defendant Friedel. Under FLSA's expansive definition of "employer," an officer or agent who has an ownership interest in a corporate employer and exercises control of the corporation's business may be deemed an "employer" under FLSA along with the corporation itself.  *See Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009) (upholding a denial of a motion to dismiss where two individual defendants held 70 percent ownership and 30 percent ownership interest and all three defendants had "control and custody of the plaintiff class, their employment, and their place of employment."); *see also Lambert*, 180 F. 3d at 1012 (upholding a finding of liability against individual defendants where the court found that defendants had a "significant ownership interest with operational control of significant aspects of the corporation's day-to-day functions; the power to hire and fire employees; [the power to] determin[e][ ]salaries; [the responsibility to] maintain [ ] employment records") (internal citation omitted); *U.S. Dep't of Labor v. Cole Enterprises, Inc.*, 62 F. 3d 775, 778 (6th Cir. 1995) ("One who is the chief executive officer of a corporation, has a significant ownership interest in it, controls significant functions of the business, and determines salaries and makes hiring decisions has operational control and qualifies as an 'employer' for the purposes of FLSA.").  In addition to alleging that Defendant Friedel is the CEO and sole shareholder of STI, Plaintiffs have alleged that he personally drafted the hiring criteria for Drivers, interviewed Drivers, scheduled Drivers for shifts, participated in promulgating STI Policy Standards that controlled the work of Drivers, and supervised compliance with these policies.  (*See* TAC, ¶¶ 19, 22).  Plaintiffs have thus sufficiently pled that Defendant Friedel is a joint employer under FLSA.

**III. CONCLUSION**

For the reasons stated above, Defendants' motion to dismiss should be denied.


DATED: September 22, 2015                    RUKIN HYLAND DORIA & TINDALL LLP



                                             By: */s/ Peter Rukin*
                                             PETER RUKIN
                                             Attorney for Plaintiffs