JEFFERY M. HUBINS (SBN 220657)
*jhubins@schauman-hubins.com*
WILLIAM F. SCHAUMAN
*wschauman@schauman-hubins.com*
SCHAUMAN & HUBINS
A Professional Law Corporation
5700 Stoneridge Mall Road, Suite 130
Pleasanton, CA 94588
Tel: (925) 846-5400
Fax: (925) 846-5402

Attorneys for all Defendants:
Serenity Transportation, Inc, David Friedel,
Service Corporation International,
SCI California Funeral Services, Inc.,
The Neptune Society of Central California, Inc.,
Lifemark Group, Inc., County of Santa Clara,

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS JOHNSON and ANTHONY ARANDA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SERENITY TRANSPORTATION, INC., a California Corporation, DAVID FRIEDEL, SERVICE CORPORATION INTERNATIONAL, SCI CALIFORNIA FUNERAL SERVICES, INC., THE NEPTUNE SOCIETY OF CENTRAL CALIFORNIA, INC., LIFEMARK GROUP, INC., and COUNTY OF SANTA CLARA,<br><br>Defendants. | **CASE NO. 15-CV-02004-JSC**<br><br>**DEFENDANTS' REPLY BRIEF TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT**<br><br>Judge: Honorable Jacqueline Scott Corley<br><br>Hearing Date: Oct. 15, 2015, 9:00 a.m.<br><br>Hearing Location: Courtroom F, 15th Floor |

Defendants submit this brief in reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss Plaintiffs' Third Amended Class Action Complaint.

Not surprisingly, plaintiffs raise of host of arguments in opposition to defendants' motion to dismiss the Third Amended Complaint (TAC). In essence, the summary of plaintiffs' argument is that there are factually enough allegations in the complaint that warrant denying defendants'

**[1]**

motion to dismiss. Each point is addressed below in the same corresponding order as raised in plaintiffs' opposition.

For the sake of brevity and to avoid merely reiterating what is already raised in defendants' motion to dismiss, defendants do not rebut here each and every point raised in plaintiffs' opposition.

**1.     Plaintiffs' allegations pertaining to joint employment under California law are factually insufficient.**

Plaintiffs named five defendants, Service Corporation International (SCI), SCI California Funeral Services, Inc. (SCI CAL), the Neptune Society of Central California, Inc. (Neptune), Lifemark Group, Inc. (Lifemark), and County of Santa Clara (Santa Clara) as defendants under a "joint employer" theory of liability.[1] The TAC generally alleges that the joint employer defendants retain "extensive control over the wages, hours, and working conditions of the Plaintiffs and other Drivers." (TAC, 4:21-24). While defendants do not necessarily disagree with the law as recited by plaintiffs, defendants suggest that plaintiffs' *application* of the law to these facts intellectually strained.

Defendant Serenity Transportation, Inc. (STI) contracts with hundreds of various mortuaries, funeral homes, hospitals, universities, and Counties to transport decedents and human remains to and from different locations. (TAC, 4:18-20). Those mortuaries, funeral homes, hospitals, universities, and Counties contracting with STI are commonly referred to as STI's "clients." In general, STI has a written contract with its client that details the terms and conditions governing the relationship. For public entities, this requires STI to go through the process of competitive bidding, including responding to a RFP. STI and its clients negotiate the terms and conditions upon which STI will perform its removal services, including the rates at which STI will be paid, the time in which STI is expected to respond to its client's request for transport service, et cet.

STI retains drivers to perform the transportation services for its clients. STI and its drivers have a negotiated written contract governing the conditions of the drivers' services, including

---

[1] These named defendants are commonly referred to in this brief as "joint employer" defendants.

**[2]**

DEFENDANTS' REPLY BRIEF TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS TAC

payment and hours. To this point, plaintiffs alleged in the TAC that defendants STI and David Friedel "assign drivers to 24-hour shifts, five days a week, resulting in 120-hour workweeks." (TAC, 4:25-26). "Drivers are or were made available twenty-four hours a day to" STI's clients, including the "joint employer" defendants named in the TAC. (TAC, 4:26).

"STI and Friedel recruit and supervise Drivers. STI and Friedel advertise Driver positions on Craigslist. " (TAC, 5:1-3). "STI and Friedel schedule Drivers for their shifts, which Defendants STI and Friedel retained the right to change at their discretion." (TAC, 5:4-6). Friedel is directly "involved in the drafting of hiring criteria, the interviewing of Drivers, and the scheduling of Driver shifts." (TAC, 5:6-7).

STI and Friedel, it is alleged in the TAC, controlled the drivers' activities during the drivers' shifts, including how drivers were to act while at STI's clients' premise. The TAC states that STI and Friedel promulgated and implemented "STI Client Policy Standards," which includes how drivers are expected to dress while working, reporting details of Drivers activities, the process Drivers follow for completing STI invoicing, maintenance of vehicles, and notification of personal time off. (TAC, 5:14-19). The TAC alleges that STI maintained a contract with the drivers, and the contract could be terminated if the drivers failed to adhere to STI's standards.

Nowhere do plaintiffs allege that the joint employing defendants have the right to terminate a driver from employment *with STI*. Nowhere do plaintiffs allege that the joint employing defendants have the right to control the hours with which drivers *work for STI*. Nowhere do plaintiffs allege that the joint employing defendants have the right to control the drivers' attire in any other aspect of their service *for STI*. Nowhere do plaintiffs allege that the joint employing defendants controlled the drivers' pay—only STI controls the drivers' pay. Nowhere do plaintiffs allege that the joint employing defendants impose any workplace rules outside of minimal guidelines applying to all vendors as to not disrupt the business of the vendee.

Plaintiffs did allege that the STI drivers had to record the pickup and delivery of bodies in a certain fashion, had to "label" dead bodies in a certain fashion and had to have fingerprinting

**[3]**

DEFENDANTS' REPLY BRIEF TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS TAC

completed for work performed at the Sheriff's office. Plaintiffs fail to establish these limited protocols amount to control in the legal sense of "joint employment."

Plaintiffs cite, in support of their assertion of finding sufficient facts to warrant joint employment *Ayala v. Antelope Valley Newspapers, Inc.* 59 Cal.4th 522 (2014). However, what plaintiffs miss is that the plaintiffs in *Ayala* did not name as defendants Antelope Valley's clients—the daily subscribers to which the paper was delivered by the carriers. Antelope Valley's carriers sued the "hirer," Antelope Valley Newspapers, Inc. *Ayala*, 59 Cal.4th 528.

Likewise, plaintiffs cite *Alexander v. FedEx Ground Package System, Inc.*, 765 F.3d 981 (9th Cir. 2014) in support of their opposition. Again, like in *Ayala*, the plaintiff FedEx drivers did not name as defendants FedEx's clients as "joint employers."

FedEx drivers are frequently required to deliver or pick up packages to the back door of a business, or take a service elevator, or to check in with a security guard at a front desk when making deliveries.

Likewise, newspaper carriers are often requested by the subscriber to deliver the newspaper in a certain fashion, like for example by placing the paper on the front porch, or in a mailbox, or by leaving the papers in a fixed location at a business. These protocols are common with regard to the pick-up and delivery of goods in the commercial setting. These protocols are required for the efficiency of delivery and designed to cause as little disruption to the clients' business. The protocols are not intended to convert the third party relationship into first party employment as plaintiffs attempt here.

**2.     Plaintiffs' allegations pertaining to joint employment under Federal law (the FLSA) are factually insufficient.**

To determine if a joint employment relationship exists under the FLSA, the Ninth Circuit applies an "economic reality" test. *Torres-Lopez v. May*, 111 F.3d 633, 639 (9th Cir. 1997) (citing *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir.1983)). A court should consider all those factors which are "relevant to [the] particular situation" in evaluating the "economic reality" of an alleged joint employment relationship under the FLSA. Among the factors are: the degree and control of the workers; the degree of supervision, director indirect; the

**[4]**

power to determine the pay, rates or methods of payments, preparation of payroll and payment of wages. *Id*. These *Bonette* factors "roughly correspond to the *Torres-Lopez* factors." *Moreau v. Air France*, 356 F.3d 942, 950 (9th Cir. 2004).

The "factual" allegations plaintiffs put forward to support joint employment under the FLSA are—as stated in plaintiffs' opposition: (1) the joint employers set detailed policies governing drivers work; (2) the joint employers retain the right to remove drivers from their work rotation; (3) drivers were made available to the joint employers 24 hours a day; (4) drivers were subject to training "by some" joint employer defendants; (5) drivers conducted removals for the joint employer defendants' customers; (6) and drivers compensation was set "in part" by the joint employer defendants; and, (7) drivers performing work for the joint employer defendants were under their supervision and control. (Plaintiffs' Opp. 5:4-11).

These statements alone fail to meet the threshold burden of pleading factual sufficiency. For example, in their first point plaintiffs fail to state exactly what "joint employer" policies exist that govern the drivers' workplace. Plaintiff merely state that the workplace is governed by detailed policies. After over more than one year of litigation and discovery plaintiffs can barely muster a single detailed policy demonstrating what exactly the detailed policies are.

Anecdotally, virtually all aspects of business that involve deliveries by a third party vendor implement certain guidelines governing how deliveries are made. Drivers are often required to deliver or pick-up goods through a back door to avoid interfering with the vendee's business operation, or vendors are required to park in designated locations of a parking lot. Frequently posted on a business is a sign notifying vendors that deliveries will not be accepted between certain hours. In much the same fashion as defendant County of Santa Clara required basic screening of these plaintiffs, schools require parent chaperones to undergo "Live Scan" prior to permitting unsupervised chaperones to shuttle school-aged children to off-site locations.

These so-called "policies" are set by the "joint employer" defendant with STI alone and are implemented exclusively by STI. STI is the entity that directly communicates the "policy" to the drivers. The fact that a policy may incidentally implicate the manner in which a driver fulfills

DEFENDANTS' REPLY BRIEF TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS TAC

their duties while on the "joint employer's" premise does not amount to the joint employer governing the drivers' work.

Another *Bonette* factor is the right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers. Here, plaintiffs raise in their second point that the joint employing defendants retain the right to remove drivers from work "rotation." However, plaintiffs have not pled in the TAC that a driver is terminated from their employment *with STI* by the joint employing defendant.

What has actually been pled is that a joint employing defendant may refuse to permit a driver from "rotation" on its premise. However, that refusal does not in any way terminate the drivers' employment with STI or even deprive them of wages with STI. In fact, the contrary is pled in the TAC, that STI and Friedel have retained and exercised the right to terminate a Drivers' employment at any time. (TAC, 8:20-21). Suggesting that a joint employing defendant here has the right to preclude a driver from "rotation" is the equivalent of a cable TV subscriber denying an installation technician access to their house because the technician refuses to remove his shoes before entering the house or to use the garage door for entrance instead of the front door. That does not amount to a termination of employment or make the subscriber an employer.

The TAC fails to include any factual allegations demonstrating the *Bonnete* factor of preparation of payroll for the payment of wages. The TAC only suggests that Drivers prepare an invoice that is submitted to STI, and STI issues payment to the drivers. In fact, the "joint employing" defendants have no knowledge, no control, and certainly no input into the drivers' wages, payroll, or payment of wages. The only reference in the TAC that the joint employing defendants have any input into drivers' wages is a statement that the drivers' are paid a "flat rate." (TAC, 8:26-27). This carefully crafted ambiguity fails to mention that the flat rate is paid to the drivers by defendant STI—the TAC does not state the drivers are paid by the joint employing defendants. Moreover, the "flat rate" paid to the drivers by STI is entirely independent and unrelated to what STI's clients pay it.

**Control over work schedules or conditions.** Plaintiffs claim that the joint employing

[6]

defendants control the drivers' work schedule and conditions of work as a result of STI's clients requiring that STI provide transportation services to them 24-hours per day. Again, nowhere is it alleged that the joint employer defendants have the right to control what dates, what times, or the number of hours a week any particular driver may work—only that STI provide its transportation services 24 hours a day. Nor is it alleged the joint employing defendants have "veto power" over any particular drivers' request for time off or say in how the schedules are created. That authority, according to the TAC, is retained by STI.

Plaintiffs point out that defendant County of Santa Clara prescribes the timeframe in which drivers are expected to respond to different types of calls. However, this is tantamount to the California Highway Patrol requiring tow truck drivers pick-up damaged vehicles in an accident on the highway within a certain timeframe after dispatch. Prescribing a timeframe for performing contract services does not convert the third party vendor's staff into employment with the contracting entity.

**Employment records.** Plaintiff's claim that their allegations requiring STI drivers to keep "records of service completion" and undergo "Live Scan" for access to the County property is the equivalent of maintaining employment records. In a somewhat confusing proclamation, plaintiffs claim that not all defendants have "substantially responded to any discovery requests" so plaintiffs have no knowledge of whether some defendants have employment records.

To the first point, "Live Scan" testing is not an "employment record," but rather an electronic fingerprinting system conducted by an authorized Live Scan operator who transmits the information to the DOJ for criminal background check.

Secondly, the parties have engaged in discovery for more than a year and half, have taken depositions, and have obtained documents from issued subpoenas to all joint employing defendants. Defendants claimed in other pleadings that they amended the complaint adding claims of joint employment in light of the discovery of additional facts uncovered during discovery. There are no facts pled in the TAC that meet this factor—claiming lack of discovery here seems foolhardy.

DEFENDANTS' REPLY BRIEF TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS TAC

**Premises and equipment (factor 3)**. Plaintiff's claim that the third factor of *Torres-Lopez* is met because the joint employing defendants provided a location for the plaintiffs to work, and provided some of the materials plaintiffs needed to perform their work.

This case is remarkably different than *Torres-Lopez*, however, where the joint employer (Bear Creek) owned the land which the plaintiffs harvested, owned the bins which the plaintiffs used, paid the cost for transporting the goods, and provided facilities such as restrooms for plaintiffs to use. Here, the plaintiffs make a very brief stop when delivering a dead body to the joint employing defendants premise. The plaintiffs here provide their own equipment and transportation.

Plaintiffs' reliance on Santa Clara County retaining the "right to supply some of the equipment" falls short of meeting the factual sufficiency to meet this factor.

### 3. Alter Ego Liability against David Friedel.

To prevail on a claim of "alter ego," plaintiff must show (1) there is such a unity of interest that the separate personalities of the corporations no longer exist; and (2) inequitable results will follow if the corporate separateness is respected. *Moreland v. Ad Optimizers, LLC*. No. CV 13-00216 PSG, 2013 WL 3786311 at *3 (N.D. Cal. July 18, 2013).

Plaintiffs' claim that in equitable result is properly pled claiming that, "Friedel will be unjustly enriched by the very violations he committed." They provide no legal support for this rash conclusion. Plaintiffs suggest the reason for classification of drivers as independent contractors was intentional, fraudulent, and willful. These statements are not created of fact, but are conclusions.

To the contrary, as stated in the motion to dismiss, pleading a corporate entity's inability to satisfy a judgment fails to state facts sufficient to carry plaintiffs' pleading burden for this factor. *Neilson v. Union Bank of Cal., N.A.,* 290 F.Supp.2d 1101, 1116 (C.D. Cal. 2003); *Sonora Diamond Corp. v. Sup.Ct.,* 83 Cal.App.4th 523, 539 (2002) (stating, "The alter ego doctrine does not guard every unsatisfied creditor of a corporation but instead affords protection where some conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the

DEFENDANTS' REPLY BRIEF TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS TAC

corporate form. Difficulty in enforcing a judgment or collecting a debt does not satisfy this standard.").

**4. Conclusion.**

Defendants' motion to dismiss should be granted for the reasons therein and here stated.

Dated:  September 29, 2015                    Respectfully submitted,

By:  _____/s/_____
　　　Jeffery M. Hubins

　　　Attorneys for all Defendants

DEFENDANTS' REPLY BRIEF TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS TAC