PETER RUKIN (SBN 178336)
*prukin@rhdtlaw.com*
VALERIE BRENDER (298224)
*vbrender@rhdtlaw.com*
RUKIN HYLAND DORIA & TINDALL LLP
100 Pine Street, Suite 2150
San Francisco, CA 94111
Telephone: (415) 421-1800
Facsimile: (415) 421-1700

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS JOHNSON and ANTHONY ARANDA, on behalf of themselves and all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　　v.<br><br>SERENITY TRANSPORTATION, INC., a California Corporation, DAVID FRIEDEL, SERVICE CORPORATION INTERNATIONAL,  SCI CALIFORNIA FUNERAL SERVICES, INC., and COUNTY OF SANTA CLARA,<br><br>　　　　　Defendants. | Case No.  3:15-cv-02004-JSC<br><br>**FOURTH AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>**(1) FEDERAL FLSA OVERTIME**<br>**(2) CALIFORNIA MINIMUM WAGE AND OVERTIME VIOLATIONS;**<br>**(3)  REIMBURSEMENT FOR BUSINESS EXPENSES;**<br>**(4)  RELATED LABOR CODE VIOLATIONS;**<br>**(5)  VIOLATIONS OF THE UNFAIR COMPETITION LAW (UCL); and**<br>**(6)  CIVIL PENALTIES UNDER LABOR CODE PRIVATE ATTORNEY GENERAL ACT**<br><br>**DEMAND FOR JURY TRIAL** |

## I.   INTRODUCTION

1.      Plaintiffs Curtis Johnson and Anthony Aranda ("Plaintiffs") and the proposed collective and class action members have worked as mortuary transportation drivers, carrying dead bodies and other human remains from various locations (including nursing homes, hospitals, and homes) on behalf of Defendants to Defendants' facilities. Though Plaintiffs and their colleagues were fully controlled by Defendants while carrying out the core work of Defendants' enterprises, such that they plainly amounted to common law and statutory employees, they were unlawfully denied the rights and benefits of employment through an unlawful scheme in which they were labeled "contractors." Plaintiffs now bring this action under California and federal law, pursuant to Rule 23 of the Federal Rules of Civil Procedure and 29 U.S.C. § 216(b), to have Defendants' scheme declared unlawful and to recover the unpaid wages, business expenses, and related penalties that Defendants owe to Plaintiffs and similarly situated employees.

## II.   JURISDICTION

2.      The Court has original jurisdiction over Plaintiff's First Claim for Relief pursuant to 28 U.S.C. §1331 and 29 U.S.C. §§ 201 *et seq.* and 216(b).

3.      This Court has supplemental jurisdiction over Plaintiff's remaining causes of action pursuant to 28 U.S.C. § 1367(a).

4.      Defendant SCI removed this action pursuant to 28 U.S.C. § 1441(c), on the grounds that the Court possesses jurisdiction over the action under 28 U.S.C. 1331.

## III.   VENUE

5.      Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Alameda County, the District in which this action was commenced.

## IV.   PARTIES

**A.      Plaintiffs**

6.      Plaintiff Curtis Johnson was a Driver for Defendants from January 1, 2012 to August 23, 2013.  Plaintiff Johnson performed services for Defendants throughout the San Francisco Bay Area, including in Alameda County.

7.      Plaintiff Anthony Aranda was a Driver for Defendants from approximately August 2012 until March 2015.  Plaintiff Aranda performed services for Defendants throughout the San Francisco Bay Area, including in Alameda County. As an STI Driver, Plaintiff Aranda conducted removals for SCI companies throughout his time with STI, including in 2015.

**B.      Defendants**

8.      Defendant Serenity Transportation Inc. ("STI") is a California corporation that is registered and doing business in Alameda County.  STI is and/or was an employer of Plaintiffs and Class and Collective Action Members within the meaning of the federal Fair Labor Standards Act, California Labor Code, and applicable Industrial Welfare Commission ("IWC") wage order.  STI: suffered or permitted Plaintiffs and Class and Collective Action Members to work; exercised control over the wages, hours or working conditions of Plaintiffs and Class and Collective Action Members; and engaged Plaintiffs and Class and Collective Action Members.

9.      Defendant David Friedel is the owner, shareholder, CEO, and Board Member of STI. Friedel is and/or was an employer of Plaintiffs and Class and Collective Action Members within the meaning of the federal Fair Labor Standards Act, California Labor Code, and applicable IWC wage order.  Friedel: suffered or permitted Plaintiffs and Class and Collective Action Members to work; exercised control over the wages, hours or working conditions of Plaintiffs and Class and Collective Action Members; and engaged Plaintiffs and Class and Collective Action Members. Further, Friedel is the alter ego of Defendant STI.  Friedel operated STI for the purpose of concealing violations of the California Labor Code with respect to Plaintiffs and Class Members, dominated and controlled the actions of STI, and knowingly advised STI to treat Plaintiffs and similarly situated Drivers as independent contractors to avoid employee status. Friedel has also failed to respect the corporate form of STI.  Among other things, Friedel (a) failed to adequately capitalize STI; (b) failed to properly maintain the minutes and corporate records of STI; (c) maintains sole ownership of all stock in STI; (d) used his personal home as the location for board of directors meetings; and (e) failed to conduct board meetings as required by the corporate by-laws and state law.

10.     In addition to employing Plaintiffs and the Class and Collective Action Members, STI and Friedel acted as labor contractors for SCI/SCI California and SCC.

11.     Defendant SCI California Funeral Services, Inc. ("SCI California") is a provider of funeral and end-of-life services in Alameda County and across the United States.  On information and belief SCI California is wholly owned by Service Corporation International.  SCI California is and/or was an employer of Plaintiffs and Class and Collective Action Members within the meaning of the federal Fair Labor Standards Act, California Labor Code, and applicable IWC wage order.  SCI California: suffered or permitted Plaintiffs and Class and Collective Action Members to work; exercised control over the wages, hours or working conditions of Plaintiffs and Class and Collective Action Class Members; and engaged Plaintiffs and Class and Collective Action Members.  The work that Plaintiffs and other Drivers performed for SCI California was labor within SCI California's usual course of business.  SCI/SCI California are referred to throughout as "SCI/SCI California" or "SCI."

12.     Defendant Service Corporation International ("SCI") is a provider of funeral and end-of-life services in Alameda County and across the United States.  SCI is and/or was an employer of Plaintiffs and Class and Collective Action Members within the meaning of the federal Fair Labor Standards Act, California Labor Code, and applicable IWC wage order.  SCI: suffered or permitted Plaintiffs and Class and Collective Action Members to work; exercised control over the wages, hours or working conditions of Plaintiffs and Class and Collective Action Members; and engaged Plaintiffs and Class and Collective Action Members. The work that Plaintiffs and other Drivers performed for SCI was labor within SCI's usual course of business.

13.     Defendant County of Santa Clara is a provider of investigation, removal, and autopsies in Santa Clara County through the Office of the Medical Examiner-Coroner ("Santa Clara County" or "SCC").  Santa Clara County is and/or was an employer of Plaintiffs and Collective Action Members within the meaning of the federal Fair Labor Standards Act.  Santa Clara County: suffered or permitted Plaintiffs and Collective Action Members to work; exercised control over the wages, hours or working conditions of Plaintiffs and Collective Action Members; and engaged Plaintiffs and Collective Action Members.

# V.     STATEMENT OF FACTS

14.     According to the U.S. Department of Labor's website, misclassification of employees as independent contractors presents one of the most serious problems facing affected workers, employers, and the entire economy.  U.S. Department of Labor, Wage and Hour Division, http://www.dol.gov/whd/workers/misclassification/ (last accessed November 16, 2015).

15.     The California Department of Industrial Relations has stated: "When a worker is misclassified as an independent contractor, he or she is not subject to California minimum wage and overtime protection laws. Additionally, the worker has no workers' compensation coverage if injured on the job, no right to family leave, no unemployment insurance, no legal right to organize or join a union, and no protection against employer retaliation. The misclassification of workers as independent contractors creates an unfair playing field for responsible employers who honor their lawful obligations to their employees. The misclassification of workers results in a loss of payroll tax revenue to the State, estimated at $7 billion per year, and increased reliance on the public safety net by workers who are denied access to work-based protections." State of California, Department of Industrial Relations, http://www.dir.ca.gov/dlse/worker_misclassification.html (last accessed November 14, 2015).

16.     Plaintiffs Anthony Aranda and Curtis Johnson, two former Drivers of Serenity Transportation, SCI/SCI California, and the Santa Clara County Coroner's Office ("SCC") are victims of the pernicious process of pushing all of the costs of employment off onto workers who should have been afforded the protections of federal and state labor laws.

17.     STI is a mortuary transportation company owned and operated by Defendant David Friedel. STI and Friedel assign drivers to 24-hour shifts, five days a week, resulting in 120-hour workweeks.  These punishing hours meant that Drivers often received irregular sleep, sometimes only managing to catch two to three hours of rest between calls. Plaintiffs and Class Members have worked these grueling hours in order to keep their jobs.

18.     STI contracts with and serves as a labor contractor for SCI/SCI California which requires that Drivers be available to them 24-hours a day.  SCI/SCI California is a multi-million

dollar corporation and the largest provider of funeral and cemetery services in the United States. Service Corporation International, at http://www.sci-corp.com/en-us/about-sci/our-business-history.page (last accessed November 16, 2015). SCI/SCI California advertises mortuary transportation positions in California, and Plaintiffs have known and interacted with SCI mortuary transportation employees who conduct the same work as Plaintiffs and, upon information and belief, follow the same SCI identification policies as Plaintiffs. Plaintiffs and other Drivers were made available to SCI/SCI California 24 hours a day, five days a week. Plaintiffs understand that SCI/SCI California could receive all of the benefits of having perpetually on-call Drivers, without having to pay the cost associated with an ever-engaged workforce.

19.    Santa Clara County's Office of the Coroner contracts with Serenity to provide human body pick-up and transportation services. Santa Clara County required that Serenity provide services 365 days per year, 7 days per week, and 24-hours per day. Despite these requirements Plaintiffs are not aware of any effort to ensure that Plaintiffs and Class Members' wage and hour violations were not violated. This is despite the fact that Drivers, such as Plaintiff Johnson, sometimes conducted five to six calls for the County in a single day and the County received documentation from STI detailing the hours that Plaintiffs and Class Members spent on calls.

20.    Defendants work together closely and in an integrated fashion to provide end-of-life services throughout Northern California, including the transportation of decedents between hospitals, convalescent homes, home care, mortuaries, and/or coroner facilities. Defendants employ STI Drivers to transport decedents. Upon information and belief, Defendants have employed more than 40 Drivers through STI during the Class Period. Each of the Defendants has retained extensive control over the wages, hours, and working conditions of Plaintiffs and other Drivers.

21.    STI and Friedel recruit and supervise Drivers. STI and Friedel advertise Driver positions on Craigslist. These advertisements specify, among other qualifications, that Drivers must be available for on-call shifts 24 hours a day; "professional attire required for interview and at all times once employed;" and that a daily dress code is enforced. Defendants STI and Friedel scheduled Drivers for their shifts, which Defendants STI and Friedel retained the right to change at

1   their discretion.  Defendant Friedel has been personally involved in the drafting of hiring criteria,

2   the interviewing of Drivers, and the scheduling of Driver shifts.

3   22.   Defendant SCC retained a list current Serenity Drivers, their identification numbers,

4   and their photo IDs.  SCC issued drivers identification numbers and badges that they were expected

5   to wear when on SCC calls.

6   23.   Drivers are or were made available 24 hours a day to SCI/SCI California, and the

7   Santa Clara County Coroner's Office ("SCC").  New potential STI Drivers were sent to SCC to

8   conduct a Live Scan, which was part of the STI hiring process.  SCC also retained influence over

9   termination decisions at STI.  For example, the Santa Clara County Coroner suspended a driver

10  from its contract for 30 days.  When Defendant Friedel was considering terminating the contractor

11  for breach after this instance, the lieutenant made clarified that the infraction was somewhat minor,

12  and the driver was not terminated.

13  24.   Defendants STI and Friedel served as labor contractors for Defendants SCI/SCI

14  California and SCC by providing Drivers to meet Defendants' needs.  On any given day,

15  approximately 9-12 Drivers were made available for Defendants.  Among SCI locations, SCI

16  routinely engaged five or more STI Drivers weekly.

17  **A.   All of the Defendants promulgate and implement detailed policies and procedures that
        control the work performed by Plaintiffs and other Drivers.**
18

19  25.   Drivers carry out Defendants' policies and procedures and serve Defendants'

20  customers.

21  26.   Defendants STI and Friedel promulgated "STI Client Policy Standards."  These

22  policy standards required that Drivers: wear a two-piece dress suit; report to dispatch their status

23  throughout the day, including: "call start time," "on scene," "transporting," "dropping at

24  mortuary," and "available for another call"; notify dispatch if the Driver was checking out of

25  service before their shift ended at 9:00 A.M.; complete STI invoice information; keep vehicles

26  clean and stocked; and notify STI for personal time off.  These policies also notified drivers that

27  continuous violations of customer standards could result in contract termination or the driver being

28  taken off rotation.   Defendant Friedel has been personally involved in the enforcement of these

policies, including supervising Driver compliance with these policies and disciplining Drivers for noncompliance.  Defendants Friedel and STI maintained that these policies, including the dress code required by Defendants (a two piece black dress suit), was imposed by the Client Employers, not by STI and Friedel.  Defendants also maintained that violation of Client Policies was grounds for termination and did in fact terminate Drivers for violations of these policies.

27.     Defendants SCI, SCI California, and the County of Santa Clara control the means and methods by which Drivers carry out their jobs, including by directing Drivers how to handle and remove decedents.

28.     Defendants SCI/SCI California promulgated detailed policies governing the work of STI Drivers that it retained the right to change at any time.  These policies detailed specific identification and removal protocol for SCI/SCI California facilities, which Plaintiffs and Class Members were expected to follow exactly. These policies included, among other specifications, the type of identification band, labeling procedures and the method of witnessing the removal of human remains, and step-by-step procedures for removing infant and fetal remains. In policies and procedures sent to Plaintiffs and Class Members, SCI/SCI California referred to identification and labeling procedures as "one of the most fundamental aspects of our business" and part of what made them "the best in the industry."  SCI locations also established step-by-step specifications for how Plaintiffs and Class Members were to conduct their work.  For example, one SCI company specified (1) where STI Drivers were to park; (2) the documents that STI Drivers were to fill out once arriving on site; (3) that STI Drivers were to proceed next to the delivery area and label the deceased according to SCI procedures, (4) that STI Drivers were to then place the shroud on a lift, the body on the lift, wrap the shroud, write the name on the shroud, and staple paperwork to the foot of the shroud; (5) slide case onto shelf head first with feed showing, return lift, close refer; (6) that STI Drivers were to roll up door, remove vehicle, close door and exit building through the office area.  Activities such as these could take Plaintiffs and other STI Drivers up to 30 minutes. Plaintiffs and Class Members were under the supervision of SCI/SCI California while responding to their calls and while completing the tasks on site as described above, and SCI had the right to enforce its work rules on drivers while drivers were at their facilities.

29.     SCI/SCI California retained the right to require that STI/STI Drivers receive ongoing training from SCI in order to provide the Service Guarantee as required by SCI's guidelines, and STI Drivers did receive training from SCI staff on topics such as identification protocol, proper and safe transfer of the deceased, and proper documentation of removal work. Furthermore, Plaintiffs understood that SCI companies wanted to give the impression that Plaintiffs were from SCI. As a result, Plaintiffs would introduce themselves to families as representatives from SCI and were given business cards that they gave to families that had the names of various SCI mortuaries on them and a place in which the STI Driver could write his or her name. Additionally, Plaintiff Aranda recalls giving families SCI materials, such as brochures, that addressed handling a death and the steps that families could take.

30.     SCI/SCI California retained records of the drivers who made SCI calls, the time period in which Drivers were dispatched on behalf of SCI, the identities of the Drivers.  SCI further audited Drivers motor vehicle licenses.

31.     SCI/SCI California required Drivers to respond to calls within 60-75 minutes and required STI Drivers to be dressed "in a professional manner at all times."  Because of the distance that Plaintiffs had to travel to arrive at various SCI locations throughout the Bay Area, and the corresponding traffic, Plaintiffs frequently had to leave for these calls almost immediately.  SCI implemented restrictions that prohibited STI Drivers to transfer multiple decedents when working for SCI and did not permit STI Drivers to transfer multiple decedents for SCI companies.  If STI Drivers had multiple SCI calls, SCI required Drivers to complete the first SCI call and then proceed to the next call, despite the additional time this could take.

32.     Plaintiff Aranda also took numerous long distance trips to Los Angeles and San Diego on behalf of SCI to retrieve the deceased.  These trips took approximately 15 hours round trip, Plaintiff was paid a flat rate for these trips, and Plaintiff was not paid overtime.  Numerous STI Drivers conducted these types of runs for SCI.  Despite working exclusively for SCI on these trips, SCI did not pay Plaintiff or Class Members overtime compensation or, to Plaintiff's knowledge, make any effort to ensure that Plaintiff or Class Members were compensated for the overtime hours that they worked.  To Plaintiff's knowledge, SCI also made no effort to ensure that

1 | Plaintiff was afforded meal and rest breaks for these trips.  Plaintiff was never separately

2 | compensated for rest breaks on these trips.

3 | 33.    When Drivers were on SCI/SCI California's locations, or performing work for

4 | SCI/SCI California, they were under SCI/SCI California's supervision and control.

5 | 34.    Defendant County of Santa Clara promulgated detailed policies governing the work

6 | of STI Drivers that it retained the right to change at any time.  These policies detailed specific

7 | identification and removal protocol for the Santa Clara County Coroner. These policies included

8 | the timeframe in which STI Drivers were expected to respond to different types of calls, including

9 | Death Scene Transport Response Time and Facility Transport Response time.  For example,

10 | Drivers were required to arrive at the scene within forty-five minutes after a request for service

11 | when calls were within "Zone 1," which was 12 miles from the ME/C facility. Notably, this was

12 | not 12 miles away from where Drivers were originating, which was frequently much farther away.

13 | Indeed, Plaintiff Johnson recalls responding immediately to Coroner runs when receiving Coroner

14 | calls in order to arrive at the scene within required timeframes.

15 | 35.    SCC's policies also included the amount of time that Drivers were required to wait

16 | at the scene if the deceased was not ready to be transported; and "stand-by" and "dry-run" time.

17 | For example, SCC required that Drivers must wait at the scene for up to one hour before leaving

18 | the scene of services, which was at the discretion of the Medical Examiner/Coroner.  If after one

19 | hour services were not ready, the Driver was required to be available for "stand-by" or a potential

20 | dry run.

21 | 36.    SCC also required that STI/STI Drivers keep records of service completion, and

22 | retained the right to keep its own records of runs.  SCC did in fact keep logbooks of the runs that

23 | Drivers went on and received documentation from STI regarding the hours that STI Drivers

24 | worked for SCC, including standby time and call response time.

25 | 37.    SCC prohibited STI Drivers from placing identification on the deceased;

26 | identification was to be placed and verified by the ME/C and witnessed by the contractor. SCC also

27 | prohibited Drivers from stopping at any location once en-route to the ME/C.  Furthermore, STI

28 |

1    Drivers were prohibited from carrying more than one body in a transport vehicle at one time,

2    unless the ME/C directed them otherwise.

3         38.    SCC required that all Drivers complete a "Live Scan" fingerprinting process. SCC

4    also required that STI Drivers "be attired in safe, professional and modest manner, and shall

5    display no insignia other than that provided by the ME/C [Medical Examiner/Coroner]."  The SCC

6    further provided instructions as to Drivers' grooming and dress, including requiring that "uniform

7    apparel shall be subject to approval by the ME/C." Drivers were required to wear a black suit to

8    coroner calls.

9         39.    SCC promulgated specifications for the appearance and equipment of Driver

10   vehicles and retained the right to inspect these vehicles at any time.  SCC supplied some of the

11   equipment, including body bags, plastic sheeting, and body shrouds. SCC detailed how Drivers

12   were to transport the deceased. SCC also required that STI's Drivers "shall, while making

13   removals, act at all times in accordance with instructions given by the ME/C Investigator at the

14   scene." According to Defendant Friedel, STI did not supervise Drivers when they were in the

15   service of the coroner; the coroner supervised STI Drivers during this time period and enforced the

16   coroner's rules.

17        40.    The SCC Investigator/Coroner controlled the scene and gave numerous instructions

18   to STI Drivers while on the scene.  For example, the SCC Investigator instructed Drivers on what

19   materials to bring with them to the scene and where to place these materials and the actions that

20   Drivers should take while on scene.

21   **B.    Plaintiffs and similarly situated Drivers have provided services that are an integral
22        part of Defendants' business enterprises and work.**

23        41.    Plaintiffs and similarly situated Drivers have provided services that are an integral

24   part of Defendants' business enterprises and work.  Upon information and belief, each of the

25   Defendants has employed other Drivers whom they have classified as employees and who have

26   performed work similar or identical to the work performed by class and collective action members.

27        42.    Throughout the class period, STI and Friedel have stated on their website and in

28   advertisements that Serenity Transportation provides transportation services and have referred to

Drivers as "staff."  STI and Friedel lease equipment to STI Drivers, including vehicles, a Nextel radio, stretchers, and other equipment. STI Drivers were initially classified as employees of STI when the company was founded in 2010.  Around December 2010, Defendant David Friedel, in his capacity as a member of STI's Board of Directors, recommended that STI reclassify its Drivers as independent contractors. As a result, on or about February 1, 2011, STI Drivers were reclassified as independent contractors. This reclassification saved STI and Friedel various costs including overtime, payroll taxes, vehicle maintenance, fuel, and worker's compensation. Defendants STI and Friedel have retained at least one employee who engages in the same work as STI Drivers.

43.     Defendants SCI/SCI California provides comprehensive funeral and cemetery services, including removal services, and advertises multiple California-based removal technician and driver positions on its website. These jobs include removing deceased from hospital, nursing home or residence and adhering to SCI's Identification Policies and Procedures.  Additionally, Plaintiff Anthony Aranda saw what he understood to be SCI drivers dropping off decedents at the same locations SCI locations where Plaintiffs and Class Members dropped off decedents.  These SCI drivers wore the same suits that Plaintiffs and Class Members wore and to Plaintiff's best knowledge, these Drivers performed the same work for SCI as STI Drivers.

44.     STI Drivers also provide work that is integral to the work of the Santa Clara County Coroner.  SCC has required that STI provide service 365 days per year, 7 days per week, 24 hours per day, and that at least two vehicles and sufficient personnel be available for response to the Medical Examiner for case transportation at all times.

**C.      STI Drivers require no special license or training; their relationship with Defendants has been indefinite; and Defendants retained a right to terminate Drivers at will.**

45.     Drivers' work for Defendants has been indefinite and ongoing.  Drivers often work for STI and Friedel continuously for many months or years.  Throughout this time, they have been made available to SCI/SCI California, and SCC on an ongoing basis.

46.     Plaintiffs and other STI Drivers were not required to possess a special license or undergo special training in order to transport the deceased for Defendants.  STI Drivers were made available for runs to hospitals, convalescent homes, home care, mortuaries, coroner facilities,

and/or airports to pick up and transport the deceased.  Plaintiffs' and Class Members' work frequently involved retrieving and/or transporting the deceased on interstate highways.

47.     Defendants STI and Friedel have retained and exercised the right to terminate a Drivers' employment at any time for any reason or for no reason, and Defendants SCI, SCI California, and the County of Santa Clara have retained and exercised the right to demand that Plaintiffs and other Drivers be removed from their work rotation.

48.     Despite Defendants' extensive control over Drivers' work, Plaintiffs and similarly situated Drivers have been classified as "independent contractors."

49.     Defendants have paid Plaintiffs and Class Members under a common compensation plan and policy where Drivers are paid a flat rate set by Defendants for each dispatch they complete. Drivers are not compensated for the time that they are awaiting calls. All Defendants participate in the compensation scheme, including by requiring Drivers to fill out proprietary paperwork on which Driver time is recorded.  The piecework payments to Drivers have been insufficient to meet Defendants' minimum wage obligations to Drivers.  Further, Defendants have a policy of not paying overtime to Drivers, and have in fact uniformly failed to pay overtime wages to Drivers.

50.     Defendants have also failed to secure valid workers compensation coverage for Plaintiffs and Class Members in violation of California Labor Code Section 3700, and as a result Class Members work without any insurance that will protect them in the event of workplace injury.

51.     Upon information and belief, Defendants misclassified Plaintiffs and similarly situated Drivers knowingly and willfully.

52.     Defendants have caused Plaintiffs and Class and Collective Action Members to work hours in excess of 40 hours a week.

53.     Defendants have failed to pay Plaintiffs and Class and Collective Action Members the minimum wage for all hours worked.

54.     Defendants have failed to pay overtime compensation to Plaintiffs and Class Members for hours worked in excess of eight hours per day.

55.     Defendants have failed to pay overtime compensation to Plaintiffs and Class and Collective Action Members for hours worked in excess of 40 hours per week.

56.     Defendants have failed to indemnify Plaintiffs and Class Members for employment-related expenses, including the cost of providing appropriate vehicles and vehicle expenses such as fuel, maintenance, repair, and licensing; supplies required for the transport of decedents, including gloves, sheets, and other necessary equipment; and the cost of required business liability insurance. In addition, Defendants STI & Friedel maintained a policy of charging and/or penalizing Drivers for not meeting Defendants' policies and standards by charging fees and/or taking Drivers off of rotation for missing or damaged equipment, the return of dirty vehicles, incorrect or late paperwork, arriving late on shift, among other violations determined by Defendants.

57.     Defendants have failed to record the actual hours worked by Plaintiffs and Class and Collective Action Members.

58.     Defendants have failed to provide a 30 minute off-duty meal period to Plaintiffs and Class Members.

59.     Defendants have failed to provide a second 30 minute meal period to Plaintiffs and Class Members who worked more than 10 hours a day.

60.     Defendants have failed to provide Plaintiffs and Class Members with paid rest breaks;

61.     Defendants have failed to itemize the total hours worked on wage statements furnished to Plaintiffs and Class Members.

62.     Defendants have failed to properly maintain payroll records showing the actual hours worked by Plaintiffs and Class Members.

63.     Defendants have willfully and knowingly failed to pay Plaintiffs and Class Members upon termination of employment, all accrued compensation, including repayment of all unlawful charges, compensation for missed meal periods, and payment of the minimum wage and overtime compensation.

//

FOURTH AMENDED CLASS ACTION COMPLAINT

## VI.   CLASS ACTION ALLEGATIONS

64.     Plaintiffs bring this action on their own behalf and as a class action on behalf of all persons or entities who have worked for Defendants as independent contractor-classified STI Drivers and/or Technicians in the State of California at any time within four years preceding the filing of this action.

65.     The class claims herein have been brought and may properly be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure because (1) the class is so numerous that joinder of all class members is impracticable; (2) there are questions of law and or fact common to the class; (3) the claims of the proposed class representatives are typical of the claims of the class; and (4) the proposed class representatives and their counsel will fairly and adequately protect the interests of the class. In addition, the questions of law or fact that are common to the class predominate over any questions affecting only individual class members and a class action is superior to other available means for fairly and efficiently adjudicating the controversy.

a.     Acertainability and Numerosity:  The size of the proposed Class makes individual joinder of all members impractical.  While Plaintiffs do not presently know the exact number of Class Members, Plaintiffs are informed and believe, and thereon allege, that more than 40 current and former STI Drivers and/or Technicians have been subjected to the unlawful practices alleged herein. The names and addresses of Class Members are available to Defendants. Notice can be provided to the Class Members via first class mail using techniques and a form of notice similar to those customarily used on class action lawsuits of this nature.

b.     Commonality and Predominance of Common Questions:  Common questions of law and fact exist as to all members of the Class and predominate over any questions that affect only individual members of the Class.  These common questions of law and fact include, without limitation:

          i.     Whether SCI and/or SCI California is a joint employer of Plaintiffs and Class Members;

          ii.     Whether Class Members have served Defendants as employees rather than

1                                                     independent contractors under California law;

iii.   Whether Defendants' misclassification was willful and in violation of California Labor Code § 226.8;

iv.   Whether SCI/SCI California should share with STI and Friedel all civil legal responsibility for all workers supplied by STI and Friedel for the payment of wages under California Labor Code § 2810.3;

v.   Whether Defendants' failure to comply with California Labor Code §§ 1194, 201-203, 226.3, 226.7, 510, 512, 558, and 2802, and 226.8 constitute violations of the Private Attorney General Act of 2004, California Labor Code § 2699 *et seq.*;

vi.   Whether David Friedel advised Serenity Transportation Inc. in his capacity as a board member to misclassify Drivers in violation of California Labor Code § 2753;

vii.   Whether Defendants' failure to secure workers compensation coverage for Plaintiffs and Class Members was unlawful;

viii.   Whether Defendants have employed Class Members in a position that is subject to, and not exempt from, California's overtime pay and other wage and hour requirements;

ix.   Whether Defendants have failed to meet their minimum wage obligations in violation of California Labor Code §§ 1194 *et seq.*;

x.   Whether Defendants knew or should have known that Class Members regularly worked over 40 hours per week and/or eight hour per day;

xi.   Whether Defendants failed to pay Class Members overtime wages for time worked in excess of 40 hours per week or eight hours per day;

xii.   Whether Defendants have failed to provide Class Members with adequate off-duty meal periods and compensation for missed meal periods in violation of California Labor Code §§ 226.7 and 512 and IWC Wage Order No. 9;

xiii.   Whether Defendants failed to provide compensated rest breaks to Plaintiffs

- 15 -
FOURTH AMENDED CLASS ACTION COMPLAINT

and Class Members;

xiv.    Whether Class Members have incurred employment-related expenses and losses in carrying out their duties for Defendants;

xv.    Whether Defendants have failed to indemnify Class Members for their necessary employment-related expenses and losses in violation of California Labor Code § 2802;

xvi.    Whether Defendants have unlawfully charged Class Members fees arising from their employment with Defendants in violation of California Labor Code § 226.8(a)(2);

xvii.    Whether Defendants have knowingly and intentionally failed to provide Class Members with accurate and itemized wage statements pursuant to California Labor Code § 226 and IWC Wage Order No. 9;

xviii.    Whether Defendants have violated California Labor Code § 1174 and IWC Wage Order No. 9 by failing to maintain documentation of the actual hours that Class Members worked each day;

xix.    Whether Defendants have violated California Labor Code §§201-203 by failing, upon termination, to timely pay Class Members wages that were due for minimum wage, overtime, and missed meal periods;

xx.    Whether Defendants' willful misclassification of Class Members and Defendants' failure to pay Class Members for all hours worked, failure to pay Class Members overtime compensation, failure to pay Class Members the minimum wage, failure to indemnify Class Members for their necessary employment-related expenses, failure to provide Class Members with adequate off-duty meal periods and meal period compensation, failure to provide Class Members with accurate itemized wage statements, failure to maintain documentation of the actual hours worked each day and failure to timely pay Class Members all wages that were due upon termination constitute an unlawful, unfair, and/or fraudulent business practices under

Cal. Business & Professions Code §17200, *et seq.*;

xxi.   Whether Defendants' failure to comply with California Labor Code §§ 1194, 201-203, 226.3, 226.7, 510, 512, 558, and 2802, and 226.8 constitute violations of the Private Attorney General Act of 2004, California Labor Code § 2699 *et seq.*;

c.   <u>Typicality:</u>  Plaintiffs' claims are typical of the claims of the Class. Plaintiffs and members of the Class sustained damages arising out of Defendants' aforementioned common practice of misclassifying Class Members as independent contractors.  Plaintiffs, like Class Members, were Drivers/technicians classified as independent contractors.

d.   <u>Adequacy of Representation:</u>  Plaintiffs are members of the Class, do not have any conflicts of interest with other Class Members, and will represent and protect the interests of the Class Members.  Plaintiffs' counsel is competent and experienced in litigating employment class actions.

e.   <u>Superiority:</u>  A class action is superior to other available means of adjudicating this controversy.  Class treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of effort and expense that numerous individual claims would entail.  Class treatment will also avoid the risk of inconsistent or contradictory judgments.

## VII.   <u>COLLECTIVE ACTION ALLEGATIONS</u>

66.   Plaintiffs bring the First Cause of Action for violations of the FLSA as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b) on behalf of the FLSA Collective Action Members, who include all persons who have worked for Defendants as independent contractor-classified STI Drivers at any time within the applicable statutory time period.

67.   Plaintiffs and FLSA Collective Action Members: (a) performed the same or substantially similar duties for Defendants while classified as independent contractors; (b) were subject to Defendants' common policy of classifying them as independent contractors and denying them overtime wages; (c) and are otherwise "similarly situated" employees within the meaning of the FLSA.

68.     The First Cause of Action for violations of the FLSA may be brought and maintained as an "opt-in" action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), because Plaintiffs and FLSA Collective Action Members are similarly situated.

69.     The names and addresses of the FLSA Collective Action Members are available from Defendants.  Accordingly, Plaintiffs pray herein for an order requiring Defendants to provide the names and all available contact information for all FLSA Collective Action Members so that notice can be provided to them of the pendency of this action, and their right to opt in to this action.

**FIRST CAUSE OF ACTION**
**UNPAID OVERTIME IN VIOLATION OF THE FLSA 29 USC §201 *ET SEQ.*)**
**(AGAINST ALL DEFENDANTS ON BEHALF OF PLAINTIFFS AND COLLECTIVE**
**ACTION MEMBERS)**

70.     The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference, and Plaintiffs allege as follows a claim of relief on behalf of themselves and all Collective Action Members.

71.     At all relevant times, Defendants have been, and continue to be, "employer[s]" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.  At all relevant times, Defendants have employed, and continue to employ, as "employee[s]," Plaintiffs and each of the FLSA Collective Action Members.  At all relevant times, Defendants have had gross operating revenues in excess of $500,000.

72.     Plaintiffs consent to sue in this action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b).  Plaintiff Johnson's consent form was attached to the First Amended Complaint filed in this case.  Plaintiff Aranda's consent form was attached to the Second Amended Complaint.

73.     The FLSA requires each covered employer, such as Defendants, to compensate all non-exempt employees, such as Plaintiffs and the FLSA Collective Action Members, at the rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a workweek.

74.     The FLSA Collective Action Members are entitled to overtime compensation for all overtime hours worked.

75.     At all relevant times, Defendants had a policy and practice of not paying FLSA Collective Action Members at the rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a workweek.

76.     Plaintiffs and the FLSA Collective Action Members regularly worked in excess of 40 hours a week by responding to calls and waiting for calls at Defendants' behest during their 24 hour shifts.  Plaintiff Johnson responded to as many as 34 calls in a week, and Plaintiff Aranda responded to even more than that in a week.

77.     This legal violation was effectuated through a policy of labeling Collective Action Members as "independent contractors" and refusing to pay Collective Action Members for overtime hours worked.

78.     By failing to compensate Plaintiffs and the FLSA Collective Action Members at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a workweek, Defendants violated, and continue to violate, the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1).

79.     The FLSA also imposes a record-keeping requirement on employers, including the obligation to keep accurate records of all hours worked by employees.  Defendants have knowingly and willfully failed and continue to willfully fail to record, report, and/or preserve accurate records of all hours worked by Plaintiffs and FLSA Collective Action Members.  By failing to record, report, and/or preserve records of all hours worked by Plaintiffs and the FLSA Collective Action Members, Defendants have violated, and continue to violate, the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 211(c), 215(a), and 29 C.F.R. § 516, *et seq.*

80.     Defendants' violations have at all relevant times been willful because, among other reasons, Defendants have had actual and/or constructive knowledge of Plaintiffs and FLSA Collective Action Members working overtime hours for which they have not been compensated at the rate of no less than one and one-half times their regular rate of pay.

81.     As a direct and proximate result of Defendants' unlawful acts, Plaintiffs and FLSA Collective Action Members have been deprived of overtime compensation in an amount to be determined at trial, and are entitled to recover damages in the amount of unpaid overtime compensation, interest, liquidated damages, and attorneys' fees and costs, as provided by the FLSA, 29 U.S.C. §§ 216(b) and 255, and such other legal and equitable relief as the Court deems just and proper.  In particular, Plaintiffs seek a declaratory judgment declaring unlawful Defendants' ongoing policy of classifying Collective Action members as independent contractors and denying them overtime wages.

**SECOND CAUSE OF ACTION**
**FAILURE TO PAY CALIFORNIA MINIMUM WAGE FOR ALL HOURS WORKED**
**(CALIFORNIA LABOR CODE §§1194 *ET SEQ*., 1197, 2753, 2810.3 & IWC WAGE ORDER NO. 9)**
**(AGAINST DEFENDANTS STI, FRIEDEL, SCI, SCI CALIFORNIA, ON BEHALF OF PLAINTIFFS AND CLASS MEMBERS)**

82.     The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference, and Plaintiffs allege as follows a claim of relief on behalf of themselves and all Class Members.

83.     IWC Wage Order 9-2001 and California Labor Code §§1194 and 1197 require employers to pay employees at least minimum wage for all hours worked.

84.     The minimum wage provisions of the California Labor Code are enforceable by private civil action pursuant to California Labor Code § 1194(a).

85.     According to California Labor Code §§ 1182.11, 1185, and 1194.2, an action to recover minimum wage incorporates the applicable IWC Wage Order.

86.     California Labor Code §1182.11 states that the "Industrial Welfare Commission shall…adopt minimum wage orders consistent with this section without convening wage boards, which wage orders shall be final and conclusive for all purposes."

87.     IWC Wage Order 9-2001 requires that nonexempt employees receive the minimum wage for all hours worked irrespective of whether nominally paid on an hourly, piece rate, or any other basis, at the rate of $8.00 per hour as of January 1, 2008 and $9.00 per hour as of January 1, 2014.

88.     California Labor Code § 2753 states "(a) A person who, for money or other valuable consideration, knowingly advises an employer to treat an individual as an independent contractor to avoid employee status for that individual shall be jointly and severally liable with the employer if the individual is found not to be an independent contractor."

89.     In his capacity as a shareholder and board member, Defendant Friedel knowingly advised Defendant STI to treat individuals as an independent contractor to avoid employee status and should be held jointly and severally liable with Defendant STI for relevant violations alleged herein.

90.     California Labor Code § 2810.3, effective January 1, 2015, states that "A client employer shall share with a labor contractor all civil legal responsibility and civil liability for all workers supplied by that labor contractor for…the payment of wages."

91.     A "labor contractor" is defined as "an individual or entity that supplies, either with or without a contract, a client employer with workers to perform labor within the client employer's usual course of business."

92.     "Client employer" is defined as "a business entity, regardless of its form, that obtains or is provided workers to perform labor within its usual course of business from a labor contractor."

93.     Defendants STI and Friedel served as labor contractors under § 2810.3 by providing workers to provide transportation and removal services, which is part of the usual course of business for Defendants SCI/SCI California.

94.     Upon information and belief, Defendants SCI/SCI California were client employers within the definition of Labor Code § 2810.3.

95.     During the course of the Class Period, Defendants have paid Plaintiffs and Class Members only for those hours when Plaintiffs and Class Members were responding to calls.

96.     Defendants have not paid Plaintiffs and Class Members for hours where Plaintiffs and Class Members were engaged and required to wait for their next call at Defendants' behest. Defendants STI and Friedel required and expected that Drivers immediately respond to notices of calls on their STI-issued Nextel radios.  Defendant STI and Friedel established a default 75 minute

response time for calls.  However, in practice, Defendants STI and Friedel wanted Drivers to respond within 45-60 minutes.  Because Drivers were responding at all hours of the day all around the Bay Area, and calls were frequently 30-60 minutes away in traffic, Drivers typically had to respond immediately, or at best leave their location within 15 minutes, to get to their call location. Furthermore, Drivers' Nextel radios and/or vehicles contained GPS tracking, and at times, when Plaintiffs were not in the area in which they typically responded to calls, they received a call from Defendant Friedel inquiring as to where they were.

96.     As a general practice, Drivers were unable to trade calls with ease, if at all. For example, Plaintiff Anthony Aranda asked STI dispatch and Defendant  Friedel to allow him to trade calls, and he was denied the opportunity to do so.  Plaintiff Aranda was told that other Drivers were unavailable to take his calls.  Plaintiffs and Drivers could not refuse calls without fear of punishment.  Plaintiffs attempted to refuse calls at times and were verbally reprimanded by Defendant Friedel.  Plaintiffs understood that if they refused calls, they could be taken off of call rotation for the rest of the day, thereby being denied the opportunity to work at all. To Plaintiffs' best knowledge, other Drivers had this same experience.

97.     While Plaintiffs attempted to engage in personal activities while on-call, they were often unable to do so.  Plaintiff Anthony Aranda recalls getting as little as two hours of sleep when he was on shift.  Plaintiff Aranda worked many back-to-back calls and recalls getting interrupted shortly after falling asleep.  Plaintiff Curtis Johnson generally waited at home for calls because he found that it was difficult to do any personal activities while on shift. Indeed, in February 2015, Defendant Friedel sent Drivers an email reminding them to try to shower and acknowledged that while showering could be difficult while they were on shift, they needed to make an effort to do so. STI, as a matter of policy, stated that personal business needed to be conducted during time off.

98.     While call frequency varied, Drivers could receive as many as seven or eight calls a day, and sometimes more, with each call taking approximately two hours.  Plaintiff Aranda estimates that there were many weeks when he average seven or eight calls a day.  Plaintiff Johnson estimates that he received, on average, five calls a day.  Drivers received notifications on their Nextel radios, and if they did not respond immediately, they would receive a phone call from

1    STI trying to identify where they were and if they had received the call.  Plaintiff Johnson felt like

2    these calls were like a "fire drill," where he had to respond and get on the road immediately.

3    Plaintiffs understood that other Class Members also felt that calls required an immediate response.

4    99.    Additionally, Defendants have not paid Plaintiffs and Class Members at all for

5    certain other required duties, including participating in meetings and completing paperwork.

6    Meetings occurred several times a month and generally lasted an hour.  These meetings covered

7    topics such as sexual harassment or violations of STI and Client Policies. Plaintiffs and Class

8    Members received no compensation for these activities.

9    100.    Defendants also did not maintain a complaint rest break policy and never separately

10   compensated Plaintiffs and Drivers for rest breaks.

11   101.    During the course of the Class Period, Defendants have caused Plaintiffs and Class

12   Members to incur expenses and fees that contributed to Defendants' unlawful failure to pay the

13   minimum wage for all hours work.

14   102.    Defendants' acts and omission as alleged herein were willful, in bad faith, and

15   without reasonable grounds for believing that the acts or omission were not in violation of state

16   law.

17   103.    As a direct and proximate result of Defendants' unlawful conduct as set forth herein,

18   Plaintiffs and Class Members have sustained damages, including lost wages, in an amount to be

19   determined at trial.

20   104.    In addition to recovering unpaid wages, Plaintiffs and Class Members are entitled to

21   recover interest and liquidated damages, and reasonable attorneys' fees and costs, pursuant to

22   California Labor Code §§1194(a) and 1194.2(a).

23   **THIRD CAUSE OF ACTION**
   **FAILURE TO PAY CALIFORNIA OVERTIME COMPENSATION**
24   **(CALIFORNIA LABOR CODE §§ 510, 1194, 2753, 2810.3, IWC WAGE ORDER NO. 9)**
   **(AGAINST DEFENDANTS STI, FRIEDEL, SCI, SCI CALIFORNIA ON BEHALF OF**
25   **PLAINTIFFS AND CLASS MEMBERS)**

26   105.    The allegations of each of the preceding paragraphs are re-alleged and incorporated

27   herein by reference, and Plaintiffs allege as follows a claim of relief on behalf of themselves and all

28   Class Members.

1    106.    During the Class Period, Plaintiffs and the Class Members regularly worked in

2    excess of eight hours in a workday and/or 40 hours in a work week without overtime compensation

3    in violation of California Labor Code §§ 510 and IWC Wage Order No. 9, § 3, which require

4    overtime compensation for non-exempt employees.  The precise number of overtime hours will be

5    proven at trial.

6    107.    Plaintiffs and Class Members often spent more than eight hours a day responding to

7    calls, and Plaintiffs and Class Members were engaged to wait for 24 hour shifts.  Plaintiffs and

8    Class members received no overtime compensation despite regularly working hours in excess of

9    eight hours a day and 40 hours a week.

10    108.    Defendants STI and Friedel served as labor contractors under § 2810.3 by providing

11    workers to provide transportation and removal services, which is part of the usual course of

12    business for Defendants SCI/SCI California.

13    109.    Upon information and belief, Defendants SCI/SCI California were client employers

14    within the definition of Labor Code § 2810.3 and share with a labor contractor all civil legal

15    responsibility and civil liability for all workers supplied by that labor contractor for the payment of

16    wages

17    110.    Defendant Friedel should also be held jointly and severally liable with Defendant

18    STI under California Labor Code § 2753.

19    111.    Defendants' actions were willful, in bad faith, and in knowing violation of the

20    California Labor Code.

21    112.    As a direct and proximate result of Defendants' unlawful conduct as set forth herein,

22    Plaintiffs and Class Members have sustained damages, including unpaid overtime wages, in an

23    amount to be determined at trial.  Pursuant to California Labor Code § 1194(a), Plaintiffs and Class

24    Members are entitled to recover their unpaid overtime and double time compensation, including

25    interest thereon.  Plaintiffs and Class Members are also entitled to recover reasonable attorneys'

26    fees and costs.

27    //

28    //

**FOURTH CAUSE OF ACTION**
**REIMBURSEMENT FOR BUSINESS EXPENSES**
**(CALIFORNIA LABOR CODE § 2802, 2753)**
**(AGAINST DEFENDANTS STI, FRIEDEL, SCI, SCI CALIFORNIA ON BEHALF OF**
**PLAINTIFFS AND CLASS MEMBERS)**

113.     The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference, and Plaintiffs allege as follows a claim of relief on behalf of themselves and all Class Members.

114.     While discharging their duties for Defendants, Plaintiffs and Class Members have incurred work-related expenses.  Such expenses include, but are not limited to, the leasing or purchase of vehicles; fuel, maintenance, and other vehicle operating costs; various forms of insurance; and required clothing, gloves, sheets, and other equipment necessary to their work as mortuary drivers, cellphone expenses, and tolls.  Defendants also charged Plaintiffs and Class Members late fees for their paperwork and other charges for perceived errors by Plaintiffs and Class Members while Plaintiffs and Class Members were carrying out their duties for Defendants.

115.     Defendants failed to indemnify or reimburse Plaintiffs and Class Members for these expenses and losses.  In failing to indemnify or reimburse Plaintiffs and Class Members for necessary expenditures or losses that were incurred as a direct consequence of their discharge of duties for Defendants and/or obedience of Defendants' direction, Defendants violated California Labor Code § 2802.

116.     Defendant Friedel should also be held jointly and severally liable with Defendant STI under California Labor Code § 2753.

117.     Defendants' actions were willful, in bad faith, and in knowing violation of the California Labor Code.

118.     By unlawfully failing to reimburse Plaintiffs and Class Members for necessary business expenses, Defendants have cause Plaintiffs and Class Members to suffer losses in an amount to be determined at trial.

119.     Under California Labor Code §§ 2802 and 218.5, Defendants are also liable to Plaintiffs and Class Members for reasonable attorney's fees.

//

1

2

3

**FIFTH CAUSE OF ACTION**
**FAILURE TO PROVIDE MEAL PERIODS**
**(CALIFORNIA LABOR CODE §§226.7, 512, 2810.3, 2753 IWC WAGE ORDER NO. 9)**
**(AGAINST DEFENDANTS STI, FRIEDEL, SCI, SCI CALIFORNIA ON BEHALF OF**
**PLAINTIFFS AND CLASS MEMBERS)**

4

5

6

120.     The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference, and Plaintiffs allege as follows a claim of relief on behalf of themselves and all Class Members.

7

8

9

10

11

12

13

14

121.     Plaintiffs and Class Members have regularly worked in excess of five hours a day without being afforded at least a half-hour meal period in which they were relived of all duties, as required by California Labor Code §§ 226.7 and 512 and IWC Wage Order No. 9, § 11. Defendants failed to promulgate a meal period policy, which contributed to Plaintiffs and Class Members routinely missing their meal periods.  Furthermore, the work demands placed on Plaintiffs and Class Members, including response times to calls, the volume and frequency of calls, and their inability to turn down calls with ease, led to Plaintiffs and Class Members routinely work in excess of five hours a day without being afforded a proper meal break.

15

16

17

122.     By failing to consistently provide Plaintiffs and Class Members an uninterrupted, thirty minute meal period within the first five hours of work each day, Defendants violated the California Labor Code and applicable IWC Wage Order provisions.

18

19

20

21

123.     Plaintiffs are informed and believe, and on that basis allege, that Defendants have never paid the one hour of compensation as a premium wage payment to any Class Member pursuant to California Labor Code § 226.7 for not providing proper meal periods.  To Plaintiffs' knowledge, Defendants never had any method for reporting missed meal periods.

22

23

24

124.     Defendants STI and Friedel served as labor contractors under § 2810.3 by providing workers to provide transportation and removal services, which is part of the usual course of business for Defendants SCI/SCI California.

25

26

27

28

125.     Upon information and belief, Defendants SCI/SCI California were client employers within the definition of Labor Code § 2810.3 and share with a labor contractor all civil legal responsibility and civil liability for all workers supplied by that labor contractor for the payment of wages.

126.    Defendant Friedel should also be held jointly and severally liable with Defendant STI under California Labor Code § 2753.

127.    As a direct and proximate result of Defendants' unlawful conduct as set forth herein, Plaintiffs and Class Members have sustained damages, including missed meal period premium wages, in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**
**FAILURE TO AUTHORIZE AND PERMIT REST BREAKS**
**(CALIFORNIA LABOR CODE § 226.7, 2753, 2810.3 IWC WAGE ORDER NO. 9)**
**(AGAINST DEFENDANTS STI, FRIEDEL, SCI, SCI CALIFORNIA ON BEHALF OF**
**PLAINTIFFS AND CLASS MEMBERS)**

128.    The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference, and Plaintiffs allege as follows a claim of relief on behalf of themselves and all Class Members.

129.    California Labor Code § 226.7 states "no employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission."

130.    IWC Wage Order No. 9, § 12 provides in relevant part that: "(A) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 ½) hours. Authorized rest period time shall be counted, as hours worked, for which there shall be no deduction from wages.

131.    If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the rest period is not provided.

132.    Upon information and belief, Defendants did not promulgate a compliant rest break policy, or direct Plaintiffs and Class Members that they were authorized to take rest breaks. Plaintiffs and Class Members regularly worked a full work day but were denied a rest period every four hours or major fraction thereof.

133.    Defendants failed to authorize and permit Plaintiffs and Class Members to take adequate rest periods as required by law. Defendants denied Plaintiffs and Class Members rest breaks through the imposition of work schedules that did not permit rest breaks, and/or work demands which did not permit rest breaks, as described above.

134.    Further, Defendants' piece rate compensation system ensured that Defendants did not compensate Plaintiffs and Class Members for rest breaks, because Defendants did not separately compensate Plaintiff and Class Members for rest breaks as required by California law. *Bluford v. Safeway, Inc.*, 216 Cal.App.4th 864 (2013).

135.    Defendants STI and Friedel served as labor contractors under § 2810.3 by providing workers to provide transportation and removal services, which is part of the usual course of business for Defendants SCI/SCI California.

136.    Upon information and belief, Defendants SCI/SCI California were client employers within the definition of Labor Code § 2810.3 and share with a labor contractor all civil legal responsibility and civil liability for all workers supplied by that labor contractor for the payment of wages.

137.    Defendant Friedel should also be held jointly and severally liable with Defendant STI under California Labor Code § 2753.

138.    Finally, Defendants did not compensate Plaintiffs and Class Members an additional hour pay for missed rest breaks as required by Labor Code § 226.7. Plaintiffs and Class Members are therefore entitled to payment of additional wages as provided by law.

**SEVENTH CAUSE OF ACTION**
**FAILURE TO FURNISH ACCURATE WAGE STATEMENTS**
**(CALIFORNIA LABOR CODE §§ 226 & 226.3, 1174, 1174.5, 2753)**
**(AGAINST DEFENDANTS STI, FRIEDEL, SCI, SCI CALIFORNIA ON BEHALF OF**
**PLAINTIFFS AND CLASS MEMBERS)**

139.    The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference, and Plaintiffs allege as follows a claim of relief on behalf of themselves and all Class Members.

140.    Pursuant to California Labor Code § 226(a), Defendants have at all relevant times been required, semimonthly or at the time of each payment of wages, to furnish Plaintiffs and Class

Members accurate, itemized written statements containing all the information described in § 226, including, but not limited to, the total hours worked by the employee.

141.     Defendants have knowingly and intentionally failed to comply with § 226 by knowingly and intentionally failing to furnish Plaintiffs and Class Members with accurate, itemized written statements showing their actual and total hours worked.

142.     Defendants also failed to accurately record meal periods as detailed above, to pay meal period premium wages for missed meal periods, and to report those meal period premium payments on wage statements.

143.     Under California Labor Code § 226(e), an employee suffering injury as a result of knowing and intentional failure of an employer to comply with § 226(a) is entitled to recover the greater of all actual damages or fifty ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) for each violation in a subsequent pay period, up to a maximum amount of $4,000.

144.     In addition, upon information and belief, and in violation of California Labor Code § 1174 and IWC Wage Order No. 9, Defendants failed to keep the required payroll records showing the actual hours worked each day by Plaintiffs and Class Members.  As a direct and proximate result of Defendants' actions, Plaintiffs and Class Members have suffered economic harm as they have been precluded from accurately monitoring the number of hours worked and thus seeking all accrued overtime pay.

145.     As a direct and proximate result of Defendants' unlawful conduct as set forth herein, Plaintiffs and Class Members have been injured by not receiving the information required by California Labor Code § 226(a), not being paid their overtime hours, not having records showing their total hours worked, not being able to ascertain from their wage statements whether or how they have been lawfully compensated for all hours worked, among other things, in an amount to be determined at trial.

146.     Defendant Friedel should be held jointly and severally liable with Defendant STI under California Labor Code § 2753.

1    147.    Plaintiffs and Class Members may recover damages and penalties provided for

2    under California Labor Code § 1174.5 and California Labor Code § 226(e), plus interest thereon,

3    reasonable attorneys' fees, and costs.  In addition, Plaintiffs and Class Members are entitled to

4    injunctive relief to ensure compliance with this section, pursuant to California Labor Code §

5    226(h).

6                                **EIGHTH CAUSE OF ACTION**
                                 **WAITING TIME PENALTIES**
7                   **(CALIFORNIA LABOR CODE §§ 201, 202, 203, 2753)**
        **(AGAINST DEFENDANTS STI, FRIEDEL, SCI, SCI CALIFORNIA ON BEHALF OF**
8                             **PLAINTIFFS AND CLASS MEMBERS)**

9    148.    The allegations of each of the preceding paragraphs are re-alleged and incorporated

10   herein by reference, and Plaintiffs allege as follows a claim of relief on behalf of themselves and all

11   Class Members.

12   149.    California Labor Code § 201 states that an employer is required to provide an

13   employee who is terminated all accrued wages and compensation at the time of termination.

14   150.    California Labor Code § 202 states that an employer is required to provide an

15   employee who resigns all unpaid wages within 72 hours of their resignation, or upon resignation if

16   the employee has provided at least 72 hours' notice.

17   151.    California Labor Code § 203 states that if an employer willfully fails to pay

18   compensation promptly upon discharge, as required by § 201 and § 202, then the employer is liable

19   for waiting time penalties equivalent to the employee's daily wage, for a maximum of 30 days.

20   152.    Plaintiffs and numerous Class Members who were employed by Defendants during

21   the Class Period resigned or were terminated.  Upon resignation or termination, they were not paid

22   all wages due within the statutory time period.  Defendants willfully failed and refused to pay

23   timely compensation and wages for, among other things, unpaid minimum wage and overtime,

24   unpaid meal periods, and unlawful fees.

25   153.    Defendant Friedel should be held jointly and severally liable with Defendant STI

26   under California Labor Code § 2753.

27   154.    As a direct and proximate result of Defendants' willful conduct in failing to pay

28   Plaintiffs and former driver Class Members for all hours worked, Plaintiffs and affected members

of the Class are entitled to recover "waiting time" penalties of up to thirty (30) days' wages pursuant to § 203, with interest thereon, and reasonable attorneys' fees and costs.

**NINTH CAUSE OF ACTION**
**VIOLATIONS OF THE UNFAIR COMPETITION LAW (UCL)**
**(CALIFORNIA BUSINESS & PROFESSIONS CODE §§ 17200-09)**
**(AGAINST DEFENDANTS STI, FRIEDEL, SCI, SCI CALIFORNIA ON BEHALF OF PLAINTIFFS AND CLASS MEMBERS)**

155. The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference, and Plaintiffs allege as follows a claim of relief on behalf of themselves and all Class Members.

156. California Business & Professions Code § 17200, *et seq.* ("UCL") prohibits "unfair competition" in the form of any unlawful, unfair, or fraudulent business act or practice.

157. California Labor Code § 226.8(a)(1) makes it unlawful to engage in "[w]illful misclassification of an individual as an independent contractor."

158. California Labor Code § 226.8(a)(2) makes it unlawful to engage in "[c]harging an individual who has been willfully misclassified as an independent contractor a fee, or making any deductions from compensation, for any purpose, including for goods, materials, space rental, services, government licenses, repairs, equipment maintenance, or fines arising from the individual's employment where any of the acts described in this paragraph would have violated the law if the individual had not been misclassified."

159. California Labor Code § 226.8 took effect on January 1, 2012.

160. Defendants have willfully misclassified Plaintiffs and other Drivers as independent contractors in violation of California Labor Code § 226.8(a)(1).

161. Since California Labor Code § 226.8 took effect, Defendants have charged fees to Plaintiff and other Drivers for goods, materials, services, government licenses, repairs, equipment, and maintenance. Defendants have also fined Drivers for noncompliance with Defendants' policies and procedures. These fees and fines arise from Plaintiff and Drivers' employment, and such charges would have violated the law if Plaintiffs and Drivers had not been misclassified as independent contractors.

162.     California Labor Code § 2753 states "(a) A person who, for money or other valuable consideration, knowingly advises an employer to treat an individual as an independent contractor to avoid employee status for that individual shall be jointly and severally liable with the employer if the individual is found not to be an independent contractor."

163.     In his capacity as a shareholder and board member, Defendant Friedel knowingly advised Defendant STI to treat individuals as an independent contractor to avoid employee status and should be held jointly and severally liable with Defendant STI for relevant violations alleged herein.

164.     Beginning at an exact date unknown to Plaintiffs, but within four years preceding the filing of this action, Defendants have engaged in unfair competition as defined by the UCL by, and as further described above: (1) willfully and unlawfully misclassifying Plaintiffs and similarly situated Class Members as independent contractors in violation of California Labor Code § 226.8; (2) failing to secure workers compensation coverage for Plaintiffs and Class Members in violation of California law; (3) failing to pay minimum wages to Plaintiffs and similarly situated Class Members in violation of the FLSA, California Labor Code §§ 1194 *et seq.*, 1197, and IWC Wage Order No. 9; (4) failing to pay overtime compensation to Plaintiffs and similarly situated Class Members in violation of the FLSA, California Labor Code §§ 510, 1194 *et seq.*, and IWC Wage Order No. 9, § 3; (5) failing to indemnify Plaintiffs and similarly situated Class Members for employment-related business expenses and loses; (6) failing and refusing to provide meal periods to Plaintiffs and similarly situated Class Members in violation of California Labor Code §§ 226.7 and 512 and IWC Wage Order No. 9; (7) failing to provide complete and accurate itemized wage statements in violation of California Labor Code § 226; (8) failing to pay Plaintiffs and similarly situated former driver Class Members all due and unpaid overtime wages upon termination in violation of California Labor Code § 203; and (9) willfully and unlawfully charging Plaintiffs and Class Members fees arising from their employment in violation of California Labor Code § 226.8(a)(2).

165.     Defendant David Friedel has engaged in unfair competition as defined by the UCL by violating California Labor Code § 2753.

166.    Defendants' knowing failure to adopt policies in accordance with and/or to adhere to these laws, all of which are binding upon and burdensome to its competitors, engenders an unfair competitive advantage to Defendants, thereby constituting an unfair business practice under California Business & Professions Code §§ 17200-17208.

167.    Plaintiffs and similarly-situated Class Members have suffered injury in fact and have lost money as a direct and proximate result of Defendants' unfair competition, including, but not limited to, money due to them as minimum wage and overtime compensation, necessary business expenses, unlawful fees arising from their employment, compensation for missed meal periods and unpaid rest periods, and waiting time penalties, which money has been acquired by Defendants by means of their unfair competition within the meaning of the UCL.

168.    Pursuant to California Business & Professions Code §§ 17200 *et seq*., Plaintiffs and Class Members are entitled to (i) restitution of all wages and compensation alleged herein that Defendants withheld and retained during the period commencing four years preceding the filing of this action, (ii) a permanent injunction prohibiting further violations of the type alleged herein, (iii) an award of reasonable attorneys' fees pursuant to Cal. Civ. Proc. Code § 1021.5 and other applicable law, and (iv) costs.  All remedies are cumulative pursuant to California Business & Professions Code § 17205.

**TENTH CAUSE OF ACTION**
**CIVIL PENALTIES UNDER LABOR CODE PRIVATE ATTORNEY GENERAL ACT**
**(CALIFORNIA LABOR CODE §2698 *ET SEQ.*)**
**(AGAINST DEFENDANTS STI, FRIEDEL, SCI, SCI CALIFORNIA ON BEHALF OF**
**PLAINTIFFS JOHNSON AND ARANDA AND CLASS MEMBERS)**

169.    The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference, and Plaintiffs allege as follows a claim of relief on behalf of themselves and all aggrieved employees.

170.    Plaintiff Johnson, as an aggrieved employee, brings this claim under California Labor Code §§ 2698-2699 in a representative capacity against Defendants STI and Friedel on behalf of current and former Drivers of Defendants subjected to the unlawful wage and hour practices alleged herein. On May 7, 2014, pursuant to California Labor Code § 2699.3, Plaintiff Johnson sent notice by certified mail to the Labor and Workforce Development Agency (LWDA)

and Defendants of the specific provisions of the Labor Code that have been violated, including the facts and theories to support the violations. The LWDA received this notice on May 9, 2014. The thirty-three day time limit for the agency to respond has expired, such that Plaintiff has exhausted his administrative remedies.

171.   Plaintiff Aranda, as an aggrieved employee, brings this claim under California Labor Code §§ 2698-2699 in a representative capacity against Defendants STI, Friedel, and SCI/SCI California Funeral Services, Inc. on behalf of current and former Drivers of Defendants subjected to the unlawful wage and hour practices alleged herein. On June 3, 2015, pursuant to California Labor Code § 2699.3, Plaintiff sent notice by certified mail to the Labor and Workforce Development Agency (LWDA) and Defendants of the specific provisions of the Labor Code that have been violated, including the facts and theories to support the violations. The thirty-three day time limit for the agency to respond has expired, such that Plaintiff has exhausted his administrative remedies.

172.   The California Labor Code Private Attorneys General Act of 2004 (PAGA), California Labor Code § 2698 *et seq*., grants California employees the right to bring a civil action for the violation of any provision of the Labor Code on behalf of themselves and other current or former employees in order to recover civil penalties. PAGA is intended to assist in the achievement of maximum compliance with state labor laws by empowering aggrieved employees to act as private attorneys general in order to recover civil penalties for Labor Code violations that would otherwise be prosecuted by the state. *See Arias v. Super. Ct.*, 46 Cal. 4th 969, 980 (2009).

173.   PAGA permits an aggrieved employee to collect the civil penalty authorized by law and normally collectible by the California Labor and Workforce Development Agency. To address violations for which no penalty has been established, § 2699(f) creates a private right of action for aggrieved employees and a default penalty in the amount of $100 for each aggrieved employee per pay period for the initial violation, and $200 for each aggrieved employee per pay period for each subsequent violation. *See* Cal. Lab. Code § 2699(f).

174.   Plaintiffs hereby seek to collect these civil penalties for the above-described Labor Code violations, including:

a.   Under California Labor Code § 2699(f), a penalty of one hundred dollars ($100) for each Plaintiff and each aggrieved employee per pay period for the initial violation of failing to pay the minimum wage according to Labor Code § 1194, and two hundred dollars ($200) for each Plaintiff and each aggrieved employee per pay period for each subsequent violation of Labor Code § 1194.

b.   Under California Labor Code § 558, civil penalties of fifty dollars ($50) for each Plaintiff and each aggrieved employee per pay period for the initial violation of Labor Code § 558 where Plaintiffs and aggrieved employees were not paid appropriate overtime premiums under Labor Code § 510 in addition to an amount sufficient to recover underpaid wages; and for each subsequent violation, one hundred dollars ($100) for each underpaid aggrieved employee for each pay period for which the employee was underpaid under Labor Code § 510.

c.   Under California Labor Code § 2699(f)(2), described above, a civil penalty of one hundred dollars ($100) for each Plaintiff and each aggrieved employee per pay period for the initial violation of Labor Code § 2802, for failure to indemnify employees for business expenses, and two hundred dollars ($200) for each Plaintiff and each aggrieved employee per pay period for each subsequent violation of Labor Code § 2802.

d.   Under California Labor Code § 2699(f)(2), a civil penalty of one hundred dollars ($100) for each Plaintiff and each aggrieved employee per pay period for the initial violation of Labor Code § 226.7 for failing to provide meal periods, and two hundred dollars ($200) for each Plaintiff and each aggrieved employee per pay period for each subsequent violation of Labor Code § 226.7 for failing to provide meal periods.

e.   Under California Labor Code § 226.3, which provides for civil penalties for violations of California Labor Code § 226(a), a civil penalty of two hundred fifty dollars ($250) for each Plaintiff and each aggrieved employee for the first violation, and one thousand dollars ($1,000) for each Plaintiff and each aggrieved employee for each subsequent violation of Labor Code § 226(a) for failure to provide timely, accurate, itemized wage statements.

f.   Under California Labor Code § 2699(f)(2), a civil penalty of one hundred dollars ($100) for each Plaintiff and each aggrieved employee per pay period for the initial violation of

Labor Code §§ 201, 202, and 203 for their failure to pay earned wages upon discharge, and two hundred dollars ($200) for each Plaintiff and each aggrieved employee per pay period for each subsequent violation of Labor Code §§ 201 and 202.

g.   Under California Labor Code § 226.8, a civil penalty of not less than five thousand dollars ($5,000) and not more than fifteen thousand dollars ($15,000) for each violation against each Plaintiff and each aggrieved employee, and if the court finds that Defendants have engaged in a pattern or practice of violation of § 226.8(a), a civil penalty of not less than ten thousand dollars ($10,000) and not more than twenty-five thousand dollars ($25,000) for each violation.

175.   Additionally, as a result of violations under California Labor Code § 226.8(a), Plaintiffs request that the Court order Defendants to take notify employees and the general public of the determination that they have violated § 226.8, pursuant to § 226.8(e).

176.   California Labor Code § 2699(g) further provides that any employee who prevails in an action for civil penalties is entitled to an award of reasonable attorney's fees and costs.  Plaintiff hereby seeks to recover their attorneys' fees and costs under this fee and cost shifting statute.

## PRAYER FOR RELIEF

177.   WHEREFORE, Plaintiffs, on behalf of themselves and the above-described Class and Collective Action Members, request relief as follows:

a.   Certification of the above-described Class as a class action, pursuant to Fed. R. Civ. Pro. 23(b)(3);

b.   Facilitated Notice under 29 USC § 216(b);

c.   Conditional and Final Certification of a Collective Action;

d.   Appointment of Plaintiffs as a Class Representatives;

e.   Appointment of Plaintiffs' Counsel as Class Counsel;

f.   Provision of class notice to all Class Members;

g.   A declaratory judgment that Defendants have knowingly and intentionally violated the following provisions of law, among others:

i.   Labor Code §§ 226.8, by knowingly and willfully misclassifying Plaintiffs and Class Members as independent contractors;

ii. California Labor Code §§ 510, 1194 *et seq*., 1197, and IWC Wage Order No.
9, by failure to pay minimum wages and overtime compensation to Plaintiffs
and Class Members;

iii. The FLSA, by failing to pay overtime wages to Plaintiffs and Collective
Action Members;

iv. California Labor Code § 2802, by failure to reimburse Plaintiffs and Class
Members for necessary business expenses;

v. California Labor Code §§ 226.7 and 512, and IWC Wage Order No. 9 for
failure to provide off-duty meal periods and paid rest breaks to Plaintiffs and
Class Members;

vi. California Labor Code §§ 201-203, by willful failure to pay all wages owed
at the time of termination of employment;

vii. California Labor Code § 226(a) and 1174.5, by failure to provide itemized
written statements semimonthly or at the time of payment of wages
accurately showing all the information required by California law, including
but not limited to total hours worked, and for failure to keep accurate payroll
records;

viii. California Business and Professions Code §§ 17200 *et seq*., by failure to pay
unpaid minimum wages and overtime compensation due to Plaintiff and
Class Members under California law, by willfully failing to pay all
compensation owed to Plaintiffs and Class Members upon termination of
employment; by willfully failing to provide legally compliant wage
statements; by requiring Plaintiffs and Class Members to work through their
meal periods without paying them proper compensation; by failing to
reimburse Plaintiffs and Class Members for necessary business expenses; by
willfully and knowingly misclassifying Plaintiffs and Class Members as
independent contractors for Defendants' financial gain; and

ix. A declaratory judgment that Defendants have knowingly and intentionally

- 37 -

FOURTH AMENDED CLASS ACTION COMPLAINT

1    violated California Labor Code §§ 201, 202, 203, 226, 226.7, 510, 512, and

2    2802 and have willfully misclassified Plaintiffs and Class Members as

3    "independent contractors" in violation of Labor Code § 226.8, all of which

4    give rise to civil penalties and other remedies under the PAGA.

5    h.   A declaratory judgment that Defendants' violations as described above were willful

6    and/or knowing and intentional;

7    i.   A declaratory judgment that Defendant Friedel violated California Labor Code §

8    2753 and should be held jointly and severally liable with STI;

9    j.   A declaratory judgment that Defendant SCI/SCI California violated California

10   Labor Code § 2810.3 and should be held jointly and severally for unpaid wages;

11   k.   An equitable accounting to identify, locate, and restore to all current and former

12   Class Members the overtime wages due;

13   l.   An award to Plaintiffs and the Class Members of damages in the amount of unpaid

14   minimum wages and overtime compensation, necessary business expenses, and meal and rest

15   period compensation, including interest thereon subject to proof at trial;

16   m.   An award of penalties owed, pursuant to Labor Code § 203, to Plaintiffs and all

17   Class Members who resigned or whose employment was terminated by Defendants without

18   receiving all overtime compensation owed at the time of separation;

19   n.   An award of liquidated damages to Plaintiffs and Class Members, in an amount

20   equal to minimum wages unlawfully unpaid, according to proof, pursuant to California Labor Code

21   §1194.2 and liquidated damages according to 29 U.S.C. §§ 216(b).

22   o.   An order requiring Defendants to pay restitution of all amounts owed to Plaintiffs

23   and Class Members for Defendants' failure to pay legally required minimum wage, overtime pay,

24   rest period premium wages, meal period premium wages, out-of-pocket necessary business

25   expenses, and interest thereon, in an amount according to proof, pursuant to California Business &

26   Professions Code § 17203 and other applicable law;

27   p.   An award of damages and/or penalties as set forth in California Labor Code §

28   226(e) and 1174.5;

FOURTH AMENDED CLASS ACTION COMPLAINT

q.   An award to Plaintiffs and the Class Members of premium wages for missed meal periods, according to proof;

r.   An award to Plaintiffs and Class Members of premium wages for missed rest breaks according to proof;

s.   An award of PAGA civil penalties under Labor Code § 2699, *et seq.*, subject to proof at trial;

t.   An award to Plaintiffs and the Class Members of reasonable attorneys' fees and costs, pursuant to 29 U.S.C. §§ 216(b), California Code of Civil Procedure § 1021.5, California Labor Code §§ 218.5, 226(e), 1194, 2802 and/or other applicable law;

u.   An award to Plaintiffs and the Class Members of such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

178.   Plaintiffs, on behalf of themselves and all Class and Collective Action Members, hereby demand a trial of their claims by jury to the extent authorized by law.


DATED: November 16, 2015                    RUKIN HYLAND DORIA & TINDALL LLP



By: */s/ Peter Rukin*
PETER RUKIN
Attorney for Plaintiffs