UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS JOHNSON, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SERENITY TRANSPORTATION, INC., et al., <br><br> Defendants. | Case No. 15-cv-02004-JSC <br><br> **ORDER RE: MOTION FOR PARTIAL SUMMARY JUDGMENT ON LABOR CODE SECTION 2810.3** <br><br> Re: Dkt. Nos. 173, 174 |

Plaintiffs allege they were misclassified by Serenity Transportation, Inc. as independent contractors rather than employees and thus denied the benefits of California and federal wage-and-hour laws. Plaintiffs also sued SCI and the County of Santa Clara under a joint employer theory, arguing the entities were jointly and severally liable for Serenity's wage and hour violations. On April 14, 2017, the Court granted summary judgment to SCI and the County on the joint employer common law claims, and deferred decision as to whether, as a matter of law, SCI is not subject to liability under California Labor Code Section 2810.3. (Dkt. No. 172 at 46:14-27.) The Court requested further briefing regarding the "five or fewer workers supplied by a labor contractor or labor contractors to the client employer at any given time" exemption under Section 2810.3. (*Id.*) Having carefully reviewed the parties' supplemental briefs, the Court DENIES SCI's motion for summary judgment of Plaintiffs' Labor Code Section 2810.3 claim.

## DISCUSSION

### I. Section 2810.3 Should be Construed in Favor of Employee Protection

In interpreting a California statute, federal courts apply California rules of construction. *Lares v. West Bank One (In re Lares),* 188 F.3d 1166, 1168 (9th Cir. 1999). "The touchstone of

statutory interpretation is the probable intent of the Legislature." *Hale v. Southern Cal. IPA Med. Group, Inc.,* 86 Cal. App. 4th 919, 776 (2001). To determine that intent, a court looks first to the language of the statute and gives effect to its plain meaning. *California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.*, 14 Cal. 4th 627, 632–633 (1997). "If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs." *People v. Snook*, 16 Cal. 4th 1210, 1215 (1997). But language that appears unambiguous on its face may be shown to have a latent ambiguity; if so, a court may turn to customary rules of statutory construction or legislative history for guidance. *Stanton v. Panish*, 28 Cal.3d 107, 115 (1980). The California Supreme Court has routinely recognized that statutes governing conditions of employment are to be construed broadly in favor of protecting employees. *Pineda v. Bank of Am., N.A.*, 50 Cal.4th 1389, 1394 (2010); *Sav–On Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319, 340 (2004); *Ramirez v. Yosemite Water Co.*, 20 Cal. 4th 785, 794 (1999); *see also Earley v. Superior Court*, 79 Cal. App. 4th 1420, 1429–1430 (2000) (California adheres to "a clear public policy ... that is specifically directed at the enforcement of California's minimum wage and overtime laws for the benefit of workers.").

Labor Code section 2810.3 is indisputably a statute governing employment conditions and thus the Court must construe it broadly in favor of protecting employees. *See Noe v. Superior Court*, 237 Cal.App.4th 316, 330 (2015) (holding that California Labor Code provision making it unlawful to willfully misclassify an employee as an independent contractor should be interpreted consistent with the principle "that statutes governing conditions of employment are to be construed broadly in favor of protecting employees." (internal quotation marks and citation omitted)). SCI's insistence to the contrary is unpersuasive as none of the cases it cites involves the California Labor Code.

## II.     Definition of "Any Given Time"

"Client employer" for purposes of Section 2810.3 does not include a business entity with five or few workers "supplied by a labor contractor or labor contractors to the client employer at any given time." Cal. Labor Code § 2810.3(a)(1)(B)(ii). A court must give significance to every word in a statute to avoid "a construction that would make some words surplusage[,]" and to view

2

words "in context, keeping in mind the nature and obvious purpose of the statute." *See Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 651-52 (9th Cir. 2016) (citation omitted). Thus, the Court must construe the words "at any given time" in context with the word "supplied." The common language definition of "supplied" includes: to provide for, to make available for use, and to satisfy the needs or wishes of. Supply, Merriam Webster Dictionary (Web ed. 2017). The question, then, is whether Serenity supplied, or made available for use, to SCI at least six removal technicians at any given time.

In light of the statute's use of the word "supplied," the Court need only decide whether a reasonable trier of fact could find that at least six Serenity removal technicians were available for SCI's use at any given time. The record reflects that Serenity had more than six removal technicians scheduled for 24-hour shifts, ready to make calls for SCI. (Dkt. No. 174-4 ¶¶ 2-4, Exs. A-B.) SCI relied on this 24-hour coverage to address its labor needs, calling upon Serenity drivers when needed. (Dkt. No. 156-20 at 2; Dkt. No. 156-9 at 26:19-22). Indeed, SCI required technicians to arrive at SCI worksites within 60-75 minutes of dispatch. (Dkt. No. 124-17 at 3 ¶ 4 "Duties".) Further, at times, SCI also had six or more technicians simultaneously dispatched by Serenity to perform SCI removals. (Dkt. No. 174-1 ¶ 5, Dkt. No. 174-2 at 2.)

Drawing all reasonable inferences in Plaintiffs' favor, a reasonable trier of fact could find that Serenity supplied or made available to SCI six or more removal technicians at any given time. Accordingly, SCI has not shown as a matter of law that it qualifies for the exemption under Section 2810.3(a)(1)(B)(ii).

**III. Other Arguments**

SCI raises a host of other arguments on which the Court did not ask for supplemental submissions. The Court will address them briefly here.

**A. Worksite**

California Labor Code § Section 2810.3 provides that a "client employer shall share with a labor contractor all civil legal responsibility and civil liability for all workers supplied by that labor contractor for ... the payment of wages." Cal. Labor Code § 2810.3(b). Client employer is defined as a "business entity, regardless of its form, that obtains or is provided workers to perform

3

labor within its usual course of business from a labor contractor." *Id.* § 2810.3(a)(1)(A). Usual course of business means the "regular and customary work of a business, performed within or upon the premises or worksite of the client employer." *Id.* § 2810.3(a)(6).

Defendants rely on the California Family Rights Act ("CFRA") regulatory definitions to argue that Plaintiffs' "worksite" is the "office from where they are dispatched and to which they report." (Dkt. No. 173 at 18:1-2.) Under such definition, SCI would not qualify as a "client employer" since the Serenity removal technicians do not perform labor upon the worksite—the office from which they are dispatched—for SCI. Defendants also rely on the federal Family Medical Leave Act ("FMLA") regulations, which contain the same definition for worksite as the CFRA. Defendants' reliance on the CFRA and FMLA regulations is misplaced.

The Labor Commissioner, the Division of Occupational Safety and Health, and the Employment Development Department are authorized to adopt regulations necessary to administer Labor Code Section 2810.3 (Dkt. 124-54 at 3.) However, the California Fair Employment and Housing Council ("FEHC") drafted the CFRA regulations. 2 C.C.R. § 11007. As the FEHC is not charged with administering Labor Code 2810.3, the Court will not read FEHC's regulatory definitions into the statute. Further, there is no evidence the legislature relied upon the CFRA or FLMA regulatory definitions when drafting Labor Code 2810.3.

In any event, the Court is not persuaded that Defendants' narrow interpretation of "worksite" – the office from where drivers are dispatched – is what the legislature intended in the context of California Labor Code Section 2810.3(a)(6). The Senate Labor and Industrial Relations Committee referenced workers in garment manufacturing, farm labor, construction, janitorial services, as well as security guards and warehouse contractors, nurses, accountants, computer programmers, "to warehouse work in transportation and material moving, housekeeping, landscaping, and manufacturing." (Dkt. No. 124-54 at 2-4.) Clearly, the legislature sought to include workers who are mobile – those who do not report to or perform work at one specific worksite. There is also no evidence that the legislature sought to exclude workers who are dispatched by the labor contractor rather than client employer. Should the Court adopt SCI's interpretation, Section 2810.3 would effectively exclude all workers supplied by a labor contractor

4

who work at various worksites, including drivers, and are dispatched by the labor contractor, as is the case with the Serenity removal technicians. This interpretation would violate the rule that the California Labor Code should be interpreted broadly to protect workers.

Defendants also offer a common meaning definition of worksite, including "a site where work occurs" (Wordfinder), and "an area of land where people work" (Cambridge Dictionary). (Dkt. No. 173 at 18:10-12.) The Court concludes that SCI client worksites can easily fall within this common language definition of "where work occurs" or "where people work." The Court previously concluded that SCI required removal technicians to perform work at places other than its actual premises because it required technicians to perform work at pick-up locations, which can be viewed as SCI's worksites. (Dkt. No. 172 at 42:23-25.) Defendants have not provided any supplemental authority or evidence to persuade this Court to change its original conclusion that there is a genuine dispute as whether Plaintiffs performed SCI's regular and customary work at SCI's premises or worksites.

### B. Constitutional Vagueness

SCI did not move for summary judgment on the Section 2810.3 claim on the grounds that it is unconstitutionally vague; accordingly, the Court will not consider the argument now. When the time comes for further dispositive motions, it can make the motion at that time by giving proper notice.

### C. Aggregation of SCI Affiliates

Finally, SCI argues that Plaintiffs cannot satisfy the requirement that Section 2810.3 applies only to client employers who are supplied more than five employees at any given time by aggregating legally separate SCI companies. The short answer is that for purposes of summary judgment the Court assumed that all SCI affiliates could be treated as one company (essentially the parent). Thus, the issue of whether separate legal entities (such as a parent and a subsidiary or sister corporations) can be aggregated and, if not, whether the evidence is sufficient to support a finding of fact that the separate entities should be treated as one has not been decided and should be discussed at the case management conference.

**CONCLUSION**

Viewing the evidence in the light most favorable to Plaintiffs, the Court DENYS SCI's motion for summary judgment of Plaintiffs' Labor Code Section 2810.3 claim. The Court will hold a further case management conference to discuss the schedule for the remainder of the case at 1:30 p.m. on June 15, 2017. A further case management conference statement is due one week prior to the conference.

This order disposes of Docket No. 124.

**IT IS SO ORDERED.**

Dated: May 22, 2017

JACQUELINE SCOTT CORLEY
United States Magistrate Judge