PETER RUKIN (SBN 178336)
*prukin@rukinhyland.com*
JESSICA RIGGIN (SBN 281712)
*jriggin@rukinhyland.com*
VALERIE BRENDER (SBN 298224)
*vbrender@rukinhyland.com*
RUKIN HYLAND LLP
100 Pine Street, Suite 2150
San Francisco, CA 94111
Telephone: (415) 421-1800
Facsimile:  (415) 421-1700

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS JOHNSON and GARY JOHNSON, on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br><br>     v.<br><br>SERENITY TRANSPORTATION, INC., a California Corporation, DAVID FRIEDEL, SERVICE CORPORATION INTERNATIONAL, SCI CALIFORNIA FUNERAL SERVICES, INC., and COUNTY OF SANTA CLARA,<br><br>            Defendants. | Case No.  3:15-cv-02004-JSC<br><br>**PLAINTIFFS' SUPPLEMENTAL STATEMENT TO MOTION TO INVALIDATE RELEASES AND FOR CORRECTIVE NOTICE** |

**I.      Additional Facts Establishing Defendants' Unlawful And Coercive Conduct**

Since Plaintiffs filed their Motion to Invalidate Defendants' Releases, additional direct evidence has surfaced regarding Defendants' unlawful and coercive conduct in obtaining purported releases from class members. Robert Felix was a removal technician at Serenity Transportation when Defendants rolled out their releases in the middle of the Court-authorized FLSA opt-in period. Declaration of Robert Felix (Felix Decl.), ¶¶ 1,3; *see also* Dkt. 104. Like former Serenity removal technician and named Plaintiff Gary Johnson, Mr. Felix recalls attending a meeting in March or April of 2016 where Defendant Friedel said that those who joined the lawsuit against Serenity would be fired. Felix Decl., ¶ 4 (recalling Defendant Friedel saying that anyone who joined the lawsuit would not be working at Serenity anymore, because it would be a "conflict of interest."); *see also* Dkt. 104-8, at ¶¶ 4-6 (G. Johnson Declaration) (describing a March 2016 meeting and recalling Defendant Friedel's statement that Serenity drivers would be terminated if they joined the lawsuit because "participation in the lawsuit would be a conflict of interest").

Around June of 2016, Defendant Friedel called Mr. Felix into his office and handed him a copy of a release. Felix Decl., ¶ 5. Defendant Friedel told Mr. Felix that the Plaintiffs were going to lose their lawsuit against Serenity, and even if they won, "he was not going to pay a dime." *Id.* Defendant Friedel also told Mr. Felix that anyone who joined the lawsuit was against him, and Defendant Friedel did not know how he could have anyone who was against him working for Serenity. *Id.* Mr. Felix understood that if he didn't sign the release, he would be fired. *Id.*

Mr. Felix told Mr. Friedel that he did not want sign the release. Felix Decl., ¶ 5. But Defendant Friedel was insistent, asked "why not?," and told Mr. Felix that the lawsuit did not involve him. *Id.* After this meeting, Defendant Friedel called Mr. Felix repeatedly to pressure him to sign the release. Felix Decl. ¶ 6. Defendant Friedel said that everyone else had signed the release. *Id.* Mr. Felix was worried about losing his job with Serenity, so he eventually signed the release for that reason. *Id.*

After Mr. Felix signed the release, Defendant Friedel made additional statements about the

lawsuit calculated to dissuade Mr. Felix from pursuing a case. Defendant Friedel told Mr. Felix that he was going to bankrupt Serenity and start a new company so that the Serenity removal technicians would never receive any money from the case. Felix Decl., ¶ 9.  He also told Mr. Felix that he planned to sue the plaintiffs in the case and put a lien on everything they own. *Id.* Statements such as these made Mr. Felix very concerned that Defendant Friedel would retaliate against him if he tried to join the lawsuit. *Id.*

### II.     Serenity Removal Technician Robert Felix's Testimony Further Establishes That Defendants' Releases Should Be Invalidated

Courts have not hesitated to invalidate releases when presented with proof (far less compelling than the record evidence here) that releases were secured through misinformation and coercion. For example, in *Slavkov v. Fast Water Heater I, LP*, the district court invalidated the defendants almost entirely on the grounds of misinformation, even though the defendant "d[id] not appear to have engaged in the kind of overt coercive conduct seen in other cases." No. 14-cv-04324-JST, 2015 U.S. Dist. LEXIS 149013, at *10 (N.D. Cal. Nov. 2, 2015). Similarly, in *Marino v. CACafe, Inc.*, the district court found that defendants' releases should be invalidated despite the lack of a "high degree of coercion" because the releases "were obtained by deceptive omission of material information." No. 16-cv-6291 YGR, 2017 U.S. Dist. LEXIS 64947, at *5, 7 (N.D. Cal. Apr. 28, 2017); *see also* Dkt. 104, at 12:5-13:13.

The record of unlawful conduct here is more robust than in any of the above-referenced cases. Indeed, Mr. Felix's testimony underscores both coercion and misinformation in Defendants' release campaign.  Mr. Felix attended a meeting where Defendant David Friedel said that Serenity removal technician would be terminated if they joined the lawsuit; Mr. Felix was pressured to sign the release to keep his job; Defendant Friedel made coercive statements against joining the lawsuit before, during, and after the release campaign; and Defendants Friedel and Serenity did not inform Mr. Felix about his rights in the case, including that FLSA claims and others required judicial approval to be released. These are further grounds to invalidate Defendants' releases. Dkt. 104, at

7-14; *Marino*, 2017 U.S. Dist. LEXIS 64947, at *7; *Slavkov*, 2015 U.S. Dist. LEXIS 149013, at *19-20 *Wang v. Chinese Daily News, Inc.,* 236 F.R.D. 485, 489 (C.D. Cal. 2006); *Guifu Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 509, 518 (N.D. Cal. 2010).

### III. Serenity Transportation and David Friedel Should Be Prohibited From Engaging In Ex Parte Communications About This Lawsuit With Putative Class and Collective Action Members

Plaintiffs' original motion requested that the Court bar Defendants David Friedel and Serenity Transportation from communicating with putative class members about this litigation until the close of the opt-in period. Dkt. 104, at 14-16. Based on the additional proof of misconduct, and additional case guidance, Plaintiffs now ask that the Court bar Defendants Friedel and Serenity from communicating with putative class members about this litigation through trial.

Mr. Felix's testimony reveals that Defendants Friedel and Serenity continued to make misleading and coercive statements about this case during and after their release campaign. This Court has limited *ex parte* communications in situations where far less evidence of direct coercion has been present. *Marino v. CACafe, Inc.*, 2017 U.S. Dist. LEXIS 64947, at *8 (prohibiting corporate and individual Defendants "from engaging in any *ex parte* communications with putative class members regarding any of the subjects of this litigation"); *Wright v. Adventures Rolling Cross Country, Inc.*, No. C-12-0982 EMC, 2012 U.S. Dist. LEXIS 83505, at *12-13 (N.D. Cal. June 15, 2012) (same); *see also* Dkt. 104, at 15:9-19. Limitations have included bars on discussing the litigation through trial. *Belt v. Emcare Inc.*, 299 F. Supp. 2d 664, 669 (E.D. Tex. 2003) (bar through trial where defendant rolled out its own coercive notice just prior to the Court-approved FLSA notice); *see also Wright*, 2012 U.S. Dist. LEXIS 83505, at *12-13. In light of Defendants' coercive and misleading conduct, such a prohibition on communication is appropriate here.

### IV. Conclusion

Plaintiffs request that in addition to the relief sought in their opening motion, Defendants Serenity and Friedel be barred from communicating with putative class members through trial.

DATED: August 3, 2017						RUKIN HYLAND LLP


							By: */s/ Valerie Brender*
							     Valerie Brender
							     Attorneys for Plaintiffs