UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS JOHNSON, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SERENITY TRANSPORTATION, INC., et al., <br><br> Defendants. | Case No. 15-cv-02004-JSC <br><br> **ORDER RE SCI DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. Nos. 201, 247, 249 |

Plaintiffs Curtis Johnson and Gary Johnson allege Serenity Transportation, Inc. misclassified them as independent contractors rather than employees and thus denied them the benefits of California and federal wage-and hour laws. Plaintiffs also sue Service Corporation International Inc. ("SCI") and SCI California Funeral Services, Inc. ("SCI-Cal") (together, "Defendants") as client employers under California Labor Code Section 2810.3 responsible for paying wages owed because of Serenity's misclassification. (Dkt. No. 121 ¶¶ 109, 125, 136.) By Order filed August 1, 2018, the Court granted Plaintiffs' motion for class certification in part as to their claims against Serenity and David Friedel, but denied class certification as to the claims against the SCI Defendants. (Dkt. No. 276.)

Currently pending before the Court is (1) SCI's motion for summary judgment that SCI is not a client employer under Labor Code Section 2810.3, and (2) Defendants' motion for summary judgment that Plaintiffs cannot recover attorneys' fees against either SCI Defendant even if Plaintiffs prevail in the action. Having reviewed the parties' briefing and having had the benefit of oral argument on June 12, 2018, the Court GRANTS SCI's motion that it is not liable pursuant to California Labor Code section 2810.3 and DENIES Defendants' motion as to attorneys' fees.

**INTEGRATED ENTERPRISE**

SCI moves for summary judgment that it cannot be held liable under Labor Code section 2810.3 for wages owed to Plaintiffs. In particular, it contends that it is not a "client employer" under section 2810.3 because it did not own any of the facilities to which Serenity drivers delivered, it did not have any employees at those facilities, and it did not enter into any contracts with Serenity for the delivery drivers' services. It also argues that it cannot be liable under a theory of being an integrated enterprise with SCI Cal or any other SCI direct or indirect subsidiaries.

Plaintiffs respond that SCI and SCI Cal should be treated as a single "client employer" for purposes of Labor Code section 2810.3 liability pursuant to the "integrated enterprise" test set forth in *Laird v. Capital Cities/ABC, Inc.*, 68 Cal. App. 4th 727 (1998), *overruled on other grounds*, *Reid v. Google, Inc.*, 50 Cal. 4th 512 (2010). Under the "integrated enterprise" test, two corporations may be treated as a single employer for purposes of liability in certain circumstances. The test is often applied to determine liability under Title VII. *See, e.g., Kang v. U. Lim America, Inc.*, 296 F.3d 810, 814-815 (9th Cir. 2002). In *Kang*, for example, the question was whether two entities could be considered a single employer for the purpose of meeting the requirement that Title VII apply to entities that employ 15 or more employees. *Id.* at 814-15; *see also Childs v. Local 18, Intern. Broth. of Elec. Workers*, 719 F.2d 1379, 1382 (9th Cir. 1983) (observing that the "single employer" test used by courts in Title VII cases is based on the test the National Labor Relations Board uses to determine if the 15 or more employees Title VII threshold is met); *Laird*, 68 Cal. App. 4th at 737-38 (describing the integrated enterprise test as derived from federal labor law to determine whether two corporations should be treated as one for purposes of Title VII's definition of "employer").

California courts have also applied the integrated enterprise test to California FEHA claims. *See Laird*, 68 Cal. App. 4th 727; *Leek v. Cooper*, 194 Cal. App. 4th 399 (2011). In *Laird*, for example, the plaintiff sued the parent of her employer, rather than the employer itself, under FEHA. The appellate court applied the integrated enterprise test derived from federal law and

concluded that the evidence was insufficient to support a finding of the parent's liability. *Id.* at 737-41.

California federal district courts have also applied the "integrated enterprise" test to claims arising from alleged violations of the California Labor Code where the plaintiff sought to hold the parent corporation of the plaintiffs' acknowledged employer liable for the Labor Code violations. *See*, *e.g.*, *Trosper v. Stryker Corporation*, No. 13-cv-0607-LHK, 2014 WL 1619052, at *3 (N.D. Cal. Apr. 22, 2014) (evidence sufficient to put the integrated enterprise question to the jury); *Kenny v. Regis Corp.*, No. 06–07521, 2008 WL 686710, at *3 (N.D. Cal. Mar. 10, 2008) (granting summary judgment on integrated enterprise claim against parent); *Maddock v. KB Homes, Inc.*, 631 F. Supp. 2d 1226, 1238-42 (C.D. Cal. 2007) (same).

In these cases, in determining whether two entities are liable as an integrated enterprise courts consider four factors: (1) centralized control of labor relations; (2) interrelation of operations; (3) common management; and (4) common ownership or financial control. *Laird*, 68 Cal. App. 4th at 737. "Under this test, common ownership or control alone is never enough to establish parent liability." *Id*. at 738. "Corporate entities are presumed to have separate existences, and the corporate form will be disregarded only when the ends of justice require this result." *Id*. at 737. "In particular, there is a strong presumption that a parent company is not the employer of its subsidiary's employees." *Id*. As a result, "an employee who seeks to hold a parent corporation liable for the acts or omissions of its subsidiary on the theory that the two corporate entities constitute a single employer has a heavy burden to meet[.]" *Id*.

### A. Plaintiffs' Integrated Enterprise Theory

At oral argument, the Court pressed the parties as to why the "integrated enterprise" issue mattered to the case. Plaintiffs explained that they were concerned that SCI Cal would contend that it did not have any employees and therefore could not be liable under section 2810.3 in light of the statute's exemption for entities with 25 or fewer employees. *See* Cal. Labor Code § 2810.3(a)(1)(B)(i). (Dkt. No. 269 at 58, 61-62.) SCI Cal responded that, although it is SCI Cal's position that it does not have any employees, SCI Cal is not contending that it is exempt from section 2810.3 because it has a workforce of fewer than 25 workers as to two of the personal care

3

centers to which Serenity drivers made deliveries; namely, Green Street Mortuary in San Francisco and Oak Hill Memorial Park in San Jose. (Dkt. No. 269 at 62, 67-70.) The Court will hold SCI Cal to its representation on the record; accordingly, the "integrated enterprise" issue is moot as to Green Street and Oak Hill and SCI's motion for summary judgment is granted to the extent Plaintiffs are seeking to hold it liable for deliveries to Green Street and Oak Hill.

Serenity also contracted to provide delivery services to at least two other SCI-related facilities: San Leandro Funeral Home in San Leandro and the Apollo Crematorium in Emeryville. SCI contends that these facilities are owned by SCI direct and indirect subsidiaries not named in this lawsuit; namely, Alderwoods Group, LLC and S.E. Combined. In its motion for summary judgment, SCI argued that the evidence is insufficient to support a finding of an integrated enterprise between SCI and these two subsidiaries. If so, SCI is not liable for any wages Serenity is found to ultimately owe to Plaintiffs for work performed for these SCI subsidiaries.

Oral argument disclosed a dispute between the parties as to whether Apollo is in fact owned and/or operated by SCI Cal. No parties' evidence supports a dispositive finding either way. The declaration paragraphs cited by SCI do not attest that Apollo is owned by S.E. Combined. (Dkt. No. 201-1 at 9 (citing Hambrick Dec, ¶2-3; Yount Dec, ¶2-3; Burton Dec, ¶ 2-3; Key Dec, ¶ 13).) The witnesses declare that there are facilities that Serenity delivers to that are owned by entities other than SCI or SCI Cal, but the witnesses do not identify those facilities. Further, at oral argument Plaintiffs referred to deposition testimony of Ms. Hambrick in which she supposedly testified that she entered into the contract with Serenity concerning Apollo (among other facilities) on behalf of SCI Cal (Dkt. No. 269 at 64), but Plaintiffs' opposition brief makes no mention of that testimony and the Hambrick testimony submitted in connection with the motion does not include such testimony. (Dkt. No. 246-3.) And the contract the parties appear to be referring to does not identify on whose behalf the contract is being made and neither Apollo nor any Emeryville facility is identified on Attachment A to the contract which lists the establishments who are entering into the contract with Serenity. (Dkt. No. 201-6.) However, in its cross claim for contractual indemnity against Serenity, SCI alleged that the contract was entered into between

4

Serenity and SCI Cal.[1]  (Dkt. No. 5 at ¶ 3 and Ex. B.)

In any event, SCI Cal has not moved for summary judgment so the Court need not resolve whether SCI Cal is the contracting party with respect to the 2014 contract with Serenity.  To the extent a trier of fact finds that SCI Cal owns or operates Apollo, then the situation is the same as with Green Street and Oak Hill:  SCI Cal will not contend that it is not a client employer because it does not employ 25 or more employees.  As Plaintiffs explained at oral argument, however, if Apollo or another facility to which Plaintiffs made deliveries is owned by a different SCI entity, such as S.E. Combined or Alderwoods, neither of which are defendants in this action, then Plaintiffs must attempt to hold SCI—a defendant in this action—liable for time spent making deliveries for the SCI subsidiaries not named as defendants in this lawsuit.  The live case or controversy, then, is whether the evidence is sufficient to support a finding that SCI is an integrated enterprise with either or both Alderwoods Group or S.E. Combined.

### B. The Appropriate Integrated Enterprise Test

Now that the Court has defined what it believes is the question presented, the Court must decide whether the integrated enterprise test can make an entity liable under Labor Code section 2810.3.  As explained above, there are generally two lines of case applying the test.  First, those cases in which the question is whether the employees of two separate corporations can be considered a single integrated enterprise for the purpose of meeting a "number of employees" threshold for application of a statute, primarily Title VII.  *See e.g., Kang,* 296 F.3d at 814-15.  This theory, then, fits comfortably with Plaintiffs' argument that SCI and SCI Cal should be considered a single entity for the purpose of section 2810.3's application to entities with more than 25 workers.  However, as explained above, for purposes of this litigation SCI Cal is not contesting that requirement for the application of section 2810.3.

The second line of cases applies *Laird* to claims brought by an employee against an entity

---

[1] SCI's citation to *Moran v. Selig*, 447 F.3d 748, 759 (9th Cir. 2006), for the proposition that this statement is inadmissible on summary judgment is unpersuasive.  *Moran* merely holds that a plaintiff cannot rely on his own unverified complaint allegations as summary judgment evidence; it does not hold a plaintiff cannot submit a defendant's own statements as summary judgment evidence.  *See, e.g.,* Fed. R. Evid. 801(d)(2).

5

that the employee contends should be considered its employer because it is part of an integrated enterprise with the employee's acknowledged employer. *See, e.g., Trosper*, 2014 WL 1619052. That theory does not fit comfortably with the facts of this case as Plaintiffs are not claiming that their alleged employer—Serenity—is an integrated enterprise with SCI; instead, they are claiming that the entity that hired Serenity —S.E. Combined or Alderwoods (in the event SCI Cal is found to not have retained Serenity under the operative contract)—is an integrated enterprise with SCI and thus the SCI-affiliated entities and SCI should be treated as a single entity for purposes of liability under section 2810.3. With this distinction in mind, the Court will address the evidence and Plaintiffs' integrated enterprise argument.

### C. Application of the *Laird* Integrated Enterprise Test

#### 1. Centralized Control of Labor Relations

In applying *Laird*, courts first consider the "centralized control of labor relations" factor. "Although courts consider the four factors together, [and no one factor is dispositive], they often deem centralized control of labor relations to be most important." *Laird*, 68 Cal. App. 4th at 738. "The critical question is, [w]hat entity made the final decisions regarding employment matters related to the person claiming [injury]? A parent's broad general policy statements regarding employment matters are not enough to satisfy this prong. To satisfy the control prong, a parent must control day-to-day employment decisions of the subsidiary." *Id*. (internal quotation marks and citations omitted). In *Laird*, the court held that this factor weighed in favor of the defendant parent company, given that the subsidiary's control over its own employment decisions was "essentially undisputed." *Id*. at 739. The court noted that all of the plaintiff's employment paperwork designated her employer to be the subsidiary, not the parent. *Id*. The employee handbooks the plaintiff received explicitly stated she was a subsidiary employee. *Id*. Furthermore, the subsidiary provided all of plaintiff's W–2 forms. *Id*. Finally, the plaintiff admitted in her deposition that the supervisors who fired her were employees of the subsidiary, not the parent company. *Id*.

Plaintiffs identify evidence that they contend shows SCI's control of its affiliates' labor relations. First, SCI requires all new hires to complete the online "Dignity Training," including

6

trainings on safety, time entry, harassment, and on how to complete their work duties. SCI also has a centralized policy document that includes instructions on how to interact with families who have recently lost a loved one. This centralized policy document outlines SCI's primary functions and describes the dress code and other work requirements. SCI recommends that all managers make the policy document available to local workers. Further, all hires are provided the same electronic new hire packet containing not only their W-4's and I-9's but also acknowledgments including the employee handbook and drug-free policy.

Second, while SCI argues that the individual managers at SCI affiliates make the hiring and firing decisions, it concedes that all new hires apply to SCI affiliate jobs through the centralized SCI webpage. Offer letters are also provided through the centralized online system and the same form offer letter is used for all SCI-affiliated entities. Further, an employee who leaves one affiliate and is hired by a different affiliate can keep his original hire date. Therefore, even if local managers make hiring and firing decisions, Plaintiffs have presented evidence that SCI does control some aspects of the employee hiring and employee management process.

Third, any complaints regarding work conditions, including complaints about supervisors and managers, are made through the centralized system "Careline," and these "Careline" reports are provided directly to the committees of the SCI Board. Additionally, HR disputes can be appealed up to SCI's CEO.

This evidence, however, says nothing about SCI's control over Plaintiffs' work for the SCI affiliates. Plaintiffs were not required to complete "Dignity Training." SCI did not provide them with new hire packets. The offer letters have nothing to do with Plaintiffs. There is no SCI "original hire date" for Serenity workers. And there is no evidence that Serenity drivers can make complaints to anyone at an SCI affiliate, let alone to SCI. Thus, while Plaintiffs' evidence might show SCI's control of the SCI affiliates' employees, it says nothing about SCI's control of Plaintiffs' employment with Serenity and Serenity's contract with the SCI affiliates. As *Laird* noted, under this factor "[t]he critical question is, [w]hat entity made the final decisions regarding employment matters related to the person claiming discrimination?" *Id.* at 738 (internal quotation marks and citation omitted). By analogy, under Labor Code section 2810.3 the critical question is

what entity made the final decisions regarding the hiring of Plaintiffs to perform work for the SCI affiliates, or at least Serenity. Plaintiffs' evidence does not speak to this question.

### 2. Interrelation of Operations

"To make a sufficient showing of 'interrelation of operations' on summary judgment, the plaintiff must do more than merely show that officers of the subsidiary report to the parent corporation or that the parent benefits from the subsidiary's work." *Laird*, 68 Cal. App. 4th at 738. Plaintiffs must do more than demonstrate that the parent "benefits from the subsidiary's work" because "such a showing would create a triable issue of material fact in every case." *Id*. "What the plaintiff must show, rather, is that the parent has exercised control to a degree that exceeds the control normally exercised by a parent corporation." *Id*. (internal quotation marks and citation omitted).

In *Laird*, the court found Laird had failed to introduce evidence to satisfy this prong, and provided examples of evidence that would help to show that the operations of the parent and subsidiary were interrelated: "She did not show, for instance, that the [the parent corporation] kept [the subsidiary's] books, issued its paychecks, or paid its bills," or that "the two operations share employees (in the sense that any employee of one might be reassigned to the other), headquarters, or office space." *Id*. at 739.

Plaintiff has not offered evidence that supports a finding of an interrelationship of operations between SCI and S.E. Combined or Alderwoods. At most, they offer evidence that SCI's principal executive office is the same as the SCI affiliates. They do not identify any evidence that SCI and S.E. Combined share any employees or officers or human resources; instead, their opposition is focused on an interrelationship of operations between SCI and SCI Cal. (Dkt. No. 246 at 20-22.) Drawing all inferences from the evidence in Plaintiffs' favor, this factor does not weigh in support of a finding that SCI and S.E. Combined and/or Alderwoods are an integrated enterprise.

### 3. Common Management

The *Laird* court held that Laird had failed to show the parent and subsidiary had any degree of common management, as she had "offered no evidence that anyone served as a manager

8

of both corporations." *Laird*, 68 Cal. App. 4th at 740. The court also reasoned that Laird should have introduced evidence that at least one manager of the parent corporation made or influenced a "day-to-day managerial decision" of the subsidiary, and further noted, "[n]or did [Laird] show that any manager from either corporation was ever transferred to the other." *Id*. The same is true here. Again, perhaps because of Plaintiffs' focus on SCI and SCI Cal, they have not presented any evidence of common management between SCI and S.E Combined and Alderwoods. (Dkt. No. 246 at 22-23 (focusing on common management between SCI and SCI Cal). Thus, this factor does not weigh in favor of an integrated enterprise.

### 4. Common Ownership or Financial Control

While not argued by Plaintiffs, the record supports a finding of common ownership as Defendants' evidence shows that S.E. Combined and Alderwoods are indirect and direct subsidiaries of SCI. The mere fact of common ownership or financial control, without more, however, is insufficient to raise a triable issue of fact under the integrated enterprise test. *Laird*, 68 Cal. App. 4th at 739–40.

\*\*\*

Drawing all inferences in Plaintiffs' favor, and assuming, without deciding, that the integrated enterprise theory can be applied to liability under Labor Code section 2810.3, the evidence is insufficient to support a finding that SCI and S.E. Combined or SCI and Alderwoods were an integrated enterprise. And the Court finds that the claim against SCI based upon it being an integrated enterprise with SCI Cal—a defendant in this action—is moot given that SCI Cal agreed on the record not to assert that it is not a client employer within the meaning of Labor Code section 2810.3 because it employs fewer than 25 workers. Accordingly, SCI's motion for summary judgment is GRANTED.

### ATTORNEYS' FEES

SCI and SCI Cal also move for summary adjudication that Plaintiffs cannot recover attorneys' fees and costs if they prevail on their Labor Code Section 2810.3 claim against them. This argument is still relevant to SCI Cal.

California Labor Code Section 2810.3(b) states: "A client employer shall share with a

9

labor contractor all civil legal responsibility and civil liability for all workers supplied by that labor contractor for both of the following: (1) The payment of wages [and] (2) Failure to secure valid workers' compensation coverage as required by Section 3700." Therefore, as relevant to this case, if Serenity is found liable, and SCI Cal is determined to qualify as a client employer, Defendants will share Serenity's liability for the payment of wages.

SCI Cal contends that Plaintiffs cannot recover attorneys' fees if they prevail under Section 2810.3 because there is no express attorneys' fees provision. Plaintiffs counter that while Section 2810.3 does not contain an express provision, Labor Code Sections 218.5 and 1194 are the operative fee provisions for an unpaid wage claim.

### A. Section 218.5

Labor Code section 218.5(a) states, in relevant part: "In any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions, the court shall award reasonable attorney's fees and costs to the prevailing party . . . ." Under a plain reading of the statute, a plaintiff may recover attorneys' fees for prevailing in any action for the nonpayment of wages. Because Plaintiffs' Section 2810.3 claim against SCI Cal is an action for the nonpayment of wages, Section 218.5 applies. *See Juarez v. Villafan*, No. 1:16-cv-00688-DAD-SAB, 2017 WL 6629529, at *17 (E.D. Cal. Dec. 29, 2017) (granting default judgment in plaintiffs' favor and concluding plaintiffs, who brought a 2810.3(b) claim, "are entitled to attorney fees under multiple state statutes" including Section 218.5).

Section 2810.3 is consistent with this conclusion. It provides that a client employer "shall share with a labor contractor all civil legal responsibility and civil liability for all workers supplied by that labor contractor for . . . (1) The payment of wages." Cal. Labor Code § 2810.3(b)(1). Thus, the client employer is liable not just for the nonpayment of wages, but also for *all civil legal responsibility and civil liability* for the nonpayment of wages. Pursuant to Labor Code Section 218.5, attorneys' fees and costs are part of the "legal responsibility and civil liability" flowing from the nonpayment of wages.

Defendants' arguments to the contrary are unpersuasive. First, *Nicolas Laboratories v. Chen*, 199 Cal. App. 4th 1240 (2011), concerned California Labor Code Section 2802 which

10

1    requires employers to indemnify employees for all necessary expenses, and thus does not shed any
2    light on whether an action for nonpayment of wages, such as this, falls within Section 218.5.

3    Second, Defendants' insistence that Section 218.5 applies only to an award of fees against a plaintiff's employer is unsupported by the plain language of Section 218.5. Section 218.5 states that "in any action brought for the nonpayment of wages," the court shall award fees and costs to "the prevailing party." It nowhere suggests that the court may only award fees and costs to a plaintiff who recovers wages from the plaintiff's employer. *Shames v. Utility Consumers' Action Network*, 13 Cal. App. 5th 29 (2017), does not persuade the Court otherwise as it does not address the question presented here. *Id.* at 44 (concluding plaintiff was not entitled to attorneys' fees under Section 218.5 because plaintiff did not request them "upon initiation of the action" as required by the statute).

Third, the Court is similarly not persuaded by Defendants' citation to *Ramos v. Garcia*, 248 Cal. App. 4th 778, 791 (2016). Defendants urge that similar to the manager who was wrongfully sued as an employer in *Ramos*, Plaintiffs erroneously sued Defendants who are non-employers. However, no finding has been made that Plaintiffs sued the wrong defendants; to the contrary, the Section 2810.3 claim against SCI Cal for "all civil legal responsibility and civil liability" is very much alive. *Ramos* has no bearing on this Court's analysis.

Fourth, Defendants' citation to *Kirby* is also not persuasive. There the California Supreme Court concluded that Section 226.7 claims, which require meal and rest breaks, do not constitute "action[s] brought for the nonpayment of wages" within the meaning of Section 218.5. *See Kirby v. Immoos Fire Protection, Inc.*, 53 Cal. 4th 1244, 1259 (2012). It does not suggest that actions brought for the nonpayment of wages, such as the minimum wage and overtime claims brought here, are not claims brought for the nonpayment of wages. That Serenity, rather than SCI Cal, may be found to have owed the wages in the first instance is of no moment; the gravamen of those claims is for the nonpayment of wages, not for some other violation.

Finally, Defendants make an offhand reference to Labor Code section 2810 and contend that there would be no need for it to include an attorneys' fees provision if Section 218.5 applied. *See* Labor Code § 2810(g)(1). However, Section 2810 does not create a cause of action for the

11

1 nonpayment of wages; thus, Section 218.5 would not apply.

**B.     Section 1194**

Section 218.5 "does not apply to any cause of action for which attorney's fees are recoverable under Section 1194." Cal. Labor Code § 218.5(b). Section 1194, in turn, provides that "any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." Cal. Labor Code § 1194(a). Plaintiffs have made such claims here.

The analysis as to whether Plaintiffs may recover attorneys' fees under Section 1194 is similar to the Section 218.5 analysis. The plain language of the statute provides for an award of fees and costs to an employee who prevails on overtime and minimum wage claims, both types of claims that involve unpaid wages. Plaintiffs will only prevail if they are found to be "employees" rather than independent contractors, so that requirement can be satisfied. Further, Section 2810.3 makes a client employer liable for "all civil legal responsibility and civil liability" for unpaid wages. Attorneys' fees, costs and interest awarded pursuant to section 1194 are "civil legal responsibility and civil liability" for unpaid wages to workers supplied to the labor contractor.

\*\*\*

The SCI Defendants motion for summary adjudication of Plaintiffs' demand for attorneys' fees is DENIED.

**SEALING MOTIONS**

Plaintiffs' motion to file certain documents under seal is DENIED. (Dkt. No. 247.) Plaintiffs seek to file the exhibits under seal based on Defendants' designation of those documents as confidential; yet, Defendants have not filed a declaration establishing that all the materials are sealable as required by Local Rule 79–5(e)(1).

**CONCLUSION**

For the reasons described above, Defendant SCI'S motion for summary judgment as to its liability pursuant to Labor Code section 2810.3 is GRANTED and the SCI Defendants' motion for

summary judgment as to Plaintiffs' demand for attorneys' fees is DENIED. The administrative motion to file under seal is also DENIED.

The Court will hold a further case management conference on August 23, 2018 to discuss how to next proceed. An updated joint case management conference statement shall be filed by August 16, 2018.

This Order disposes of Docket No. 201, 247, and 249.

**IT IS SO ORDERED.**

Dated: August 8, 2018

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge