UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS JOHNSON, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SERENITY TRANSPORTATION, INC., et al., <br><br> Defendants. | Case No. 15-cv-02004-JSC <br><br> **ORDER RE MOTIONS FOR APPROVAL OF SETTLEMENT AND TO WITHDRAW AS COUNSEL** <br><br> Re: Dkt. Nos. 320 & 321 |

Before the Court is Plaintiffs' motion to approve a Fair Labor Standards Act ("FLSA") settlement and release of Plaintiffs' FLSA and other wage and hour claims against Defendants SCI California Funeral Services, Inc. ("SCI California") and Service Corporation International ("SCI") (collectively ("SCI Defendants"), as well as a motion for leave to withdraw as counsel for Plaintiff Anthony Aranda. (Dkt. Nos. 320 & 321.)[1] Defendants have not filed an opposition to either motion. After careful consideration, the Court determines that oral argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), VACATES the December 10, 2020 hearing, and GRANTS the motions to approve the settlement and withdraw as counsel.

**I.     Motion for Settlement Approval**

Gary Johnson and 16 Opt-In Plaintiffs ("SCI California Plaintiffs") have reached a settlement with the SCI Defendants to resolve their wage and hour claims against the company. (Dkt. Nos. 321 at 3; 321-2 at 2.) Plaintiffs are mortuary drivers who filed suit against their employer, Serenity Transportation, Inc. ("Serenity Transportation"), its owner David Friedel, as well as the SCI Defendants, alleging that they were misclassified as independent contractors and

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generate page numbers placed at the top of the documents.

denied the benefits of California and federal wage and hour laws.

The factual and procedural history of this case is set forth in the Court's August 1, 2018 order granting in part and denying in part Plaintiffs' motion for class certification. (Dkt. No. 276.) Following this Court's order, Plaintiffs filed a motion to reconsider portions of the Court's order that denied class certification of Plaintiffs' claims against the SCI Defendants for wages owed under California Labor Code § 2810.3, and a motion to stay pending disposition of their Rule 23(f) petition for permission to appeal the Court's order denying class certification as to the SCI Defendants. (Dkt. Nos. 284 & 289.) The Court granted Plaintiffs' motion to stay but denied Plaintiffs' motion for reconsideration. (Dkt. No. 300 at 2.) On April 1, 2020, the Ninth Circuit issued a formal mandate regarding its February 10, 2020 decision affirming this Court's class certification order. (Dkt. No. 310.)[2] The parties' most recent settlement discussions began following the Ninth Circuit's decision. (Dkt. No. 321-1 at 2 ¶ 3.)

The settlement provides that the SCI Defendants will pay $50,000 in resolution of the SCI California Plaintiffs' claims, inclusive of attorneys' fees and costs. (Dkt. No. 321-2 at 2.) Each SCI California Plaintiff will receive an amount proportional to the number of relevant shifts they performed for SCI California; payments to the SCI California Plaintiffs totals $21,547.54, and the remaining $28,452.46 is allocated for attorneys' fees and costs. (*Id.* at 2, 25.) In exchange for this settlement, the SCI California Plaintiffs will release wage and hour claims they may have against the SCI Defendants and its affiliates, including claims under the FLSA. (*Id.* at 2.)[3]

The SCI California Plaintiffs now move for approval of the settlement and release of their FLSA claims on the grounds that the settlement reflects a "reasonable compromise" of the disputed FLSA claims. (Dkt. No. 321 at 3.)

**A. Legal Standard**

The FLSA requires employers to pay employees time and one-half for work exceeding 40 hours per week. *See* 29 U.S.C. § 207(a)(1). Under the FLSA, an employee may bring a

---

[2] The Ninth Circuit additionally denied Plaintiffs' petition for a rehearing en banc. (Dkt. No. 309.)
[3] The SCI California Plaintiffs do not, however, release any claims they may have against Serenity Transportation, and Mr. Friedel, other Defendants in this litigation.

2

"collective action" on behalf of other "similarly situated" employees. 29 U.S.C. § 216(b). An employee's rights under the FLSA are non-waivable; thus, they may only be settled and released under the supervision of the Secretary of Labor or a district court. *See Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1353 (11th Cir. 1982); *Camilo v. Ozuna*, No. 18-CV-02842-VKD, 2019 WL 2141970, at *6 (N.D. Cal. May 16, 2019) (citing *Lynn's Food Stores*, 679 F.2d at 1353). *See also Seminiano v. Xyris Enter., Inc.*, 602 F. App'x 682, 683 (9th Cir. 2015) ("FLSA claims may not be settled without approval of either the Secretary of Labor or a district court.") (citations omitted). Before approving an FLSA settlement, a district court must determine if the settlement is a "fair and reasonable resolution of a bona fide dispute." *Lynn's Foods Stores*, 679 F.2d at 1355. "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues . . . . that are actually in dispute[,] [courts may] approve the settlement in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

**B. Discussion**

    **1. Bona Fide Dispute**

"A bona fide dispute exists when there are legitimate questions about the existence and extent of the defendant's FLSA liability." *Jennings v. Open Door Mktg., LLC*, No. 15-CV-4080-KAW, 2018 WL 4773057, at *4 (N.D. Cal. Oct. 3, 2018) (internal quotation marks and citation omitted). "That is, there must be some doubt whether the plaintiffs will be able to succeed on the merits of their FLSA claims." *Heath v. Google LLC*, No. 15-CV-01824-BLF, 2019 WL 3842075, at *4 (N.D. Cal. Aug. 15, 2019) (citations omitted). The requirement that an FLSA settlement resolve a "bona fide dispute" is to ensure that "an employee does not waive claims for wages, overtime compensation, or liquidated damages when no actual dispute exists between the parties." *Saleh v. Valbin Corp.*, No. 17-CV-00593-LHK, 2018 WL 6002320, at *2 (N.D. Cal. Nov. 15, 2018) (citing *Lynn's Food Stores*, 679 F.2d at 1353 n.8).

Here, there is a bona fide dispute. The parties have litigated for years with substantive motion practice, including an appeal to the Ninth Circuit. They began their most recent settlement discussions following the Ninth Circuit's February 10, 2020 decision affirming this Court's class

3

certification order.  (Dkt. No. 321-1 at 2 ¶ 3.)   At bottom, the parties have disputed the SCI California Plaintiffs' classification status and Defendants' liability under California and federal wage and hour laws throughout this case, illustrating that a bona fide dispute exists.  *See Heath*, 2019 WL 3842075, at *4 (determining bona fide dispute existed "as evidenced by years of litigation" where the parties disputed legal issues and the defendant's liability across motions to dismiss, to certify and decertify a collective action, as well as to "reconsider the order declining to recertify the collective").  As in *Heath*, since it was filed the parties have disputed the case's legal and factual issues across motions to dismiss, motions for conditional certification, various summary judgment motions, motions for reconsideration, and filed an appeal to the Ninth Circuit.  (*See, e.g.*, Dkt. Nos. 34, 51, 59, 124, 173, 225, 284, 289, 310.)  For these reasons, the Court concludes that the purpose of the bona fide dispute requirement has been satisfied.  *See Saleh*, 2018 WL 6002320, at *3; *Lynn's Food Stores*, 679 F.2d at 1353 n.8 ("The purpose of this analysis is to ensure that an employee does not waive claims for wages, overtime compensation, or liquidated damages when no actual dispute exists between the parties.")

### 2. Fair and Reasonable Resolution

A court looks to the "totality of the circumstances" when determining whether a settlement is fair and reasonable. *Heath*, 2019 WL 3842075, at *4 (citation omitted).  In making this determination, a court considers: "(1) the plaintiffs' range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the [p]arties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion." *Id.* (citing *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1173 (S.D. Cal. 2016)); *see also Jennings*, 2018 WL 4773057, at *4 (citation omitted).  The Court considers these factors in turn.

#### a. Range of Possible Recovery

"A district court evaluates the plaintiff[s'] range of potential recovery to ensure that the settlement amount agreed to bears some reasonable relationship to the true settlement value of the claims." *Selk*, 159 F. Supp. 3d at 1174 (citation omitted).  While courts in the Ninth Circuit have

4

generally found that FLSA cases settling for "25%-35% of the total possible recovery" to be reasonable, *Heath*, 2019 WL 3842075, at *5 (collecting cases), "[t]he settlement amount need not represent a specific percentage of the maximum possible recovery[,]" *Selk*, 159 F. Supp. 3d at 1174 (citation omitted). Nonetheless, in "comparing the amount proposed in the settlement with the amount that plaintiffs could have obtained at trial, the court must be satisfied that the amount left on the settlement table is fair and reasonable under the circumstances presented." *Id.* (citations omitted).

    Under the circumstances, the SCI California Plaintiffs are recovering more through the settlement's $21,547.54 award than they would be able to recover on FLSA claims against SCI. This Court determined in a previous summary judgment order that the SCI California Plaintiffs cannot proceed against SCI under the FLSA on a joint employer theory of liability. (Dkt. No. 172 at 24.) As such, the range of possible recovery bears a "reasonable relationship to the true settlement value of the claims." *Selk*, 159 F. Supp. 3d at 1174 (citation omitted). According to Plaintiffs' counsel, the settlement amount is comparable to what the SCI California Plaintiffs would recover—if they were to prevail on the merits—under their California Labor Code § 2810.3 claims. (Dkt. No. 321-1 at 2 ¶ 5.) Plaintiffs' counsel further calculates that each SCI California Plaintiff's recovery under the settlement agreement is "approximately two times the amount attributable to shifts worked for [SCI California.]" (*Id.*) The circumstances of this case, and the SCI Defendants' exposure to liability under the FLSA and California wage and hour laws, have changed since its initial filing; the SCI California Plaintiffs' acknowledgment that the only claims against the SCI Defendants remaining in the case are under California Labor Code § 2810.3 support a finding that the settlement amount is reasonable. (Dkt. No. 321 at 4.) *See also Saleh*, 2018 WL 6002320, at *3 (determining that settlement amount in FLSA suit was reasonable where the plaintiffs admitted that their claims against the defendant were "not as substantial" as they initially believed when bringing the case).

    Accordingly, the Court finds that this factor weighs in favor of approving the parties' settlement agreement.

### b. Stage of Proceedings & Discovery Completed

Courts next assess "the stage of proceedings and the amount of discovery completed to ensure the [p]arties have an adequate appreciation of the merits of the case before reaching a settlement." *Heath*, 2019 WL 3842075, at *5 (internal quotation marks and citations omitted). If the parties "have sufficient information to make an informed decision about the settlement, this factor weighs in favor of approval." *Id.* (internal quotation marks and citations omitted) (alterations removed).

This case was filed in 2015. As previously discussed, the parties have litigated the case across numerous motions, and engaged in extensive discovery. (*See* Dkt. Nos 140, 152.) Plaintiffs also filed an appeal to the Ninth Circuit, and began their most recent settlement discussions following the Ninth Circuit's February 10, 2020 order affirming this Court's class certification order. (Dkt. No. 321-1 at ¶ 3.) It is clear from the case's history and the current stage of the case that the parties have thoroughly evaluated its merits before reaching their settlement agreement. *See Saleh*, 2018 WL 6002320, at *3; *see also Jennings*, 2018 WL 4773057, at *5 ("So long as the parties have sufficient information to make an informed decision about settlement, this factor will weigh in favor of approval.") (internal quotations and citations omitted). Accordingly, this factor favors approving the settlement agreement.

### c. Seriousness of Litigation Risks

Settlement approval is appropriate where "there is a significant risk that litigation might result in a lesser recovery . . . or no recovery at all." *See, e.g.*, *Selk*, 159 F. Supp. 3d at 1175-76 (internal quotations and citations omitted) (alterations removed); *Jennings*, 2018 WL 4773057, at *5 (internal quotations and citation omitted).

Given that the only remaining claims against the SCI Defendants are Plaintiffs' claims under California Labor Code § 2810.3, the Court "is led to believe that further litigation might result in [the SCI California Plaintiffs] recovering less or nothing." *Saleh*, 2018 WL 6002320, at *4. Therefore, this factor favors approval of the FLSA settlement.

### d. Release Provision's Scope

Courts in this district have rejected "blanket releases of all potential claims against the

6

employer for all unlawful acts whatsoever." *Heath*, 2019 WL 3842075, at *6 (collecting cases). The purpose of a court's review is to ensure that release provisions in FLSA settlements "[do not] pressure class members into forfeiting claims, or waiving rights, unrelated to the litigation." *Selk*, 159 F. Supp. 3d at 1178 (citation omitted); *see also McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. C 10-5243 SBA, 2012 WL 6629608, at *3 (N.D. Cal. Dec. 19, 2012) ("Courts have found that overly broad release provisions, which release [defendants] from all claims to settle their wage claims, including claims that are unrelated to the claims asserted in the complaint, are improper in FLSA and class action settlements.") (collecting cases). Nonetheless, "in the Ninth Circuit when a district court approves a class action settlement, 'a federal court may release not only those claims alleged in the complaint, but also a claim based on the identical factual predicate as that underlying the claims in the settled class action.'" *Saleh*, 2018 WL 6002320, at *4 (quoting *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006)).

Here, the release provision is limited to claims and causes of action that, while of "whatever kind of nature, known or unknown . . . are asserted in the [a]ction or which could have been asserted based on the facts alleged." (Dkt. No. 321-2 at 2.) The release provision is limited to the claims alleged and claims that could have been asserted based on the facts alleged—put differently, on "[an] identical factual predicate as that underlying the claims" in the settlement. *Saleh*, 2018 WL 6002320, at *4. (citation omitted). The release provision is "tailored to the [wage and hour] action" and does not release "all potential claims against the employer for all unlawful acts whatsoever." *Heath*, 2019 WL 3842075, at *6 (citations omitted). Accordingly, the Court finds this factor favors settlement approval.

### e. Experience of Counsel & Views of Participating Plaintiffs

"In determining whether a settlement is fair and reasonable, the opinions of counsel should be given considerable weight both because of counsel's familiarity with the litigation and previous experience with cases." *Heath*, 2019 WL 3842075, at *6 (citing *Slezak v. City of Palo Alto*, No. 16-CV-03224-LHK, 2017 WL 2688224, at *5 (N.D. Cal. June 22, 2017)). Here, counsel for the SCI California Plaintiffs asserts that the settlement "reflects a reasonable compromise" of the disputed FLSA claims. (Dkt. No. 321 at 3.) Counsel for Defendants has failed to file an

7

opposition to the motion for settlement approval.  Counsel for the SCI California Plaintiffs, an experienced partner at the law firm of Rukin Hyland & Riggin LLP, avers that the settlement is the result of "arms-length negotiations" by "experienced counsel following years of litigation." (Dkt. Nos. 321 at 5; 321-1 at 2 ¶ 1.)  Furthermore, there are 17 SCI California Plaintiffs, including Mr. Johnson.  (Dkt. No. 321 at 3.)  Of those 17, 16 have signed the settlement agreement.[4]  (Dkt. No. 321-2 at 6-24.)  This signals "widespread approval" of the settlement agreement.  *Saleh*, 2018 WL 6002320, at *4 (finding that where 21 of 23 collective action class members agreed to settlement that this factor weighed in favor of approving settlement agreement); *see also Heath*, 2019 WL 3842075, at *6 ("Thus, 97% of the class chose to participate in the settlement, indicating widespread approval of the [a]greement by the [p]laintiffs.").  As such, the Court finds that this factor weighs in favor of settlement approval.

### f. Possibility of Fraud or Collusion

Courts in the Ninth Circuit evaluating FLSA settlements will often find fraud or collusion where the following conditions are present: "(1) when counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded[;] (2) when the plaintiffs negotiate a 'clear sailing' agreement providing for the payment of attorney's fees separate and apart from class funds[;] and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund[.]" *Jennings*, 2018 WL 4773057, at *8 (citing *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)).  Here, 2 of the 3 factors are obviously absent.  The settlement agreement provides that any funds unclaimed by the SCI California Plaintiffs "shall be transmitted to the State of California unclaimed property fund." (Dkt. No. 321-2 at 3.)  It does not provide that unclaimed funds will revert to the SCI Defendants.  Additionally, there is no "clear sailing" provision in the settlement agreement.

Under the settlement agreement counsel for the SCI California Plaintiffs receives

---

[4] Counsel for the SCI California Plaintiffs have attempted repeatedly to reach the remaining plaintiff yet to sign the settlement, Anthony Aranda, but he has not responded to counsel. (Dkt. No. 321 at 5.)

$28,452.46 for fees and costs—approximately 56.9% of the total settlement award. (*Id.*) Counsel avers, however, that in arriving at this amount the firm has "dramatically compromised [its] fees and costs," and that its "fees and costs in the litigation exceed by many multiples the amount [the firm] will receive in [the settlement agreement.]" (Dkt. No. 321-1 at 2-3 ¶ 6.) While courts typically approve fee awards that range from 20%-30% of settlement agreements, *see Jennings*, 2018 WL 4773057, at *8, the Court nonetheless finds here that the award in the settlement agreement is not unreasonable. Unlike other cases, here counsel for the SCI California Plaintiffs appealed this Court's class certification order to the Ninth Circuit, and the Ninth Circuit affirmed this Court's order. The settlement's $28,452.46 distribution for fees and costs—while a large percentage of the agreement's $50,000.00 award—is reasonable in light of the case's history and appeal to the Ninth Circuit. Moreover, the SCI California Plaintiffs receive monetary distributions through the settlement, *see id.*, and the settlement, negotiated at arms-length, presents no indication that counsel for the SCI California Plaintiffs "allowed pursuit of their own self-interests" to "infect the negotiation," *see Saleh*, 2018 WL 6002320, at *5 (internal quotation marks and citation omitted). Therefore, the Court finds that this factor weighs in favor of approval.

\* \* \*

For the reasons stated above, under the totality of the circumstances the Court finds that the proposed settlement is a "fair and reasonable resolution of a bona fide dispute." *Lynn's Foods Stores*, 679 F.2d at 1355.

**C. Fees and Costs**

A court may award reasonable attorney's fees and litigation costs as part of an FLSA settlement. *See Selk*, 159 F. Supp. 3d at 1180-81; *see also* 29 U.S.C. § 216(b). Here, counsel for SCI California Plaintiffs seeks $28,452.46 in fees and costs. (Dkt. Nos. 321 at 3; 321-2 at 2.) This, according to counsel, is a "dramatic compromise[]" of the actual fees and costs, and that the actual fees and costs exceed by "many multiples" the amount awarded in the settlement agreement. (Dkt. No. 321-1 at 2-3 ¶ 6.) Of this the Court has no doubt. Plaintiffs' counsel has litigated this case for years, including an appeal to the Ninth Circuit. While counsel does not explain what the lodestar amount would be, given the length and nature of this case, it is clear that

9

the settlement's award for fees and costs is reasonable.  *See Jennings*, 2018 WL 4773057, at *8 (approving FLSA settlement provision for attorneys' fees where it "only partially cover[ed] the amount of expenses" that plaintiffs' counsel incurred, and where the case "involved litigating numerous motions").  As such, the Court approves the settlement agreement's fees and cost award.

## II. Motion to Withdraw as Counsel for Plaintiffs

Peter Rukin, Jessica Riggin, Valerie Brender, and Rukin Hyland & Riggin LLP (collectively "RHR") seek to withdraw as counsel for SCI California Plaintiff Anthony Aranda.  For the reasons set forth below, the Court GRANTS RHR's motion.

### A. Legal Standard

Attorneys may withdraw as counsel of record if "written notice has been given reasonably in advance to the client and to all other parties who have appeared in the case[,]" and the attorneys obtain leave by Court order.  N.D. Cal. Civ. L.R. 11-5(a).  The standards of professional conduct required of members of the State Bar of California govern the withdrawal of counsel.  N.D. Cal. Civ. L.R. 11-4(a)(1).  California Rule of Professional Conduct 1.16(b)(4) permits counsel to withdraw from representing a client when the client "renders it unreasonably difficult for [counsel] to carry out the employment effectively[.]"  Before withdrawal is permissible, counsel must comply with California Rule of Professional Conduct 1.16(d), providing that counsel shall not withdraw "until the lawyer[s] ha[ve] taken reasonable steps to avoid reasonably foreseeable prejudice to the rights of the client, such as giving the client sufficient notice to permit the client to retain other counsel[.]"  "Courts consider several factors when considering a motion for withdrawal, including: (1) the reasons counsel seeks to withdraw; (2) the possible prejudice that withdrawal may cause to other litigants; (3) the harm that withdrawal might cause to the administration of justice; and (4) the extent to which withdrawal will delay resolution of the case."  *Heifetz v. Nilkanth*, No. 18-CV-04623-TSH, 2019 WL 3457793, at *1 (N.D. Cal. July 31, 2019) (internal quotations and citation omitted).  "[T]he decision to permit counsel to withdraw is within the sound discretion of the trial court."  *Morrow v. Mid Peninsula Hotels, LLC*, No. 19-CV-03863-TSH, 2020 WL 5074305, at *2 (N.D. Cal. Aug. 26, 2020) (citing *United States v. Carter*, 560 F.3d 1107, 1113 (9th Cir. 2009)).

**B. Discussion**

The Court finds good cause exists for RHR's withdrawal as counsel of record for Mr. Aranda. RHR has attempted to reach Mr. Aranda by "telephone, email, phone call, and letter" nearly one dozen times in the past 3 months, and has not received any communication from him in over two years. (Dkt. Nos. 320 at 5, 320-1 at 2 ¶ 2.) A client's "refusal to communicate," despite counsel's multiple attempts to contact them, makes it "unreasonable difficult for [counsel] to represent [the client] effectively." *j2 Glob. Commc'ns, Inc. v. Blue Jay, Inc.*, No. C 08-4254PJH, 2009 WL 464768, at *2 (N.D. Cal. Feb. 24, 2009). As for potential prejudice to other litigants, on August 4, 2020, RHR, after "repeated attempted phone calls, emails, and text messages," provided notice to Mr. Aranda of the settlement with the SCI Defendants over e-mail and First-Class Mail, and that RHR intended to withdraw as counsel if Mr. Aranda failed to respond. (Dkt. No. 320-1 at 2 ¶ 3.) On October 28, 2020, RHR sent Mr. Aranda a letter via Next Day Air as well as an e-mail informing him that RHR intended to file the instant motion on November 2, 2020. (*Id.* at ¶ 4.) RHR also provided notice to counsel for the SCI Defendants by e-mail and during the parties' October 22, 2020 case management hearing of its intent to file a motion to withdraw as counsel for Mr. Aranda. (*Id.* at ¶ 5.) On November 2, 2020, RHR took the additional step of serving this motion on Mr. Aranda by Next Day Air and e-mail shortly before its filing. (*Id.* at ¶ 6.) RHR has made numerous attempts to contact Mr. Aranda, and has acknowledged that it will conditionally withdraw as counsel until Mr. Aranda finds new counsel to appear for and accept service on his behalf. (Dkt. No. 320 at 6.) There is nothing to indicate that RHR's withdrawal will affect the case's schedule, or delay the upcoming case management hearing on February 22, 2021. Therefore, the Court finds that withdrawal will neither impede the administration of justice nor delay resolution of this case, and that RHR has complied with Civil Local Rule 11-5(a) and all relevant California Rules of Professional Conduct.

Civil Local Rule 11-5(b) states that when withdrawal by an attorney from an action is "not accompanied by simultaneous appearance of substitute counsel or agreement of the party to appear pro se, leave to withdraw may be subject to the condition that papers may continue to be served on counsel for forwarding purposes, unless and until the client appears by other counsel or pro se."

1  Because the motion was not accompanied by the simultaneous appearance of substitute counsel
2  for Mr. Aranda, RHR shall continue to be served for forwarding purposes unless and until Mr.
3  Aranda appears by other counsel or pro se. When Civil Local Rule 11-5(b)'s "condition is
4  imposed, counsel must notify the party of this condition." N.D. Cal. Civ. L.R. 11-5(b).  Therefore,
5  RHR must additionally provide Mr. Aranda with notice, to fullest extent possible, that papers will
6  continue to be served on counsel for forwarding purposes.  "Any filed consent by the party to
7  counsel's withdrawal under these circumstances must include acknowledgment of this condition."
8  *Id*.

Accordingly, the motion to withdraw as counsel is GRANTED subject to the conditions imposed by Civil Local Rule 11-5(b).

**CONCLUSION**

For the reasons set forth above, the Court GRANTS the SCI California Plaintiffs' motion for settlement approval, and RHR's motion to withdraw as counsel for Mr. Aranda, subject to Civil Local Rule 11-5(b)'s conditions.

This Order disposes of Dkt. Nos. 320 & 321.

**IT IS SO ORDERED.**

Dated: December 10, 2020

JACQUELINE SCOTT CORLEY
United States Magistrate Judge