UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS JOHNSON, et al.,<br><br>            Plaintiffs,<br><br>    v.<br><br>SERENITY TRANSPORTATION, INC., et al.,<br><br>            Defendants. | Case No. 15-cv-02004-JSC<br><br>**PRELIMINARY APPROVAL OF CLASS ACTION SETTEMENT**<br><br>Re: Dkt. No. 340 |

Pending before the Court is Plaintiffs' motion for preliminary approval of class action settlement. (Dkt. No. 340.)[1] After careful consideration of the unopposed motion and supporting documents, the Court concludes that oral argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), VACATES the July 22, 2021 hearing, and GRANTS the motion for the reasons explained below.

## BACKGROUND

Plaintiffs are mortuary drivers who filed suit against their employer, Serenity Transportation, Inc. ("Serenity Transportation") and its owner David Friedel ("Friedel") (together, the "Serenity Defendants"), as well as Service Corporation International ("SCI") and SCI California Funeral Services, Inc. (together, "the SCI Defendants"). (Dkt. No. 121 at 2.) Plaintiffs initiated this action in Alameda County Superior Court on June 12, 2014, alleging that the Serenity Defendants violated certain provisions of the California Labor Code. (*See* Dkt. No. 1 at 1-2.)[2] While the case was pending in state court, Plaintiffs amended the complaint to add two defendants and a claim under the Fair Labor Standards Act ("FLSA"). (Dkt. No. 1 at 2.) SCI Defendants

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 8, 9, 14, 15.)
[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers placed at the top of the documents.

thereafter removed the case to federal court. (Dkt. No. 1.) Following various motions, Plaintiffs filed the operative Fifth Amended Complaint. (Dkt. No. 121.)

The Court granted Plaintiffs' motion for class certification as to all their claims against the Serenity Defendants but denied as to their claims against the SCI Defendants. (Dkt. No. 276 at 32.) After the Ninth Circuit issued a formal mandate affirming this Court's class certification order, (Dkt. No. 310),[3] the parties renewed their settlement discussions. (Dkt. No. 321 at 2 ¶ 3.)

On January 13, 2021, the Parties participated in a settlement conference with Magistrate Judge Spero. (Dkt No. 340; *see* Dkt. No. 331.) There, the Serenity Defendants shared financial information including a summary of assets and liabilities for Non-Individuals, Schedules A/B: Assets-Real and Personal Property, Schedule D: Creditors Who Have Claims Secured by Property and Schedules E/F: Creditors Who Have Claims Secured by Property, which "collectively evince Serenity's current financial status, asset holdings and liabilities." (Dkt. No. 340 at 4.) In addition, class counsel reviewed relevant printouts from Friedel's Bank of the West checking account; Friedel's credit card statements; various other financial and loan documents from Friedel; and an IRS Form 433-A signed by Friedel. (*Id.*) The terms of the settlement are very much dictated by the Serenity Defendants' finances, which were substantiated in the discussions.

Plaintiffs move for preliminary approval of the class settlement. (Dkt. No. 340.) The motion is unopposed.

**I.     Complaint Allegations**

Plaintiffs allege that they were misclassified as "contractors," and, accordingly, were "unlawfully denied rights and benefits of employment through an unlawful scheme" under California law. (Dkt. No. 121 at 2.) As a result, they were owed reimbursement of business expenses, overtime wages, meal and rest period premium payments, and an assortment of statutory penalties. (*Id.*)

**II.    Proposed Settlement Agreement**

    **A.  Certified Class**

---

[3] The Ninth Circuit additionally denied Plaintiffs' petition for a rehearing en banc. (Dkt. No. 309.)

2

The certified class is defined as "all persons who worked as independent contractor-classified Drivers for Serenity Transportation from January 1, 2011 through January 1, 2019." (Dkt. No. 340-1, Rukin Decl., Ex. 1 at 8.)

### B. Payment Terms

On or before March 13, 2021, Friedel agrees to pay a settlement sum of $10,000 to class counsel, who will hold it in a trust account. When the Court enters an order of final approval of the settlement, class counsel will disburse the settlement sum in accordance with the agreement. Prior to distributing funds to class members, the following payments will be made from the settlement sum:

> (i) $250 service award to Gary Johnson, subject to Court approval;
> (ii) $250 service award to Curtis Johnson, subject to Court approval;
> (iii) cost of administration (mailing), subject to Court approval. Should the Court not approve any Service Award or administration costs, such amounts shall remain with the Net Settlement Fund.

(*Id.* at 9.) Class counsel is not requesting fees or costs, and there is no settlement administrator.

#### 1. Individual Class Member Shares

The remaining settlement amount will be divided pro rata among all class members based on weeks worked. Within ten days of the Court's preliminary approval of the settlement proposal, Defendants will provide class counsel with all class members' names, last known addresses, last known phone numbers, last known email addresses, and the dates worked as drivers for Defendants. Within 21 days of the preliminary approval of the settlement, class counsel will mail the "Notice of Class Action Settlement" (*see id.* at 12-17) to all class members. They propose to mail settlement checks upon entry of final approval.

#### 2. Unclaimed Funds

Uncashed checks will be voided after ninety days, and the remaining funds will be paid as cy pres to the East Bay Community Law Center ("ECBLC").

### C. Release

Class members who do not choose to opt out of the settlement have effectively released all wage and hour claims brought in the lawsuit against Serenity Defendants: "claims for independent

contractor misclassification, unpaid overtime, unreimbursed business expenses, and associated statutory penalties . . . includ[ing] claims under the California Labor Code, California Wage Orders, and the [FLSA]." (*Id* at 9.) For class members who "have not previously joined the FLSA collective action," FLSA claims will "only be released upon that class member's endorsement of his or her settlement check, with the class member's signature on that check constituting a consent to join the FLSA claims and agreement to accept the terms of the settlement." (*Id.*)

### D.     Notice

Class counsel will send notice to all class members by mail based on class members' last known address, provided by Defendants.

### E.     Opt-Out and Objections to Settlement

Class members may opt out, but only if they send a letter by mail to class counsel, which includes: (1) class member's name; (2) a statement requesting to exclude themselves from the settlement; (3) class member's social security number or employer identification number. The "Notice of Class Action Settlement," (*see* Dkt. No. 340-1, Rukin Decl., Ex. 2), also includes this information for class members who may wish to opt out of settlement:

> If, before the deadline, you request to be excluded from the settlement, you will not receive any payment under the settlement, and you will not be bound by anything that happens in the case. If you[r] opt out letter is not submitted timely or does not contain the requested information, you will not be excluded from the settlement, you will receive payment under the settlement, and you will be bound by the outcome of this case.

(*Id.* at 15.)

Plaintiffs also inform class members that they may object to the settlement, noting that all objections must be served to counsel and on the record within 45 days of mailing the notice.

## DISCUSSION

### I.     Preliminary Approval of the Settlement Agreement

A class action settlement must be fair, adequate, and reasonable. Fed R. Civ. P. 23(e)(2). Under this standard, courts generally consider the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount

4

> offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (internal citations and quotation marks omitted). The Court granted Plaintiffs' motion for class certification as to all their claims against the Serenity Defendants. (Dkt. No. 276.) Until a recent Ninth Circuit decision, *Briseño v. Henderson,* 998 F.3d 1014 (9th Cir. 2021), the eight *Bluetooth* factors were sufficient for settlement agreements negotiated **after** formal class certification, as here. However, after *Briseño,* courts must consider three additional factors, even if the agreement is proposed **after** formal class certification. *Briseño,* 998 F.3d at 1023. Courts shall take note of the three following issues:

> (1) when counsel receive[s] a disproportionate distribution of the settlement; (2) when the parties negotiate a "clear sailing arrangement," under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a "kicker" or "reverter" clause that returns unawarded fees to the defendant, rather than the class.

*Id.* Because, here, class counsel is not requesting attorneys' fees, nor are there "kicker" or "reverter" clauses, the Court need not consider these factors.

The final approval hearing is the time to fully assess the *Bluetooth* factors; thus, "a full fairness analysis is unnecessary at this stage." *See Alberto v. GMRI, Inc*., 252 F.R.D. 652, 665 (E.D. Cal. 2008) (internal quotation marks and citation omitted). At the preliminary approval stage, "the settlement need only be potentially fair." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. May 31, 2007). Preliminary approval is thus appropriate where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig*., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation marks and citation omitted).

    **A.**    **Fairness Factors**

        **1.**    **Settlement Process**

The first factor concerns "the means by which the parties arrived at settlement." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). A court must be satisfied that the parties "have engaged in sufficient investigation of the facts to enable the court to intelligently make . . . an appraisal of the settlement." *Acosta*, 243 F.R.D. at 396. Courts thus have "an obligation to evaluate the scope and effectiveness of the investigation plaintiffs' counsel conducted prior to reaching an agreement." *Id*.

The parties participated in two settlement conferences with Judge Spero, where Defendants shared information about their financial insolvency. Plaintiffs learned that Serenity has not been operating for almost two years, that their "current liabilities exceed [their] assets by a factor of 13," that they have "no cash on hand," and that they have a myriad of debts and liens against them. (*See* Dkt. No. 340-1, Rukin Decl., Ex. 1 at 5.) The Court is satisfied that Plaintiffs sufficiently investigated the facts, and in doing so, they were able to propose a reasonable settlement amount considering Defendants' financial insolvency. In their unopposed motion for preliminary approval, Plaintiffs note that counsel "requested, obtained, reviewed and evaluated financial information establishing Defendants' insolvency and their inability to pay more, whether in settlement or judgment, than the settlement sum." (Dkt. No. 340 at 7.) The settlement was reached based on counsel's extensive litigation, including the settlement conference which revealed that Defendants would be unable to provide a higher settlement for Plaintiffs due to their financial insolvency. Accordingly, the settlement process was fair and reasonable.

### 2.     Obvious Deficiencies

The Court must next consider "whether there are obvious deficiencies in the Settlement Agreement." *Harris*, 2011 WL 1627973, at *8. Obvious deficiencies can include collusive negotiation, "unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys." *Id*. (internal quotation marks and citations omitted). Here, the Court does not find any obvious deficiencies on the face of the preliminary approval motion.

### 3.     Lack of Preferential Treatment

The Court must next examine whether the settlement agreement "provides preferential treatment to any class member." *Villegas v. J.P. Morgan Chase & Co.,* 2012 WL 5878390, at *7

(N.D. Cal. Nov. 21, 2012). Here, Plaintiffs propose that each named class member receive an incentive award of $250 for their eight years of participation in the litigation. "Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (distinguishing incentive awards from incentive agreements, the latter of which are "entered into as part of the initial retention of counsel" and "put class counsel and the contracting class representatives into a conflict position from day one"). Their purpose is to "compensate class representatives for work done on behalf of the class, [and] to make up for financial or reputational risk undertaken in bringing the action." *Id.* at 958-59 (internal quotation marks and citations omitted).

Plaintiffs assert that the $250 incentive award is fair and reasonable, and the Court agrees. Considering class representatives' active engagement in the litigation process, (*see* Dkt. No. 340 at 8), and the modest amount of the total settlement fund ($10,000) from which the awards will originate, the Court finds no indication of preferential treatment that would defeat preliminary approval.

### 4. Range of Possible Approval

In determining whether the settlement agreement "falls within the range of possible approval," the Court must focus on "substantive fairness and adequacy" and consider Plaintiffs' "expected recovery balanced against the value of the settlement offer." *See Tableware*, 484 F. Supp. 2d at 1080; *see also Harris*, 2011 WL 1627973, at *11 (noting that courts "must estimate the maximum amount of damages recoverable in a successful litigation and compare that with the settlement amount" (internal quotation marks and citation omitted)). "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts only to a fraction of the potential recovery that might be available to class members at trial." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004). Due to Defendants' financial insolvency, Plaintiffs note that the only choice class members have is between the $10,000 settlement award and the "certainty of no recovery for the Class." (Dkt. No. 340 at 8.) Additional litigation would be futile because, no matter the result, Defendants are unable to pay class members more than the proposed amount due to their financial insolvency.

7

\*\*\*

Accordingly, consideration of the fairness factors warrants preliminary approval of the settlement agreement.

### B.     Class Notice Plan

For any class certified under Rule 23(b)(3), class members must be afforded "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Such notice must clearly state the following:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.* "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal quotation marks and citation omitted).

The notice requirements under Rule 23(b)(3) have been met. Plaintiffs' proposed notice (*see* Dkt. No. 340-1, Rukin Decl., Ex. 2) explains in plain language: (1) the nature of the action; (2) the definition of the class certified; (3) the claims, issues, and defenses in the case; (4) that a class member may obtain their own attorney if they wish to proceed with litigation upon opting out of the settlement; (5) that the court will exclude them if they request so and that objections must be made within 45 days; (6) how to request exclusion; and (7) the binding effect of class judgment on class members.

Plaintiffs did not propose the hiring of a settlement administrator to distribute the notice of settlement. However, this does not defeat preliminary approval because, due to the modest settlement amount, Plaintiffs could not afford the cost of an administrator. Further, as the class is small and Defendants have records of class members' addresses, Plaintiffs need not propose additional outreach (i.e., social media distribution) to notify potential class members.

Accordingly, the class notice plan supports preliminary approval.

## C. Attorneys' Fees

Rule 23(h) provides for an award of attorneys' fees and costs in a certified class action where it is "authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941. Here, Plaintiffs have not proposed any attorneys' fees because of Defendants' financial insolvency and the modest settlement amount; accordingly, the Court need not ensure that any attorneys' fees are reasonable.

## D. Costs

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund.*" Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (internal quotation marks and citation omitted). Here, again, the Court need not assess appropriate costs because class counsel is not requesting any reimbursement for costs from the settlement award.

## E. Modifications to Comply with Northern District Procedural Guidelines

Prior to distributing the "Notice of Class Action Settlement" to class members, Plaintiffs must make modifications to the notice in compliance with the Northern District of California Procedural Guidance for Class Action Settlements (*see* https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/). Plaintiffs must also modify the paragraph in the settlement proposal regarding cy pres awards in compliance with the procedural guidelines prior to submitting their Motion for Final Settlement Approval.

### 1. Distribution of Class Notice

Plaintiffs must rectify the discrepancy between the procedural guidelines and the Plaintiffs' "Notice of Class Action Settlement" in the section titled, "12. How do I object to the settlement?" (*see* Dkt. No. 340-1 at 15-16.) There, Plaintiffs instruct class members to send written objections by mail to the addresses of *both* the Court and to class counsel. This is contrary to the procedural guidelines, which state that "the notice should instruct class members who wish to object to the settlement to send their written objections **only** to the court." *Procedural Guidance*

*for Class Action Settlements,* https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/ (last visited June 15, 2021) (emphasis added.)  Plaintiffs must change the "Notice of Class Action Settlement" to instruct class members to send written objections by mail only to the Court prior to distributing the notice to class members.

The procedural guidelines also state that "the notice should make clear that the court can only approve or deny the settlement and cannot change the terms of the settlement." *Procedural Guidance for Class Action Settlements,* https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/ (last visited June 15, 2021.) Plaintiffs' proposed notice notes throughout the Court's ability to "approve" the settlement, but it does not state in clear terms that the Court cannot change the terms of the settlement. Plaintiffs need to modify this instruction in the "Notice of Class Action Settlement" in compliance with procedural guidelines prior to distributing the notice to class members.

### 2. Cy Pres Award

Under the procedural guidelines:

> If the settlement contemplates a cy pres award, the parties should identify their chosen cy pres recipients, if any, and how those recipients are related to the subject matter of the lawsuit and the class members. The parties should also identify any relationship they or their counsel have with the proposed cy pres recipients.

*Procedural Guidance for Class Action Settlements*, https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/  (last visited June 15, 2021).

The settlement proposal states that funds remaining from uncashed settlement checks will be paid cy pres to the East Bay Community Law Center ("EBCLC"). Plaintiffs need to identify: (1) the relationship between EBCLC and the subject matter of the lawsuit and class members, and (2) any relationship that class members or their counsel has with EBCLC. They shall include this information in their Motion for Final Settlement Approval.

### CONCLUSION

For the reasons stated above, the Court VACATES the July 22, 2021 hearing and GRANTS preliminary approval of the class action settlement. Further,

1. Within 10 days of this Order, Defendants shall provide class counsel with the following information with respect to all class members: (1) name; (2) last known address; (3) last known phone number; (4) last known email address; and (5) dates worked as driver for Defendants.

2. Within 21 days of this Order, class counsel shall mail the "Notice of Class Action Settlement" to all class members with the appropriate modifications in compliance with the Court's procedural guidelines.

3. Plaintiffs shall file a Motion for Final Settlement Approval by November 22, 2021.

4. The Court will hold a hearing on final settlement approval at 9:00 a.m. on January 6, 2022.

**IT IS SO ORDERED.**

Dated: July 21, 2021

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge